UNITED STATES BANKRUPTCY COURT

DISTRICT OF MASSACHUSETTS

WESTERN DIVISION

---

In re:

Jacalyn S. Nosek
                    Debtor

Chapter 13
Case No.: 02-46025-JBR

---

Jacalyn S. Nosek
                    Plaintiff
v.
Ameriquest Mortgage Company
                    Defendant

Adversary Proceeding No.  04-04517

---

### Plaintiff's Motion to Strike Defendant's Responses to
### First Request for Admissions to Defendant Ameriquest Mortgage Company

Now comes the Plaintiff and moves this Honorable Court to strike the *Defendant's Responses to Plaintiff's First Request for Admissions to Defendant Ameriquest Mortgage Company* for failure to comply with Massachusetts Local Bankruptcy Rule 7036-1(a)(2), which states that, "(E)ach answer, statement, or objection shall be preceded by the request for admission to which it responds."

Copies of *Plaintiff's First Request for Admissions to Defendant Ameriquest Mortgage Company* and the Defendant's response thereto are attached.

Plaintiff further moves the Court to award her attorney's fees of $500.00 for the costs associated with the bringing of this motion.

Jacalyn S. Nosek
by her attorney,


/s/ Philip M. Stone
Philip M. Stone, BBO # 544139
44 Front Street
Worcester, MA 01608
Tel. (508) 755-7354
Fax. (508) 752.3730
E-mail: pstonelaw@rcn.com


Dated:          March 25, 2005


<u>CERTIFICATE OF SERVICE</u>

I, Philip M. Stone, do hereby certify on this day I electronically filed the foregoing pleading with the United States Bankruptcy Court for the District of Massachusetts using the CM/ECF System. I served the foregoing document on the following CM/ECF participants:

Denise Pappalardo, Standing Chapter 13 Trustee
Richard King, Office of the U.S. Trustee
Robert Charlton, Esq. and William Amann, Esq.

I further certify that I have mailed this day by first-class mail, postage prepaid, a copy of the aforementioned pleading electronically filed with the Court on the following non-CM/ECF participants:

Jacalyn S. Nosek
60 Bolton Road
PO Box 1311
S. Lancaster, MA 01561


/s/ Philip M. Stone
Philip M. Stone


DATED:          March 25, 2005

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

---

In re:

Jacalyn S. Nosek
        Debtor

Chapter 13
Case No.: 02-46025-JBR

---

Jacalyn S. Nosek
        Plaintiff
v.
Ameriquest Mortgage Company
        Defendant

Adversary Proceeding No.  04-04517

---

**Plaintiff's First Request for Admissions to Defendant Ameriquest Mortgage Company**

To Defendant Ameriquest Mortgage Company:

      Pursuant to Bankruptcy Rule 7036, you are hereby requested to admit the genuineness and truth of the matters set forth below within 30 days after service of this request upon you. These requested admissions are for the purpose of this action only, and your responses thereto must be made pursuant to Rule 36(a) of the Federal Rules of Civil Procedure as incorporated into Bankruptcy Rule 7036 and MLBR Rule 7036-1.

**I.**     **That each of the following statements is true:**

1.     On or about November 1, 2002, the first post-petition payment due was tendered directly by debtor's counsel to: ATTN: Darlene, Buchalter, Nemer, Fields & Younger, 895 Dove Street, Ste. 400, P.O. Box 8129, Newport Beach, CA  92660.

2.      The Debtor sent the December, 2002 payment due to Ameriquest, which subsequently

returned the check to her.

3.      The parties entered into a Stipulation, approved by this Court on or about July 9, 2003,

wherein it was agreed that payments would be sent directly to the law firm of Ablitt & Caruolo,

PC, Ameriquest's agent and attorneys-in-fact.

4.      Debtor tendered payments in the full amount called for by the Stipulation, including a catch-up

payment to cure a shortfall occurring during the cure period.

5.      In March, 2004, the Debtor directly contacted the law firm of Ablitt & Caruolo, PC, and

requested that a payment history be sent to her.

6.      The Payment History (attached as **Exhibit 2** to Plaintiff's Complaint, and here as **Exhibit 5**)

indicates that the payments made by the Debtor were posted by Ameriquest to a escrow

"Suspense Account".

7.      The Payment History fails to distinguish between pre-petitions arrears, which are paid through

Debtor's Chapter 13 Plan, administered by the Standing Chapter 13 Trustee, and post-petition

payments that become due after the filing of Debtor's petition for relief in on or about October

2, 2002.

8.      The Payment History fails to reflect all payments made by the Debtor from January through

May, 2004.

9.      Ameriquest failed to apply overpayments made by the debtor to reduce the principal amount

due.

10.     Ameriquest failed to accurately post the dates on which payments were received by

Ameriquests attorneys/agents.

11.     Ameriquest has assessed additional interest, late charges and finance charges against the

Debtor.

**II      That each of the following documents, a copy of which is attached to this request, is**

**genuine and complete:**

1.     The Note in the original amount of $90,000 and Mortgage given by Nosek to Ameriquest on or

about November 25, 1997, attached here as **Exhibit 1**.

2.     The letter from debtor's counsel dated November 1, 2002 sent to: ATTN: Darlene, Buchalter,

Nemer, Fields & Younger, 895 Dove Street, Ste. 400, P.O. Box 8129, Newport Beach, CA

92660, attached here as **Exhibit 2**.

3.     The Stipulation, approved by this Court on or about July 9, 2003, attached here as **Exhibit 3**.

4.     The *Motion to Withdraw Ameriquest Mortgage Company's Affidavit of Non-Compliance

without Prejudice*, dated December 10, 2003, attached here as **Exhibit 4.**

5.     The 12 month payment history faxed by Mr. Guarino on or about May 10, 2004, attached here

as **Exhibit 5**.

6.     The letter dated July 23, 2004, sent by Debtor's counsel, to local counsel for Ameriquest, Brian

Hachey, Esq. of the law firm of Ablitt & Caruolo, PC, attached here as **Exhibit 6.**

7.     The payoff statement, dated September 10, 2004, generated by Ameriquest, attached here as

**Exhibit 7.**

8.     The letter dated April 21, 2003, from Ameriquest addressed to Jacalyn S. Nosek, attached

here as **Exhibit 8.**

9.     The letter dated October 20, 2003, from Ameriquest addressed to Jacalyn S. Nosek, attached

here as **Exhibit 9.**

10.    The letter dated April 20, 2004, from Ameriquest addressed to Jacalyn S. Nosek, attached

here as **Exhibit 10.**

11.    The Payment History dated 9/23/2004, attached here as **Exhibit 11.**

12.    The Payment History dated 11/2/04, attached here as **Exhibit 12.**

                                        Jacalyn S. Nosek
                                        by her attorney,


                                        /s/ Philip M.  Stone
                                        Philip M. Stone, BBO # 544139
                                        44 Front Street
                                        Worcester, MA  01608
                                        Tel. (508) 755-7354
                                        Fax.  (508) 752.3730
                                        E-mail: pstonelaw@rcn.com


Dated:          February 17, 2005


CERTIFICATE OF SERVICE

    I, Philip M. Stone, do hereby certify on this day I electronically served via e-mail  the foregoing
pleadings on the following:

Richard King, Office of the U.S. Trustee to: USTPRegion01.WO.ECF@USDOJ.GOV;
Denise Pappalardo, Chapter 13 Trustee to: denisepappalardo@ch13worc.com;
Robert Charlton, Esq. (for Ameriquest Mortgage) to: rcharlton@acdlaw.com and
wamann@acdlaw.com

    I further certify that I have mailed this day by first-class mail, postage prepaid, a copy of the
aforementioned pleading to:

Jacalyn S. Nosek
60 Bolton Road
PO Box 1311
S. Lancaster, MA 01561

                                        /s/ Philip M.  Stone

Philip M. Stone

# ADJUSTABLE RATE NOTE

(LIBOR Index - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| November  25 , 1997 | ORANGE | CA |
|---|---|---|
| [Date] | [City] | [State] |

60 BOLTON RD
SOUTH LANCASTER, MA  01561

[Property Address]

## 1.   BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $         90,000.00         (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is

**AMERIQUEST MORTGAGE COMPANY**

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.   INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of         7.500         %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3.   PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on         January   1 ,  1998
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on         December  1 , 2027         , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at         505 SOUTH MAIN STREET, STE. 6000
ORANGE, CA 92868
or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $         629.29         . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of         June   1 , 1998         , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding         Six and Three Fourths         percentage point(s) (         6.750         %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

**EXHIBIT 1**

WE HEREBY CERTIFY THIS
TO BE A TRUE AND CORRECT
COPY OF THE ORIGINAL
BY:
AMERIQUEST MORTGAGE COMPANY

MASSACHUSETTS ADJUSTABLE RATE NOTE - LIBOR INDEX

The Note Holder will ... ... ... of the ... ... will be ... ... to repay the unpaid principal that I am exp... ... owe at the Change Date in full on the Maturity Date a... ... ...w interest rate in substantially equal payments. The result of ... ...alculation will be the new amount of my monthly paymen...

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than **8.500** % or less than **7.500** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One** percentage point(s) ( **1.000** %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **13.500** % or less than **7.500** %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment.

If within three (3) years from the date of execution of the Security Instrument, I make a full prepayment, I will pay a prepayment charge subject to the following limitations: (i) if I make a full prepayment for the purpose of refinancing my loan with another financial institution, the prepayment charge will be equal to three (3) months' interest, and (ii) if I make a full prepayment for any other purpose, the prepayment charge will be equal to the lesser of three (3) months' interest or the remaining balance of the first year's interest.

## 6.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 7.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    **FIFTEEN** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **3.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

### (D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I ... ... ... ... ... ... ... different address.

TO BE A TRUE AND CORRECT
COPY OF THE ORIGINAL
BY:
AMERIQUEST MORTGAGE COMPANY



## 9.   OBLIGATIONS OF...

If more than one person ... this Note each person is fully and personally ... d to keep all of the promises made in this Note, including the ... ise to pay the full amount owed. Any person who is a g... tor, surety or endorser of this Note is also obligated to do these ... ings. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10.   WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11.   UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____  (Seal)      _____  (Seal)
JACALYNS NOSEK                 -Borrower                                   -Borrower

_____  (Seal)      _____  (Seal)
                               -Borrower                                   -Borrower

*[Sign Original Only]*

WE HEREBY CERTIFY THIS
TO BE A TRUE AND CORRECT
COPY OF THE ORIGINAL
BY: _____
AMERIQUEST MORTGAGE COMPANY

4140156 (04/01)
4140156 (REV 3/97)TS

BOOK 19404 PAGE 164

When recorded, mail to:

AMERIQUEST MORTGAGE COMPANY
P.O. BOX 11507
SANTA ANA, CA 92711

LOAN NO. 4219515-5610

134662

BOL

97 DEC -3 AM 10: 38

——————— [Space Above This Line For Recording Data] ———————

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on         November   25 ,  1997        . The mortgagor is
JACALYN S NOSEK

("Borrower"). This Security Instrument is given to
          AMERIQUEST MORTGAGE COMPANY

which is organized and existing under the laws of    the State of Delaware                     , and whose
address is    1100 TOWN & COUNTRY RD., STE. 200
          ORANGE, CA ^2868                    ("Lender"). Borrower owes Lender the principal sum of
Ninety Thousand and no/100-----------------------------------------------------------------
                              Dollars (U.S. $    90,000.00    ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for
monthly payments, with the full debt, if not paid earlier, due and payable on    December   1 ,  2027    .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals,
extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to
protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this
Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, with power
of sale, the following described property located in        WORCESTER                    County, Massachusetts:
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

which has the address of   60  BOLTON RD                              SOUTH LANCASTER   [Street, City],
Massachusetts    01561                  [Zip Code]  ("Property Address");

MASSACHUSETTS-Single Family-FNMA/FHLMC
          UNIFORM INSTRUMENT Form 3022  9/90
    -6H(MA) (9403) 01            Amended 12/93
    VMP MORTGAGE FORMS - (800)521-7291
    TDMA1 (REV 3/97)13
Page 1 of 6            Initials: JSN

TOGETHER W        th the improvements now or hereafter erected on the p        , and all easements, appurtenances, and fixtures now or here...      a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest; Prepayment and Late Charges. Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. Funds for Taxes and Insurance. Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. Application of Payments. Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

-6H(MA) (9403).01
TFMA2.(RE)V 3/93T5

Pa = 2 of 8

Form 3022   9/90
Initials

Loan No. 4219515-5619

BOOK 19404 PAGE

5. **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for, at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7. **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. **Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve

-6H(MA) (9409.01)
TDM-SUREV SYSTEM

Page 3 of 6

Form 3022    9/90

Loan No. 4219515-5618



1304 PAGE 167

payments may no lo[...] required, at the option of Lender, if mortgage insura[...] erage (in the amount and for the period that Lender requires[...] ded by an insurer approved by Lender again becomes [...] able and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

9. Inspection. Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payment.

11. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. Successors and Assigns Bound; Joint and Several Liability; Co-signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. Loan Charges. If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

15. Governing Law; Severability. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

16. Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument.

GHIMAI (9403) 01
TDMEXX (REV 3/97)3

Page 4 of 6

Form 3022    9/90

Initials [signature]

Loan No. 4219515-5619

is sold or transferred (or i ............ and Bc ....... i not a natural person) without Lender's prior writt ....... 'en.. Lender may, at its option, require immediate. ta ... .al of all sums secured by this Security Instrument. ....... er, this option shall not be exercised by Lender if exer ....... prohibited by federal law as of the date of this Security Instrum.. ..

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. Borrower's Right to Reinstate. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. Sale of Note; Change of Loan Servicer. The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

20. Hazardous Substances. Borrower shall not cause or permit the presence, use, disposal, storage, or releas· of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remedi·ntion of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or b·fore the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security I. rument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies perm ted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by applicable law, in the manner provided by applicable law. Lender shall publish the

-6H(MA) (9403).21
TUMA3:REV 5/97/5

Page 5 of 8

Form 3022   9/90

Loan No. 4219515-5610

3404 PAGE 169

notice of sale, and the property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

22. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument to Borrower. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

23. **Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

24. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

[X] Adjustable Rate Rider          [ ] Condominium Rider              [ ] 1-4 Family Rider
[ ] Graduated Payment Rider        [ ] Planned Unit Development Rider  [ ] Biweekly Payment Rider
[ ] Balloon Rider                  [ ] Rate Improvement Rider          [ ] Second Home Rider
[ ] V.A. Rider                     [ ] Other(s) [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.
Witnesses:

_____    _____ (Seal)
                                     JACALYN S NOSEK                    -Borrower

_____    _____ (Seal)
                                                                        -Borrower

_____ (Seal)    _____ (Seal)
                            -Borrower                                   -Borrower

COMMONWEALTH OF MASSACHUSETTS.                    County ss: Worcester

On this  25TH  day of  November , 1997 , before me personally appeared
          Jacalyn S Nosek
                                                                     , to me
known to be the person(s) described in and who executed the foregoing instrument, and acknowledged that he she/they executed the same as his/her/their free act and deed.

My Commission Expires:

9/24/2004                          _____
                                   Notary Public
                                   R. Perry Cranston JR

               Sea

-6H(MA) (9403) 01          Page 8 of 8                    Form 3022  9/90
TDM 46 (REV 3/93)?

Loan No. 4219515-5610

## EXHIBIT A

re: Jacalyn S. Nosek with a Life Estate reserved for Joseph S. Nosek

That certain lot or parcel of land with any buildings thereon located in the Municipality of S. Lancaster, Worcester County, State of Mass; bounded and described as referenced below.

Beginning at the southeasterly corner of the lot on the northerly side of South Lancaster-Bolton Road at land now or formerly of one Lavigne.

Thence on said road S 59° 59' W forty-eight and 29/100 (48.29) feet to a cement bound at land now or formerly of one Christianson;

Thence on said Christianson land N 63° 16' W seventy-seven and 5/10 (77.5) feet to a cement bound;

Thence on land of Martha L. Howard, Trustee, N 39° 49' E eighty-three and 06/100 (83.06) feet;

Thence by land of said Martha L. Howard, Trustee, and land of said Lavigne S 43° 46' East fifty-one and 29/100 (51.29) feet;

Thence by said Lavigne land S 30° 21' E forty-three and 85/100 (13.85) feet to the point of beginning.

Subject to a Right of Way as described in a deed from Jeannette M. McDunn et al to Michael P. McDunn et ux dated November 14, 1957, recorded with Worcester District Registry of Deeds in Book 3907, Page 183.

Subject to and with the benefit of any and/or all rights, restrictions, covenants and easements of record, insofar as the same may be in force and applicable.

For title see deed dated 4-22-96 from Joseph S. Nosek, to Jacalyn S. Nosek with a Life Estate reserved for Joseph S. Nosek, recorded in the Worcester County Registry of Deeds Book 17841, Page 383.



# PHILIP M. STONE

ATTORNEY AT LAW
44 FRONT STREET
WORCESTER, MASSACHUSETTS 01608-1752

TELEPHONE (508) 755-7354
FAX (508) 752-3730
E-MAIL pstonelaw@rcn.com

**EXHIBIT 2**

November 1, 2002

ATTN: Darlene
Buchalter, Nemer, Fields & Younger
895 Dove Street, Ste. 400
P.O. Box 8129
Newport Beach, CA 92660

**RE:   Jacalyn S. Nosek**
**Docket No. 02-46025-JBR**

Dear Darlene,

Per our conversation earlier today, enclosed is Ms. Nosek's check to be applied to her first post-petition payment due Ameriquest. Your law firm has filed an appearance in the above referenced case on behalf of Ameriquest Mortgage Company.

Very truly yours,

Philip M. Stone

PMS/hs
enc.
cc: Client (letter only)

---

JACALYN S. NOSEK                              5-13/110              146
60 BOLTON RD.   978-365-4466                  9444967053
P.O. BOX 1311
SOUTH LANCASTER, MA  01561-1311         DATE 11-1-02

PAY TO THE
ORDER OF  Ameriquest Mortgage          $ 820 96/100

Eight hundred twenty & 96/100                DOLLARS

Fleet
www.fleet.com
84415  Far Plaza Office
West Boylston, Massachusetts 01583

MEMO  Loan # 000 4219515          Jacalyn S Nosek

⑆011000138⑆ 94449 6705⑈ 0146

Nov. Payment

### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MASSACHUSETTS
### WESTERN DIVISION

**EXHIBIT 3**

IN RE:

CHAPTER 13

CASE NO. 02-46025-JBR

Jacalyn S. Nosek

## STIPULATION ON AMERIQUEST MORTGAGE COMPANY'S MOTION FOR RELIEF FROM STAY

Now comes, Ameriquest Mortgage Company ("Lender") and Jacalyn S. Nosek ("Debtor") and stipulate as follows:

1.     The total post-petition arrearage as of May 6, 2003, is  $1,569.89. The post-petition arrears consist of a remaining arrearage of approximately $394.896 and legal fees and costs in the amount of $1,175.00.

2.     On or before June 15, 2003, the Debtor shall make a payment in certified funds, payable to Ameriquest's attorney, in the amount of $394.89 to be applied towards the post-petition arrearage.

3.     Commencing June 1, 2003, and monthly thereafter, the Debtor shall make her regular monthly post-petition payments, currently in the amount of $759.67, subject to late charges of $22.79, both subject to change pursuant to the terms of the Note and Mortgage.  The regular monthly payment shall be $700.77, effective July 1, 2003.

4.     In addition to the payments as specified in paragraph 2 and 3, that the Debtor shall make twelve (12) equal payments on the fifteenth (15th) of each month, commencing July 15, 2003, in the amount of $97.92 for a total of $1,175.00, which will bring her account post-petition current on or before June 15, 2004.

5.     If the Debtor fails to make said payments by the dates specified in paragraph two through five of this stipulation or any monthly payment by the thirtieth of the month in which that payment is due or in any other way fails to comply within the terms hereof, the Lender's Motion for Relief from Stay may be granted without hearing by the Court upon Lender filing a Certificate of Non-Compliance with the Court after ten (10) days notice of default to the Debtor(s) Attorney, by first class mail postage prepaid or facsimile. **Debtor may request a hearing only on the issues of payments made and received.**

6.     Funds tendered in response to a 10-day Notice of Default MUST be tendered in certified funds to the local attorney of record for Ameriquest Mortgage Company.

7.     The terms of this Stipulation shall be null and void if the case is dismissed and subject to an affidavit of noncompliance upon conversion.

Agreed to on this          day of June, 2003

Ameriquest Mortgage Company,
By Lender's attorney,

Jennifer G. Haskell (651034)
ABLITT & CARUOLO, PC
333 North Avenue
Wakefield, MA 01880
(781) 246-8995

By Debtor's Attorney,

Philip M. Stone, Esq.
44 Front Street
Worcester, MA 01608
(508) 755-7354

Jacalyn Nosek

O Box 311
Lancaster, MA 01561

EXHIBIT 4

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
### WESTERN DIVISION

IN RE:

Jacalyn S. Nosek

| | |
|---|---|
| Ameriquest Mortgage Company | CHAPTER 13 |
| v. | CASE NO. 02-46025-JBR |
| Jacalyn S. Nosek | |

## MOTION TO WITHDRAW AMERIQUEST MORTGAGE COMPANY'S AFFIDAVIT OF NON-COMPLIANCE WITHOUT PREJUDICE

Now comes Ameriquest Mortgage Company and moves that this Court allow it to withdraw its Affidavit of Non-Compliance, relative to the above captioned matter.

As grounds therefor, Ameriquest Mortgage Company states that the debtor has brought her account current pursuant to the terms of the Stipulation.

Respectfully submitted,

Ameriquest Mortgage Company
By its Attorney

/s/ Jennifer G. Haskell

Jennifer G. Haskell, Esquire
BBO No. 651034
ABLITT & CARUOLO PC
333 North Avenue, 4th Floor
Wakefield, MA 01880
781-246-8995

DATE: December 10, 2003

12/11/2003 ALLOWED.

12 12 03
73

MAY-10-2004 MON 03:10 PM Ablitt & Caruolo, PC.         FAX NO. 7812468994

Page 1 of 2

☒ ☐ **Current Loan Number (F-J-CONV): 0004219515/LB8**          **MICHAEL GUARINO (GOSSELIN)**

**Borrower:** NOSEK, S JACALYN                    **Servicer:** Ameriquest Mortgage Company (LB8)
**Address:** 60 BOLTON RD                    **Attorney File #:**
          SOUTH LANCASTER, MA 01561          **LenStar #:** LBB035177A
                               **Investor #:** 0004219515

File History Detail...

| Back | Word Wrap: On |

# EXHIBIT 5

**Sent:** 5/10/2004 2:59:38 PM
**From:** JASON SYNDERGAARD
**Read:** 5/10/2004 3:01:16 PM
**Read By:** MICHAEL GUARINO
**Topic:** 12 month payment history

**Message:**
```
SRR1 0004219515 _____      CUSTOMER SERVICE  INV 789/001  05/07/04  14:46:05
JACALYN S NOSEK               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 0C  TYPE CONV. RES.   ARM      MAN B
                              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     IR 10.50000 BR BD   978-365-4466
60 BOLTON RD                  SOUTH LANCASTER M. 01561              B 978-365-9537
_ DEMA    DEMAND REQUEST RECEIVED WITH AUTHORIZATION               : 04/06/04
----RPMT---------------------* END OF LOAN HISTORY *--------------------(MORE)---
PROC-DT  DUE-DT TRAN  TRAN-DESCRIPTION                    TRAN-EFFECTIVE-DATE
   TRAN-AMT   PRINCIPAL   INTEREST   ESCROW   AMOUNT/CD/DESCRIPTION
05-04-04  10-02  173  PAYMENT
   700.00       0.00       0.00      0.03     700.00   SUSPENSE
02-23-04  10-02  173  PAYMENT
   700.77       0.00       0.00      0.03     700.77   SUSPENSE
02-03-04  10-02  173  PAYMENT
   725.00       0.00       0.00      0.01     725.00   SUSPENSE
12-31-03  09-02  173  PAYMENT
   700.77      58.10     762.86      0.01     120.19-  SUSPENSE
             87,126.25
12-31-03  09-02  173  PAYMENT
   630.25       0.00       0.00      0.01     630.25   SUSPENSE
11-25-03  08-02  173  PAYMENT
   700.77      57.59     763.37      0.00     120.19-  SUSPENSE
             87,184.35
10-20-03  07-02  173  PAYMENT
   700.11      57.09     763.87      0.00     120.85-  SUSPENSE
             87,241.94
09-19-03  06-02  173  PAYMENT
   700.77      47.31     837.07      0.00     183.61-  SUSPENSE
             87,299.03
08-18-03  05-02  173  PAYMENT
   700.11      46.86     837.52      0.00     184.27-  SUSPENSE
             87,346.34
07-25-03  04-02  173  PAYMENT
     0.00      46.42     837.96      0.00
             87,393.20
07-25-03  03-02  173  PAYMENT
   1,542.13    45.98     838.40      0.00     226.63-  SUSPENSE
             87,439.62
06-27-03  03-02  173  PAYMENT
   394.89       0.00       0.00      0.00     394.89   SUSPENSE
06-26-03  02-02  173  PAYMENT
     0.00      45.54     838.84      0.00     884.38-  SUSPENSE
             87,485.60
06-17-03  02-02  173  PAYMENT
     0.00      45.11     839.27      0.00     884.38-  SUSPENSE
             87,531.14
06-10-03  01-02  173  PAYMENT
   164.00       0.00       0.00      0.00     164.00   SUSPENSE
05-27-03  01-02  173  PAYMENT
   100.00       0.00       0.00      0.00     100.00   SUSPENSE
05-27-03  01-02  173  PAYMENT
    50.00       0.00       0.00      0.00      50.00   SUSPENSE
```

File History

```
05-27-03  12-01  173  PAYMENT
        903.36        37.06        912.64      . .00        46.34-  SUSPENSE
                  87,576.25
05-27-03  11-01  173  PAYMENT
        900.00        36.68        913.02      (.00        49.70-  SUSPENSE
                  87,613.31
04-21-03  11-01  173  PAYMENT
        820.11         0.00          0.00      0.00       820.11   SUSPENSE
04-21-03  11-01  173  PAYMENT
        850.00         0.00          0.00      0 00        24.63 1 LATE CHARGE
                                                          825.37   SUSPENSE
03-10-03  10-01  173  PAYMENT
        820.11        36.30        913.40      0 00       129.59-  SUSPENSE
                  87,649.99


                        (0.140625)
                          (0)
```

# PHILIP M. STONE

### ATTORNEY AT LAW
### 44 FRONT STREET
### WORCESTER, MASSACHUSETTS 01608-1752

---

TELEPHONE (508) 755-7354
FAX (508) 752-3730
E-MAIL pstonelaw@rcn.com

RECEIPT
7192 9106 6640 0000 4068

FROM:
Philip M. Stone, Esq.
RE: Nosek v. Ameriquest

SEND TO:
Brian Hachey, Esq.
Ablitt & Caruolo, PC
333 North Avenue, 4th Floor
Wakefield MA 01880

FEES:
Postage
Certified Fee
Special
Restricted
Return
TOTAL                        $
POSTMARK OR DATE

July 23, 2004


Brian Hachey, Esq.
Ablitt & Caruolo, PC
333 North Avenue, 4th Floor
Wakefield, MA  01880


**RE:    Jacalyn S. Nosek**
**Chapter 13 Case No. 02-46025-JBR**
**Your Client: Ameriquest Mortgage Company.**

Dear Attorney Hachey:

I am writing to you on behalf of my client, Jacalyn S. Nosek, the Debtor in the above referenced bankruptcy case.  In March, 2004, Ms. Nosek directly contacted the law firm of Ablitt & Caruolo, PC, and requested that a payment history for the past twelve months be sent to her.

After several unsuccessful requests to obtain a payment history, she asked me to intercede.

On or about April 15, 2004, Michael Guarino, an employee of Ablitt & Caruolo, PC, advised my assistant, Hope Johnson,  that written authorization from Ms. Nosek would be required before a payment history would be provided.

A release was duly prepared, signed by Ms. Nosek, and faxed to Mr. Guarino on April 26, 2004.

On May 5, 2004, a follow up call was made to Mr. Guarino by Ms.  Johnson.  Mr. Guarino claimed to have no records in his file, nor any memory of receiving the Release signed by Ms. Nosek.

The Release was faxed again to Mr. Guarino on May 5, 2004.

On May 10, 2004, Mr.  Guarino faxed a 12 month payment history ("the Payment History"), to me.

The Payment History indicates that all payment made by Ms. Nosek were posted by

**EXHIBIT 6**

Brian Hachey, Esq.
Ablitt & Caruolo, PC
Page Two
July 23, 2004

Ameriquest to a escrow "Suspense Account".

The Payment History fails to properly reflect the dates payments were received by your law firm.  In fact, it was agreed between Jennifer G. Haskell of your office and me that payments were to be sent directly to Ablitt & Caruolo, PC because of the accounting problems Ms.  Nosek had experienced in the past with Ameriquest.

The Payment History fails to reflect all payments made by Ms. Nosek from January through May, 2004. Copies of receipts evidencing the dates and amounts of payments made by Ms. Nosek are attached

The Payment History incorrectly states the amounts due from Ms. Nosek pursuant to the terms of the Variable rate Note.  According to letters from Ameriquest, also attached, the monthly payments of principal and interest due should be as follows:

| Effective Date | Amount |
|---|---|
| 07-01-2003 | $700.77 |
| 01-01-2004 | 672.37 |
| 07-01-2004 | 672.37 |

Ameriquest failed to apply overpayments made by Ms. Nosek to reduce the principal amount due.

By failing to properly post the dates on which payments were received, Ameriquest has assessed additional interest and finance charges against Ms. Nosek.

By failing to maintain accurate payment history records, Ameriquest has effectively denied Ms. Nosek an opportunity to re-finance her mortgage on advantageous terms, and to obtain a Discharge in her bankruptcy case.

I have been instructed by my client to move as quickly as possible to resolve this.  To that end, I have prepared a complaint alleging violations by Ameriquest of various state and Federal statutes, including the Truth in Lending Act, 15 U.S.C. §§1601 *et seq*. ("TILA") and implementing Federal Reserve Board Regulation Z, 12 C.F.R. part 226, (ii) the Real Estate Settlement Procedures Act, 12 U.S.C. §§2601 *et seq*. ("RESPA") and HUD implementing Regulation X, 24 CFR Part 3500, *et seq*. and (iii) Massachusetts General Laws Chapter 93A.  I will defer filing that complaint so as to give your client the opportunity to comply with their statutory obligations.

Brian Hachey, Esq.
Ablitt & Caruolo, PC
Page Three
July 23, 2004


This is a written demand for relief pursuant to Massachusetts General Laws Chapter 93A, Sections 2, 9 and 11 for payment of damages suffered by Ms. Nosek as a consequence of Ameriquest's unfair and/or deceptive acts or practices. It is also a *Qualified Written Request* under the Real Estate Settlement Procedures Act, 12 USC §2605(e).

Please review the enclosed documents with your client, and get back to me with a proposal that addresses the both the accounting discrepancies, and as well as a means to make Ms. Nosek whole for the financial damages she has incurred as a result of Ameriquest's improper handling of her account, and the professional fees incurred by her.

Very truly yours,


Philip M. Stone


PMS/hs
enc.
cc: Client

P-21-2004 TUE 01:01 PM                          FAX NO.                          P. 03

**EXHIBIT 7**

09-17-04   09:54am   From-AMERIQUEST MORTGAGE           +714 245 0437      T-604  P.001/002  F-976

AMERIQUEST MORTGAGE COMPANY
505 CITY PARKWAY WEST, SUITE 100
ORANGE, CA 92868-2912
(800) 630-5262

September 10, 2004          PAYOFF STATEMENT
                            FOR INTERNAL USE ONLY

TO:
Natasha Pavloff                         Contact Phone: (714)634-2474
Bad-Bankruptcy
Fax No 714 347 5098

                                        Loan No. 0004219615
Borrower(s):                            Loan Type: Conventional
Jocalyn S Sosak                         Property Address:
                                        60 Bolton Rd
60 Bolton Rd                            South Lancaster MA 01561
South Lancaster MA 01561

Interest is calculated to September 10, 2004.
This loan is due for the May 01, 2005 payment.
The current total unpaid Principal Balance is:     $      86,660.18
Interest at  9.50000%                                      15,141.01
Prepayment Penalty/Expiration Date: 11-30-00                    .00
Suspense Balance                                          -1,929.78
Unpaid Late Charges                                          874.18
Unpaid NSF Charges                                            10.00
Expenses Paid by Ameriquest Mortgage                      12,226.40
Foreclosure Fee                                           1,000.00
Demand/Beneficiary                                            40.00
Property Inspection                                          20.00
TOTAL AMOUNT TO PAY IN FULL AS OF September 10, 2004: $   107,241.81

Funds received after September 10, 2004 will require an additional $ 18.64
interest per day. A late charge of $ 29.17 will be assessed if any
monthly payment is not received within 15 days of the due date.

PAYOFF FUNDS MUST BE RECEIVED VIA CERTIFIED CHECK, CASHIERS/OFFICIAL
BANK CHECK OR WIRE TRANSFER. ESCROW/TRUST CHECKS ARE NOT ACCEPTED.
Wiring Instructions: JP Morgan Chase Bank of Texas, ABA 113000609
Credit: Ameriquest Mortgage Company; Account No. 00100270601;
Further Credit: Loan No. 0004219615, Attention: Payoff Department.

Verification: All figures are subject to final verification of the
Note Holder. Figures may be adjusted if any check or money order
previously received is rejected by the institution by which it is
drawn. The Note Holder reserves the right to demand additional funds
before or subsequent to the release of the Note Holder security
interest in the property securing the loan to correct any error or
omission in these figures made in good faith.

Provide seller's future address if other than the encumbered property.
All refunds will be paid directly to the borrower identified above.
If the payoff remittance is less than required, the check issuer will
be contacted. Additional interest will be due and payable.

            SEE NEXT PAGE FOR ADDITIONAL COMMENTS

AMERIQUEST MORTGAGE COMPANY
505 CITY PARKWAY WEST, SUITE 100
ORANGE, CA 92868-2912
PHONE (800) 430-5262

DO NOT SEND ANY CHECKS TO THE ABOVE ADDRESS!

September 10, 2004

Jacalyn S Novak

69 Bolton Rd
South Lancaster MA 01861

RE:  Loan No. C004219815

RAYOFF STATEMENT - ADDITIONAL COMMENTS

INTEREST RATE WILL ADJUST EFFECTIVE 06/2003

TAXES WILL DISBURSE N/A

Foreclosure/Bankruptcy fees/costs are good through 10/07/04.

Foreclosure Sale Date is set for N/A.

In the event this loan reinstates prior to the expiration date,
this payoff statement becomes null and void.

In the event we receive relief or dismissal on the Bankruptcy,
additional Foreclosure fees may apply and a new payoff statement
must be requested.

PLEASE VERIFY FIGURES PRIOR TO PAYOFF.

WIRING INSTRUCTIONS

JP MORGAN CHASE BANK OF HOUSTON TEXAS
ABA NUMBER: 113000609
CREDIT: AMERIQUEST MORTGAGE COMPANY
ACCOUNT NUMBER: 0018327960L
FURTHER CREDIT: LOAN NUMBER 0004219815
ATTENTION: PAYOFF DEPARTMENT

N0514/008/FED

...quest Mortgage Company
..J. Box 11000
Santa Ana, CA 92711-1000



AMERIQUEST®
MORTGAGE
C O M P A N Y

**EXHIBIT 8**

April 21, 2003

Jacalyn S Nosek
60 Bolton Rd
South Lancaster,  MA 01561

Re:  Loan Number 0004219515
     Property Address:  60 Bolton Rd
                        South Lancaster MA 01561

ADJUSTABLE LOAN NOTIFICATION

Your promissory note permits us to change the interest rate and
monthly payment amount on your loan every 6 months. This
notice is to give you information about the next such change.

Your new interest rate will be 8.50000%, which is based on an index
value of 1.33438. The margin on your loan is 6.75000. Based on the
new interest rate and a projected loan balance of $ 86,512.38, your
new principal and interest amount will be $ 700.77. Your first
payment at the new amount will be due on 07-01-03.

The interest rate in effect immediately prior to this change is
 9.50000%, which is based on an index value of 1.82375.

NEW INTEREST RATE AND PAYMENT:

Interest Rate                        8.50000%
Principal & Interest        $         700.77
TOTAL PAYMENT               $         700.77

Effective Date of New Payment        07-01-03

If you have any questions, please call our Customer Service
Department at (800) 435-5262. Our office hours are 7:00 a.m. to
6:00 p.m. Pacific Standard Time.

                              Ltr. No. AR002/015/CPI

Ameriquest Mortgage Company
P.O. Box 11000
Santa Ana, CA 92711-1000


**AMERIQUEST**
MORTGAGE COMPANY

October 20, 2003

EXHIBIT 9

Jacalyn S Nosek
60 Bolton Rd
South Lancaster, MA 01561

Re:  Loan Number 0004219515
     Property Address:  60 Bolton Rd
                        South Lancaster MA 01561
     Bankruptcy Case No.: 02-46025

### ADJUSTABLE LOAN NOTIFICATION

Your promissory note permits us to change the interest rate and
monthly payment amount on your loan every 6 months. This
notice is to give you information about the next such change.

Your new interest rate will be 8.00000%, which is based on an index
value of 1.20625. The margin on your loan is 6.75000. Based on the
new interest rate and a projected loan balance of $ 85,975.11, your
new principal and interest amount will be $ 672.37. Your first
payment at the new amount will be due on 01-01-04.

The interest rate in effect immediately prior to this change is
 8.50000%, which is based on an index value of 1.33438.

NEW INTEREST RATE AND PAYMENT:

| Interest Rate | | 8.00000% |
|---|---|---|
| Principal & Interest | $ | 672.37 |
| TOTAL PAYMENT | $ | 672.37 |

Effective Date of New Payment        01-01-04

If you have any questions, please call our Customer Care
Department at (800) 430-5262. Our office hours are 7:00 a.m. to
6:00 p.m. Pacific Standard Time.

                    Ltr. No. AR002/017/CPI

Ameriquest Mortgage Company
P.O. Box 11000
Santa Ana, CA 92711-1000



April 20, 2004

EXHIBIT 10

Jacalyn S Nosek
60 Bolton Rd
South Lancaster,  MA 01561

Re:   Loan Number 0004219515
      Property Address:  60 Bolton Rd
                         South Lancaster MA 01561
      Bankruptcy Case No.: 02-46025

### ADJUSTABLE LOAN NOTIFICATION

Your promissory note permits us to change the interest rate and
monthly payment amount on your loan every 6 months. This
notice is to give you information about the next such change.

Your new interest rate will be 8.00000%, which is based on an index
value of 1.29000. The margin on your loan is 6.75000. Based on the
new interest rate and a projected loan balance of $ 85,369.90, your
new principal and interest amount will be $ 672.37. Your first
payment at the new amount will be due on 07-01-04.

The interest rate in effect immediately prior to this change is
 8.00000%, which is based on an index value of 1.20625.

NEW INTEREST RATE AND PAYMENT:

Interest Rate                        8.00000%
Principal & Interest        $         672.37
TOTAL PAYMENT               $         672.37

Effective Date of New Payment        07-01-04

For information on your mortgage loan, you can visit
www.myameriquestloan.com.  If you have any additional questions or
concerns, please contact our Customer Care Department at (800) 430-5262,
Monday through Friday, 7:00 a.m. to 6:00 p.m., Pacific Time.

AR002/020/CPI



AMERIQUEST
MORTGAGE
C O M P A N Y

State        MA

**Borrower:** Nosek, Jacalyn            **Loan #** 0004219515
**Filing Date:** 10/2/2002

| Date Received | Check No. | Amount | Post-petition Due Date | Funds Applied to: | Over/Short Pmt |
|---|---|---|---|---|---|
| 11/14/02 | 146 | $820.96 | 1-Nov-02 | Suspense | |
| 3/10/03 | 223 | $820.11 | 1-Dec-02 | Suspense | (0.85) |
| 4/21/03 | 647327330 | $850.00 | 1-Jan-03 | Suspense | 29.04 |
| 4/21/03 | 299192946 | $820.11 | 1-Feb-03 | Suspense | (0.85) |
| 5/27/03 | 165946932 | $900.00 | 1-Mar-03 | Suspense | 79.04 |
| 5/27/03 | 1084952 | $903.36 | 1-Apr-03 | Suspense | 82.40 |
| 5/27/03 | 6674 | $50.00 | 1-May-03 | Suspense | (709.67) |
| 5/24/03 | 7633 | $100.00 | 1-May-03 | Suspense | (659.67) |
| 6/10/03 | 299193156 | $164.00 | 1-May-03 | Suspense | (595.67) |
| 6/27/03 | 226 | $394.89 | 15-Jun-03 | APO PMT | |
| 7/25/03 | 385442503 | $1,542.13 | May03-June03 | Suspense | 22.79 |
| 8/18/03 | 165947461 | $700.11 | 1-Jul-03 | Suspense | (0.66) |
| 9/19/03 | 353743225 | $700.77 | 1-Aug-03 | Suspense | |
| 10/20/03 | 165947837 | $700.11 | 1-Sep-03 | Suspense | (0.66) |
| 11/25/03 | 453108206 | $700.77 | 1-Oct-03 | Suspense | |
| 12/31/03 | 453108284 | $630.25 | 15-Jul-03 | APO PMT | |
| 12/31/03 | 732206559 | $700.77 | 1-Nov-03 | Suspense | |
| 2/3/04 | 453108382 | $725.00 | 1-Dec-03 | Suspense | (24.23) |
| 2/23/04 | 6531546543 | $700.77 | 1-Jan-04 | Suspense | 28.40 |
| 5/4/04 | 6853391728 | $700.00 | 1-Feb-04 | Suspense | 27.63 |
| 6/8/04 | 459491147 | $700.00 | 1-Mar-04 | Suspense | 27.63 |
| 7/15/04 | 6853647543 | $673.00 | 1-Apr-04 | Suspense | 0.63 |
| 8/24/04 | 765203649 | $1,400.00 | May04-June04 | Suspense | 55.26 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| **TOTALS** | | **$16,397.11** | | | |

e: Total amount received which is reflected above includes the additional payments made per the Adequate Protection Order.*

**EXHIBIT 11**

9/23/2004

**EXHIBIT 12**

## PAYMENT HISTORY AND ACCOUNT RECONCILIATION

Nosek, Jacalyn
Loan No. 0004219515

| DATE REC'D | CK No. | AMT | MTG AMT | LC | DUE DATE | DIFFERENCE |
|---|---|---|---|---|---|---|
| 6-27-03 | 226 | 394.89 | 759.67 | 0.00 | 6-01-03 | 0.00** |
| 7-25-03 | 385442503 | 1542.13 | 700.77 | 22.79 | 8-01-03 | 97.49 |
| | | | | 20.31 | | |
| 8-18-03 | 165947461 | 700.11 | 700.77 | 20.31 | 9-01-03 | 76.52 |
| 9-19-03 | 3537423225 | 700.77 | 700.77 | 20.31 | 10-01-03 | 56.21 |
| 10-20-03 | 165947837 | 700.11 | 700.77 | 20.31 | 11-01-03 | 35.24 |
| 11-25-03 | 453108206 | 700.77 | 700.77 | 20.31 | 12-01-03 | 14.93 |
| **12-31-03** | **453108284** | **630.25** | **1175.00 APO/STIP PYMT** | | | **(544.75)**\*\* |
| 12-31-03 | 732206559 | 700.77 | 700.77 | 20.31 | 1-01-04 | (5.38) |
| 2-3-04 | 453108382 | 725.00 | 672.37 | 20.17 | 2-01-04 | 27.08 |
| 2-23-04 | 6531546543 | 700.77 | 672.37 | 20.17 | 3-01-04 | 35.31 |
| 5-4-04 | 6853391728 | 700.00 | 672.37 | 20.17 | 4-01-04 | 42.77 |
| 6-8-04 | 459491147 | 700.00 | 672.37 | 20.17 | 5-01-04 | 50.23 |
| 7-15-04 | 6853647543 | 673.00 | 672.37 | 20.17 | 6-01-04 | 30.69 |
| 8-24-04 | 765203649 | 1400.00 | 672.37 | 20.17 | 8-01-04 | 65.78 |
| 10-15-04 | 6531550165 | 725.22 | 672.37 | 20.17 | 9-01-04 | 98.46 |

DUE FOR SEPTEMBER 1, 2004 POST-PETITION REGULAR MORTGAGE PAYMENT
AND $544.75 SHORTGAGE ON STIPULATION AGREEMENT.

\*\*See Stipulation to bring account current filed by parties June 2003

PN:     Rate Changes
        June 2003            $759.67
        July 2003            $700.77
        January 2004         $672.37

F:\RMCM CASE FILES\Buchalter\10.0049 - Nosek\PAYMENT HISTORY AND ACCOUNT RECONCILIATION.doc

_[handwritten note]_ phil,
_li ... my way to Court Mon_
_Lct tall before the hearing_
_Ihe... . Bill Anean_

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## WESTERN DIVISION

IN RE:

Jacalyn S. Nosek

| | |
|---|---|
| Ameriquest Mortgage Company | CHAPTER 13 |
| | CASE NO. 02-46025-JBR |
| v. | AP NO. 04-04517 |
| Jacalyn S. Nosek | |

### AMERIQUEST'S RESPONSE TO REQUEST FOR ADMISSIONS

I.

1. Denied
2. Denied
3. Admitted
4. Denied
5. Denied
6. Denied
7. Denied
8. Denied
9. Denied
10. Denied
11. Denied

II.

1. Admitted
2. Denied
3. Admitted
4. Admitted
5. Denied
6. Denied
7. Admitted
8. Admitted
9. Admitted
10. Admitted
11. Denied
12. Denied

Signed under the pains and penalties of perjury.

Dated: March ⁄, 2005