UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

In re:

Jacalyn S. Nosek
      Debtor

Chapter 13
Case No.: 02-46025-JBR

Jacalyn S. Nosek
      Plaintiff
v.
Ameriquest Mortgage Company
      Defendant

Adversary Proceeding No. 04-04517

**Plaintiff/Debtor's Opposition to Defendant Ameriquest Mortgage Company's Motion for Reconsideration**

Now comes the Debtor, by and through counsel, and in opposition to the *Defendant Ameriquest Mortgage Company's Motion for Reconsideration,* says as follows:

1. The documents annexed as Exhibits to *Ameriquest's Motion for Reconsideration* are not newly discoverable, and in fact were available to Ameriquest's counsel when he prepared and filed his opposition to the Plaintiff/Debtor's Motion for Summary Judgment, and when he appeared for the hearing on October 25, 2005.

2. The Court found that Ameriquest failed to comply with the statutory requirements of the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601-2617, and that Plaintiff's July 23, 2004, communication was a "qualified written request" as defined in 12 U.S.C. §§2605.

3. In relevant part the Cranston-Gonzales amendment to the Real Estate Settlement Procedures Act, 12 U.S.C. §§2605(e), provides:

   (e) Duty of loan servicer to respond to borrower inquiries.

 (1) Notice of receipt of inquiry.
  (A) In general. If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.
  (B) Qualified written request. For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—
   (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
   (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.
 (2) Action with respect to inquiry. Not later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall—
  (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);
  (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—
   (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and
   (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or
  (C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--
   (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and
   (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

4. None of the documents attached as Exhibits comply with the requirements of 12 U.S.C. §§2605(e), nor were they timely.

 a. The Qualified Written Request is dated July 23, 2004.

 b. The first acknowledgment is dated September 8, 2004 from attorney Steven A. Ablitt,

        many days past the 20 day deadline. (Movant's Exhibit 1)

    c.    The letter dated September 8, 2004, confirms that the debtor requested a complete payment history.

    d.    The second letter dated September 21, 2004, (Movant's Exhibit 2), signed by attorney Amann, contains only a purported breakdown of "Expenses Paid by Ameriquest Mortgage, and that letter says in part, "... I have requested that Ameriquest provide me with a complete post-petition payment history **today**". (emphasis added)

    e.    The "Payoff Statement" attached to attorney Amann's September 21, 2004, letter on its face is not a payment history.

    f.    The "Payoff Statement" contained numerous material inaccuracies, enumerated in paragraphs 35 through 38 of Plaintiff's Complaint.

5.    A Payment History was not provided until May 4, 200_5_, when Debtor's counsel took the deposition of Judi R. Johnston, an employee designated by Ameriquest Mortgage Company as having the most knowledge and familiarity with this account.

6.    Ameriquest cites _In re Tomasevic, 273 B.R. 682 (Bankr.M.D.Fla.2002),_ for the proposition that a servicer's failure to respond to one qualified written request did not amount to a "pattern or practice."

7.    Judge Feeney noted in her decision in MAXWELL v.FAIRBANKS CAPITAL CORPORATION, (Case No. 00-14283-JNF, ADV. 00-1568), that:

"The term "pattern or practice" in a federal statute is not a term of art but rather is defined according to the usual meaning of the words. See _Sperling v. Hoffman-LaRoch, Inc., 924 F.Supp. 1346, 1357 (D.N.J.1996)_ (discussing use of term in the ADEA). The term suggests a standard or routine way of operating. See _Newton v.. United Cos. Fin. Corp., 24 F.Supp.2d 444, 456 (E.D.Pa.1998)_ (term as used in TILA refers to "wide-ranging and institutionalized practices"). See also _First Nat'l_

*Bank v. Office of Comp'r Of Currency,* 956 F.2d 1456, 1461-62n (8th Cir.1992) (failure to make interest rate disclosure required by TILA to 691 borrowers over two years constitutes pattern or practice).
*Cortez v. Keystone Bank, Inc.,* No. 98-2457, 2000 WL 536666 at *10 (E.D.Pa. May 2, 2000). In *Ploog v. Homeside Lending, Inc.,* No. 00 C 6391, 2002 WL 433139 (N.D.Ill. March 19, 2002), the court determined that five failures to respond to qualified written requests constituted a "pattern or practice."

8. In the instant case, Debtor's efforts to obtain an account payment history included not only the July 23, 2004, Qualified Written Request, but prior requests as well.

9. In March, 2004, the Debtor directly contacted the law firm of Ablitt & Caruolo, PC, and requested that a payment history be sent to her.

10. On May 10, 2004, Mr. Guarino of the law firm of Ablitt & Caruolo, PC, faxed a 12 month payment history to Debtor's counsel.

11. That Payment History indicated that all payment made by the Debtor were posted by Ameriquest to a escrow "Suspense Account".

12. On August 11, 2004, Debtor filed *Debtor's Motion to Determine Amount of Liens*.

13. On September 7, 2004, this Court Ordered that Ameriquest file a memo within 15 days "explaining the basis in their documents and/or in law for their use of so-called "suspense accounts".

14. Ameriquest failed to comply with the Court's September 7, 2004 Order.

15. On or about September 23, 2004, Ameriquest filed with the Court a document captioned "Payment Applications During Bankruptcy", and a document captioned "Payment History & Reconciliation".

16. On October 5, 2004, this Court Ordered that Ameriquest comply with the Court's Order of 9/7/04 no later than 10/21/04.

17. Ameriquest failed to comply with the Court's Order of October 5, 2004.

18. On November 2, 2004, the United States Bankruptcy Court, J. Rosenthal, J., issued an Order which stated that:

    AMERIQUEST IS HEREBY SANCTIONED $500.00 FOR FAILURE TO COMPLY WITH THIS COURT'S ORDERS OF 9/7/04 AND 10/5/04 "CONCERNING THE FILING OF A MEMO WITHIN 15 DAYS EXPLAINING THE BASIS IN THEIR DOCUMENTS AND/OR IN LAW FOR THE USE OF SO CALLED "SUSPENSE ACCOUNTS"." IF SAID MEMO IS NOT FILED WITHIN 7 DAYS, THE COURT WILL CONSIDER FURTHER SANCTIONS. DEBTOR SHALL FILE AN ADVERSARY PROCEEDING AGAINST AMERIQUEST CONCERNING THE AMOUNT OF ITS LIENS AND AMERIQUEST'S APPARENT INABILITY TO PROVIDE AN ACCURATE ACCOUNTING.

19. Debtor respectfully suggests that such conduct constitutes a "pattern or practice".

20. Debtor further notes that the evidence before this Court leaves no doubt that Ameriquest does not have systems in place to properly account for payments received from any borrower in any chapter 13 case pending in any state in the United States.

21. With respect to Count 3, Ameriquest asserts, without citation to any case law in support, that the Qualified Written Request should have been sent directly to Ameriquest, and not the attorneys who were representing Ameriquest in Ms. Nosek's bankruptcy case.

22. Rule 4.2 of Rule 3:07 of the Massachusetts Rules of Professional Conduct states the general proposition that a lawyer shall not communicate directly with a person the lawyer knows is represented by another lawyer in the matter. In this instance, Ablitt & Caruolo, PC had initiated pre-bankruptcy foreclosure proceedings against the Debtor, and has represented Ameriquest throughout the pendency of Ms. Nosek's bankruptcy case. While the Comment (1) indicates that Debtor's counsel could have communicated directly with Ameriquest without running afoul of Rule 4.2 of Rule 3:07, the Qualified Written Request letter also discusses the

conduct of an employee of Ablitt & Caruolo, PC and the debtor's efforts to obtain a payment history on her account from Ablitt & Caruolo, PC. Directing the letter to Ablitt & Caruolo, PC. as attorneys in fact for Ameriquest was appropriate under the circumstances, and was not prejudicial to Ameriquest.

23. Ameriquest also claims that attorney Hachey had left the firm of Ablitt & Caruolo, PC. on or about July 19, 2004, approximately one week before the Qualified Written Request was sent. Debtor's counsel respectfully notes that not less than five attorneys of the firm of Ablitt & Caruolo, PC., i.e. Jennifer Haskell, Brian Hachey, Steven Ablitt, William Amann, and now Robert Charlton, have been involved in this case. No notice was given to Debtor's counsel that Brian Hachey had left, or would be leaving, that firm, nor has it been suggested that attorney Hachey's departure prejudiced Ameriquest or absolved it of its responsibility to comply with the Real Estate Settlement Procedures Act.

WHEREFORE, for the reasons set forth herein, Debtor requests that Defendant Ameriquest Mortgage Company's Motion for Reconsideration be DENIED.

> Jacalyn S. Nosek
> by her attorney,
>
> /s/ Philip M. Stone
> Philip M. Stone, BBO # 544139
> 44 Front Street
> Worcester, MA  01608
> Tel. (508) 755-7354
> Fax. (508) 752.3730
> E-mail: pstonelaw@rcn.com

Dated:        November 11, 2005

## CERTIFICATE OF SERVICE

I, Philip M. Stone, do hereby certify on this day I electronically filed the foregoing pleading with the United States Bankruptcy Court for the District of Massachusetts using the CM/ECF System. I served the foregoing document on the following CM/ECF participants:

Robert Charlton, Esq.

I further certify that I have mailed this day by first-class mail, postage prepaid, a copy of the aforementioned pleading electronically filed with the Court on the following non-CM/ECF participants:

Jacalyn S. Nosek
60 Bolton Road
PO Box 1311
S. Lancaster, MA 01561

/s/ Philip M. Stone
Philip M. Stone

DATED:     November 11, 2005