## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:<br><br>JACALYN S. NOSEK,<br><br>         Debtor. | Bankruptcy Case No. 02-46025-JBR<br><br>Adversary Proceeding No. 04-04517 |
| JACALYN S. NOSEK,<br><br>         Plaintiff,<br><br>vs.<br><br>AMERIQUEST MORTGAGE COMPANY,<br><br>         Defendant. | |

### AMERIQUEST MORTGAGE CO.'S RESPONSE TO DEBTOR'S MOTION
### TO FILE SUPPLEMENTAL BRIEF

Ameriquest Mortgage Company ("Ameriquest") hereby submits this Response to Debtor's Motion to File Supplemental Brief.  This Response is based upon the following facts and circumstances:

1.      In December 2004, Jacalyn Nosek ("Nosek") commenced an adversary proceeding against Ameriquest.  On June 30, 2006, this Court issued its Order and Memorandum of Decision in this adversary proceeding.  Pursuant to that Order and Memorandum of Decision, Nosek was awarded $250,000 for emotional damages arising from the supposed breach of the covenant of good faith and fair dealing, $26.00 for Ameriquest's supposed violations of RESPA and Mass.G.L. c.93A, and attorneys' fees and costs in an amount to be determined by the Bankruptcy Court.  On September 19, 2006, this Court entered a Memorandum of Decision on

Motion to Assess Attorneys' Fees and Costs, in which it awarded Nosek attorneys' fees in the amount of $45,000.00, and costs in the amount of $2,395.00. Ameriquest appealed both of these rulings to the United States District Court for the District of Massachusetts ("District Court").

2.      On November 13, 2006, the District Court reversed these rulings and remanded the adversary proceeding to this Court for reconsideration of one issue: "whether the Bankruptcy Code preempts [Nosek's claim under Mass.G.L. c.93A], and if the Bankruptcy Court answers in the negative, for a determination of the claim on the merits." A copy of the "Memorandum and Order" issued by the District Court is attached hereto as Exhibit A and a copy of the Order is attached hereto as Exhibit B.

3.      Nosek did not seek reconsideration of the rulings of the District Court. Nor did she appeal. As a result, the rulings of the District Court are now final. While the District Court's rulings have not yet been transmitted to, or docketed by, the Clerk of the Bankruptcy Court (in accordance with Bankruptcy Rule 8016(b)), Ameriquest agrees this Court has jurisdiction to consider the limited issue that was remanded for reconsideration.

4.      In the instant motion, Nosek requests this Court set a briefing schedule over the next 60 days. Ameriquest agrees that a briefing schedule should be established, but disagrees that the parties need or should be given 60 days to provide supplemental briefs on the limited issue that was remanded to this Court. These issues were already briefed to the District Court. Ameriquest suggests the following schedule:

| | |
|---|---|
| Nosek's Supplemental Brief: | December 15, 2006 |
| Ameriquest's Supplemental Brief: | January 4, 2007 |
| Hearing (to the extent necessary): | Week of January 8-13, 2007 |

BN 1048148v1

The order establishing this schedule should state that the supplemental briefs may only address the specific issue remanded by the District Court in its rulings.

5.      As to the hearing on this matter, Ameriquest suggests that it be held during the week of January 8-13, 2007, or the following week.  Just so the Court is aware, the daughter of Mr. Garfinkle, lead counsel for Ameriquest, will have her bat mitzvah on January 26 and 27, 2007.  Mr. Garfinkle handled almost all aspects of the appeal and needs to attend any continued hearing in this adversary proceeding.  Accordingly, Ameriquest and Mr. Garfinkle request that any continued hearing in this adversary proceeding not be set on January 24, 25, 26 and 30, 2007.

Dated:  November 28, 2006

Ameriquest Mortgage Company
By Its Attorneys

BUCHALTER NEMER, PC


By:   /Is/ Jeffrey K. Garfinkle_____
Jeffrey K. Garfinkle (Cal. Bar. No. 153496)
18400 Von Karman Avenue, Suite 800
Irvine, California 92612
(949) 760-1121 Telephone
(949) 720-0182 Facsimile
jgarfinkle@buchalter.com

-and-

ABLITT & CHARLTON, PC
Steven M. Ablitt (BBO 641316)
Robert F. Charlton (BBO 081200)
92 Montvale Avenue, Suite 2950
Stoneham, Massachusetts 02180
(781) 246-8995 Telephone
(781) 246-8994  Facsimile
sablitt@acdlaw.com

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: JACALYN S. NOSEK, ) | |
| ) | |
| Debtor. ) | |
| ) | |
| ) | |
| ) | |
| AMERIQUEST MORTGAGE COMPANY, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | CIVIL ACTION |
| ) | NO. 06-40170-WGY |
| JACALYN S. NOSEK, ) | |
| ) | |
| Appellee. ) | |

MEMORANDUM AND ORDER

YOUNG, D.J.                                    November 13, 2006

I.   **INTRODUCTION**

This is an appeal, brought under 28 U.S.C. § 158(a)(1), from
an order entered by the Bankruptcy Court for the District of
Massachusetts against Ameriquest Mortgage Company ("Ameriquest")
assessing damages for violations of the Real Estate Settlement
Procedures Act, the Massachusetts Consumer Protection Act, and
the Massachusetts implied covenant of good faith and fair
dealing.  Ameriquest challenges the order, arguing, inter alia,
that the Bankruptcy Code preempts recovery under all three

claims.  The debtor and appellee, Jacalyn S. Nosek ("Nosek"),
opposes the appeal on the merits, but also brings a motion to
dismiss, arguing that the Bankruptcy Court has not entered an
appealable final judgment.

## II.  BACKGROUND

### A.   Undisputed Factual Background

The following facts are essentially undisputed or were found
by the Bankruptcy Court and are not clearly erroneous.  See Fed.
R. Bank. P. 8013.  On November 25, 1997, Nosek executed a $90,000
Adjustable Rate Note ("Note") in favor of the Ameriquest Mortgage
Company and secured by a mortgage on her principal residence
located in South Lancaster, Massachusetts, 01561.  (R.[1] at 18.)

In 2000, Nosek began missing payments on the Note.  (R. at
49.)  In early 2001, Ameriquest began foreclosure proceedings on
Nosek's residence.  Id.  As a result of the foreclosure
proceedings, Nosek filed her first of three bankruptcies on May
15, 2001.  (R. at 92.)  The Bankruptcy Court dismissed this first
case upon motion by the Chapter 13 Trustee (R. at 95.)

Nosek filed her second bankruptcy on February 28, 2002, in
response to a second notice of foreclosure.  (R. at 49-50, 102.)

---

[1] The citations to the Record refer to the Excerpts of the
Record [Doc. No. 4] and the Supplemental Excerpts of the Record
[Doc. No. 13] that were filed with this Court.  The Excerpts and
the Supplemental Excerpts are consecutively paginated and are
both cited as R.

Once again, upon motion by the Chapter 13 Trustee, the Bankruptcy
Court dismissed the case.  (R. at 50, 102-03.)

On October 2, 2002, Nosek filed her third and current
bankruptcy after receiving her third foreclosure notice.  (R. at
50, 142.)  In June 2003, Ameriquest and Nosek reached a
stipulation agreement after Ameriquest filed a Motion for Relief
from the Automatic Stay.  (R. at 123-24.)  The stipulation
resulted from allegations by Ameriquest that Nosek had failed to
make three post-petition payments (i.e. post bankruptcy petition)
on the Note, specifically for December 1, 2002, January 1, 2002,
and February 1, 2003 and that Nosek maintained a pre-petition
arrearage of $19,789.14.  (Case No. 02-46025, Mot. for Relief
From Stay [Doc. No. 29] at 1, 2.)  The stipulation required the
payment of the regular post-petition payments, a payment of
$384.89 to address the post-petition arrearage, and twelve equal,
monthly payments to address attorney's fees and costs of $1,175.
(R. at 123.)  Nosek failed to make all the required payments.
(See Case No. 02-46025, Certificate of Non-Compliance [Doc. No.
68] at 1, 2.)

On or about November, 2003, Nosek proposed her Second
Amended Plan of Reorganization (the "Plan").  (R. at 133.)  Under
the Plan, Nosek again agreed to pay the pre-petition arrearage,
now calculated at $18,810.95, over sixty months in the amount of
$313.52 per month.  (R. at 134.)

3

On or about November/December 2003, Nosek sought to refinance her mortgage with another lender. (R. at 50-51.) In order to proceed, Nosek had to provide the new mortgage broker with a pay-off figure and a payment history from Ameriquest. (Id.) After providing written authorization, Nosek received a twelve-month payment history, beginning March 10, 2003 and ending May 4, 2004. (R. at 137-38.) The payment history provided the amount Ameriquest determined was owed on the Note, the dates that the payments were recorded, and the placement of each payment in an escrow account called "Suspense." (Id.) This "Suspense" account is understood as used to allow lenders to accept partial payments that would otherwise be returned to the debtor for failure to comply with contractual obligations. (R. at 52.) The Bankruptcy Court further explained that the account acts as a "collection bucket" to hold insufficient funds until they cumulatively equal a loan payment that is due. (Id.) This process did not distinguish between pre-petition or post-petition payments, but simply looked to satisfy the oldest payment first. (R. at 54.)

Nosek questioned the veracity of the accounting and the accounting practice through a Motion to Determine Amount of Liens filed on August 11, 2004. (R. at 142-45.) In this Motion, Nosek argued that all payments under the stipulation agreement were made in full. (R. at 143.) She also argued that significant

4

discrepancies existed in the payment history regarding the actual
amount due, finance charges assessed, and the accounting of
certain payments.  (R. at 144.)  On September 8, 2005, the
Bankruptcy Court ordered Ameriquest to provide a detailed
accounting of the payments and to file a document explaining the
basis and law behind the use of "Suspense" accounts.  (Case No.
02-46025, Order for Accounting [Doc. No. 98] at 1.)  Ameriquest
failed fully to comply with this order and the Bankruptcy Court
levied a $500 fine.  (Case No. 02-46025, Order [Doc. No. 107] at
1.)  Ameriquest finally responded with a memorandum detailing the
use of "Suspense" accounts on November 9, 2005.  (R. at 163-64.)

Nosek brought the underlying adversarial action asserting
claims based upon Ameriquest's use of "Suspense" accounts and
their alleged inability to apply, track, and credit payments made
during the pendency of Nosek's Chapter 13 case.  (R. at 5.)

**B.   Procedural Background**

On December 2, 2004, Nosek commenced a lawsuit against
Ameriquest in the United States Bankruptcy Court, District of
Massachusetts, Western Division ([Case No. 02-46025, Adversary
Proceeding No. 04-04517, Doc. No. 1]).  Nosek brought seven
claims: for violations of the (1) Truth in Lending Act ("TILA");
(2) Real Estate Settlement Procedures Act ("RESPA"); (3) Sections
2 and 9 of the Massachusetts Consumer Protection Act, chapter 93A
of the Massachusetts General Laws; as well as state common law

5

claims for (4) Unjust Enrichment; (5) Breach of Good Faith and
Fair Dealing; (6) Infliction of Emotional Distress; and (7) Lost
Income.

On October 25, 2005, the Bankruptcy Court allowed, in part,
Nosek's motion for summary judgment and ruled that Ameriquest had
violated section 2605 of RESPA (Count 2) and section 2(a) of
Massachusetts General Laws, chapter 93A (Count 3). (R. at 165.)
The Bankruptcy Court granted summary judgment on these two counts
as to liability only and continued the matter for trial on
damages. (Id.) The Bankruptcy Court denied the motion for
summary judgment on the other counts. (Id.)

On June 30, 2006, after the conclusion of trial, the
Bankruptcy court dismissed Counts One (TILA), Four (Unjust
Enrichment), Six (Infliction of Emotional Distress); and Seven
(Lost Income). (Id. at 83.) The court assessed nominal damages
for the previously determined violations of Counts Two and Three
by assessing $1 and $25 damages respectfully. (See id.) The
Bankruptcy Court also found that Ameriquest violated the implied
covenant of good faith and fair dealing and awarded damages of
$250,000 for the resulting emotional distress. (Id.) The status
of this determination as a final judgment is in dispute, and
Nosek moves to dismiss this appeal.

Ameriquest filed with the bankruptcy court a timely Notice
of Appeal on July 10, 2006. Ameriquest subsequently filed a

6

Notice of Appeal with this Court [Doc. No. 1] on August 17, 2006
and filed its brief [Doc. No. 3] ("Appellant Br.") on September
14, 2006.  Nosek responded with a brief in opposition to the
appeal [Doc. No. 11] ("Appellee Br.") on September 29, 2006.
Ameriquest filed a Reply [Doc. No. 12] ("Appellant Reply") to
Nosek's brief in opposition on October 10, 2006.

Additionally, in response to the appeal, Nosek filed a
Motion to Dismiss [Doc. No. 5] and a supporting Memorandum [Doc.
No. 6] ("Appellee MTD Mem.").  Ameriquest filed its Motion in
Opposition to the Motion to Dismiss [Doc. No. 10] and a
supporting Memorandum [Doc. No. 9] ("Appellant MTD Mem.") on
September 28, 2006.

Having received memoranda from both parties on both the
motion to dismiss and the merits of the appeal, this Court
addresses the issues in that order.

### III. DISCUSSION

#### A.   Jurisdiction and Standards of Review

This Court has jurisdiction to hear appeals from "final
judgments, orders, and decrees" of the Bankruptcy Court.  28
U.S.C. § 158(a)(1).  On appeal from a decision of a Bankruptcy
Court, this Court sits as an intermediate appellate court and
addresses such actions "in the same manner as appeals in civil
proceedings generally are taken to the courts of appeal from the
district courts. . . ."  Id. § 158(c)(2); see In re Ryan, 282

B.R. 742, 747 (D. R.I. 2002). As a result, a federal district
court applies a "clearly erroneous" standard as to findings of
fact, giving "due regard . . . to the opportunity of the
bankruptcy court to judge the credibility of the witnesses."
Fed. R. Bank. P. 8013; In re LaRoche, 969 F.2d 1299, 1301 (1st
Cir. 1992). The same clearly erroneous standard is applied to
mixed questions of law and fact unless the bankruptcy court's
analysis was "infected by legal error." In re Winthrop Old Farm
Nurseries, Inc., 50 F.3d 72, 73 (1st Cir. 1995) (quoting Williams
v. Poulos, 11 F.3d 271, 278 (1st Cir. 1993)). In contrast, a de
novo standard is applied with respect to conclusions of law. In
re LaRoche, 969 F.2d at 1301.

As a preliminary matter, this Court must address Nosek's
motion to dismiss. The motion to dismiss challenges the subject
matter jurisdiction of this Court to review the appeal and is
properly classified and analyzed under Federal Rule of Civil
Procedure 12(b)(1). Since this motion does not challenge a
holding of the Bankruptcy Court but raises an issue of law
specific to the appeal, this Court reviews the motion in
accordance with the general rule for motions to dismiss. "In
ruling on a motion to dismiss, a court must accept as true all
the factual allegations in the complaint and construe all
reasonable inferences in favor of the [non-moving party]."
Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267

F.3d 30, 33 (1st Cir. 2001).  Such a motion should not be granted

unless it appears that jurisdiction would be improper under any

set of facts.  See Roma Constr. Co. v. aRusso, 96 F.3d 566, 569

(1st Cir. 1996) (analyzing a 12(b)(6) motion to dismiss); Murphy

v. United States, 45 F.3d 520, 522 (1st Cir. 1995) (reviewing a

dismissal under 12(b)(1) in accordance with the same standard

applied to a dismissal under 12(b)(6)).

### B.   Nosek's Motion to Dismiss

Nosek challenges the jurisdiction of this Court by arguing

that the Bankruptcy Judge either failed to or has not yet entered

a final judgment in the underlying proceeding.  (See Appellee MTD

Mem. at 1-2, 8.)  Specifically, Nosek argues that the Bankruptcy

Court Order filed contemporaneously with, but separately from,

the Memorandum of Decision on June 30, 2006 does not satisfy the

"separate document" rule required by Federal Rule of Bankruptcy

Procedure 9021 and its Federal Rule of Civil Procedure corollary,

Rule 58.  (See id. at 2-3.)  In addition, even if the "separate

document" rule is satisfied, Nosek argues that the judgment is

not "final," and thus not ripe for appeal.  (See id. at 3.)

Federal Rule of Bankruptcy Procedure 9021 requires that

"[e]very judgment entered in an adversary proceeding or contested

matter shall be set forth on a separate document."  Fed. R. Bank.

P. 9021.  This rule is derived from Federal Rule of Civil

Procedure 58 that requires "[e]very judgment . . . must be set

9

forth on a separate document." Fed. R. Civ. P. 58(a)(1).  These
rules are designed to eliminate uncertainty as to the finality of
the judgment and to provide a clear date to start the clock
running as to the time for appeal.  See Smith Corset Shops, Inc.
v. Brodeur, 696 F.2d 971, 975 (1st Cir. 1982).  Specifically, the
"separate document" rule is intended to require the entry of a
document separate from the opinion or memorandum of the court.
Id.; Advisory Committee's Note to Rule 58.  To accomplish this
purpose, this rule must be mechanically applied.  Smith Corset
Shops, Inc., 696 F.2d at 975.

     Here, at the conclusion of the trial, the Bankruptcy Judge
entered a Memorandum of Decision and an Order as two separate
documents on the docket.  (R. 47-83, 256.)  The issue is whether
the Order constitutes a judgment in satisfaction of the "separate
document" rule.  Nosek suggests that the answer is no because the
Order states that "judgment *shall* enter," (Appellee MTD Mem. at
2), and argues that the use of this phrase implies that a
separate entry of judgment would follow, (see id.).

     Though the "separate document" rule will be applied
mechanically, it will not be done hyper-technically.  See Smith
Corset Shops, Inc., 696 F.2d at 975.  There may be some traction
to a suggestion that clarity counsels the use of the word
"Judgment" to title such a document rather than "Order," but
Bankruptcy Rule 9021 and Civil Procedure Rule 58 focus on the

document's function, not on the specific title.  This is
supported by the definition of the word "Judgment" found in
Federal Rule of Civil Procedure 54(a), which states that
"'Judgment' as used in these rules includes a decree and any
order from which an appeal lies." Fed. R. Civ. P. 54(a).  The
effect and not the specific word is, therefore, the focus.  The
document entered and titled as "Order" satisfies this definition
of a "judgment."  See id.

     The use of the phrase, "ORDERED that judgment shall enter as
follows," found in the Order does not imply that a further
document will be entered, but that the brief, un-cited list
following the phrase constitutes the judgment of the court.  The
Advisory Committee's Note to Rule 58 explains the required
elements of a "separate document" as one that "recites the terms
of the judgment without offering additional explanations or
citation of authority" and cites Forms 31 and 32 as examples.
Advisory Committee's Note to Rule 58.  The Order entered
accomplishes this purpose.  It mirrors the Forms cited as
sufficient examples.  (See R. at 256.)  Additionally, it is
separate from the Memorandum of Opinion.  See id.; Smith Corset
Shops, Inc., 696 F.2d at 975 (holding the "separate document"
rule violated when the alleged judgment was included with the
memorandum and order of the court).  If not entered as the
judgment of the court, it serves no other purpose.  As a result,

11

the Order constitutes a separate document that satisfies
Bankruptcy Rule 9021 and Federal Rule of Civil Procedure 58.

Nosek's second argument is that the Order cannot be final
because the award of attorney's fees and costs was not finalized
and determined at the time of appeal. (See Appellee MTD Mem. at
1.) Nosek argues that the lack of a final determination
concerning attorney's fees and costs presents a claim not yet
adjudicated and renders the underlying suit open and not yet
appealable under Federal Rule of Civil Procedure 54(b). (See id.
at 5-9.)

This appeal does not, however, ask this Court to review a
partial judgment. A judgment may be final even when a motion for
attorney's fees remains to be resolved. See Osterneck v. Ernst &
Whinney, 489 U.S. 169, 175 (1989). The rationale underlying this
rule is that "a request for attorney's fees is not part of the
merits of the underlying action because such fees are not part of
the compensation for the plaintiff's injury but traditionally
have been regarded as an element of costs awarded to the
prevailing party." Id.; Budinich v. Becton Dickinson and Co.,
486 U.S. 196, 202 (1988) ("[A]n unresolved issue of attorney's
fees for the litigation in question does not prevent judgment on
the merits from being final."). The proper inquiry, therefore,
is whether after the entry of the Order any issues central to the
litigation remain. In re Bank of New England Corp., 218 B.R.

12

643, 646 (1st. Cir. BAP 1998);  Cf. Green Tree Financial Corp. -

Alabama, v. Randolph, 531 U.S. 79, 84 (2000) (determining a final

judgment in the context of the claim under the Federal

Arbitration Act).

Here, the Bankruptcy Judge disposed of each of the seven

counts in the complaint and assessed damages in his June 30, 2006

Order. (R. at 256.)  This Order did not present an interlocutory

order or one that was "tentative, informal or incomplete." See

In re Bank of New England, 218 B. R. at 644 (quoting Cohen v.

Beneficial Indus. Loan Corp., 337 U.S. 541, 545-46 (1949)).  As a

result of the complete disposition of all counts and the

inability to argue that a pending determination of attorney's

fees and costs constitutes an unresolved claim, this Court holds

that a final judgment entered and that a proper appeal followed.

Nosek's motion to dismiss is, therefore, denied, and the merits

of the appeal will be addressed.

### C.  **Bankruptcy Code Preemption**

Ameriquest appeals the adverse rulings of the Bankruptcy

Court that found violations of the Real Estate Procedures Act

("RESPA"), 12 U.S.C. § 2605, the Massachusetts Consumer

Protection Act, Mass. Gen. Laws. ch. 93A, and the Massachusetts

common law implied covenant of good faith and fair dealing.

Ameriquest raises a threshold -- and ultimately determinative --

argument that recovery under all three claims is preempted or

13

precluded by the Bankruptcy Code. (See Appellant Br. at 17-21,
37-40, 43-45.) Because this Court agrees that the two contested
claims addressed on the merits by the Bankruptcy Judge are
preempted, only the preemption issue as to each claim is
addressed.

### 1.    Implied Covenant of Good Faith and Fair Dealing

Ameriquest first argues that the Bankruptcy Code ("the
Code") preempts any state law cause of action based upon an
implied covenant of good faith and fair dealing. (Id. at 17.)
Specifically, Ameriquest argues that the Bankruptcy Code provides
a comprehensive statutory scheme that governs the relationship
between Ameriquest as creditor and Nosek as debtor under the
Plan. (Id. at 19.) Under this argument, a state law claim that
seeks to redress a breach of the Plan under a state contract
theory is preempted by the Code. (See id. at 17-19.)

A preemption analysis begins by categorizing and
understanding the type of preemption at issue. The Supreme
Court, in Gade v. National Solid Waste Management Ass'n, detailed
the three types of preemption: (1) explicit preemptive language;
(2) a pervasive federal regulation that left no room for state
law; and (3) conflicting requirements that impede the full
purposes and objectives of the federal law. 505 U.S. 88, 98
(1992). The last two types of preemption properly are viewed
under the umbrella category of implied preemption. (See id.) In

14

every preemption case, "[t]he purpose of Congress is the ultimate
touchstone." <u>Medtronic, Inc.</u> v. <u>Lohr</u>, 518 U.S. 470, 485 (1996)
(quoting <u>Retail Clerks</u> v. <u>Schermerhorn</u>, 375 U.S. 96, 103 (1963)).
In divining the Congressional purpose, however, due respect to
the historic and often autonomous role of the state counsels a
narrow construction and application of a preemptive purpose. <u>Id.</u>

Ameriquest advances its preemption argument under the
second category, arguing for implied preemption based upon a
pervasive federal scheme. (<u>See</u> Appellant Br. at 17, 21.)
Ameriquest asserts that this federal scheme creates the legal
construct of the Plan, Appellant Reply at 3, and completely
governs the relationship and remedies under the Plan through its
statutory dictates and regulations. (<u>see</u> Appellant Br. at 17.)

The Court of Appeals for the First Circuit, in <u>Patriot
Portfolio, LLC</u> v. <u>Weinstein</u> (<u>In re Weinstein</u>), recognized that
"states may not pass or enforce laws to interfere with or
compliment the Bankruptcy Act or to provide additional or
auxiliary regulations." 164 F.3d 677, 682-83 (1st Cir. 1999)
(quoting <u>International Shoe</u> v. <u>Pinkus</u>, 278 U.S. 261, 265 (1929)).
State law, therefore, may not overlap or conflict with a remedial
structure provided for in the Code. <u>See</u> <u>id.</u> at 683. Applying
this logic, the First Circuit, in <u>Bessette</u> v. <u>Avco Fin. Serv.s,
Inc.</u>, held that state law remedies for unjust enrichment were
preempted because violations of section 524 of the Bankruptcy

15

Code were enforceable under section 105.  230 F.3d 439, 447 (1st

Cir. 2000).  After <u>Bessette</u>, federal preemption will be found if

a remedial measure under the Code can be identified and if the

state cause of action either overlaps or adds to such measure.

<u>See</u> <u>id.</u>

     In this case, the Bankruptcy Court found a violation of the

implied covenant of good faith and fair dealing due to

Ameriquest's alleged inability to "distinguish between pre-

petition and post-petition payments made by [Nosek]" and

Ameriquest's "inability to promptly credit {Nosek's] account from

the suspense account." (R. at 69.)  The court found that the

failure to distinguish between pre-petition and post-petition

payments violated 11 U.S.C. section 1322(b) of the Code that

"provides for the curing of any default over the course of the

[P]lan." (<u>Id.</u>)  The court found that this practice "contradicts

the purpose of a Chapter 13 plan." (<u>Id.</u> at 76.)

     The analysis followed in <u>Bessette</u> is applicable in this

case.  The Bankruptcy Court found a violation of 11 U.S.C.

section 1322(b), which regulates the modification of the Plan and

provides the cures for any defaults.  11 U.S.C. § 1322; (<u>see</u> R.

69.)  The Bankruptcy Court then grafted onto the Plan an implied

covenant of good faith and fair dealing, a state remedy.  (<u>See</u> R.

at 69.)  This was error.

16

Section 105 of the Code provides the proper mechanism for
the Bankruptcy Court to remedy specific violations of the Code.[2]
See Bessette, 230 F.3d at 447.  If the Bankruptcy Court is to
assess damages, it must not look to the state law theory employed
in this case, but must do so under the equitable powers granted
under the Code.  See id.  The state law remedy in this case
overlaps the remedial measures provided for in the Code and is,
therefore, preempted.  See In re Weinstein, 164 F.3d at 683.  A
contrary ruling would allow a state remedy to superimpose itself
on activities that are closely related to and governed by the
management of the bankruptcy process.

### 2.   Real Estate Procedures Act

Ameriquest also argues that the general preemption
principles described above apply to the alleged violation of
RESPA.  (Appellant Br. 37-41.)  RESPA is a federal consumer
protection act that requires any servicer of a federally related
mortgage loan to respond to a request from the borrower for
information concerning the servicing of the loan.  12 U.S.C. §
2605(e).  Ameriquest argues that the Code provides the sole

------

[2] "The court may issue any order, process, or judgment that
is necessary or appropriate to carry out the provisions of this
title. No provision of this title providing for the raising of an
issue by a party in interest shall be construed to preclude the
court from, sua sponte, taking any action or making any
determination necessary or appropriate to enforce or implement
court orders or rules, or to prevent an abuse of process." 11
U.S.C. § 105(a).

17

statutory remedy for a borrower to seek such information when related to an ongoing bankruptcy proceeding. (Appellant Br. 37-38.) Following this logic, Nosek could not use the dispute resolution provisions of RESPA to resolve disagreements over the amount of Ameriquest's claim under the Plan. (Id. at 37.)

This argument relies, as does the preemption argument above, on a theory of implied preemption, but it more closely relates to a theory of conflict preemption since the Code provides for a remedial measure similar in purpose but different in form. (See id. at 39-41.) In addition, Ameriquest cannot proffer an argument that RESPA is entirely preempted by the Code because RESPA anticipates an interaction and co-existence with the Code in certain respects. See 12 U.S.C. §§ 2605(b),(c),(i) (providing explicit exceptions for when bankruptcy proceedings have commenced).

Instead, the preemption question here turns on whether the Code provides a remedial procedure inconsistent with RESPA. Under RESPA, the servicer of the loan must respond to a qualified demand letter from the borrower within 20 days. Id. § 2605(e). This section has no explicit exception for bankruptcy proceedings. See id. Under the Code and under the bankruptcy rules, however, a different process exists to determine the propriety of claims and to resolve disputes. Section 502 of the Code allows for a proof of claim to be determined true, absent

18

objection by the opposing party.  11 U.S.C. § 502(a).  If an
objection is registered, the Code entrusts the Bankruptcy Court
with the role of determining the proper amount of the claim.  Id.
§ 502(b),(c).  In addition, Federal Bankruptcy Rule of Procedure
3007 provides for objections to claims in a manner similar to
RESPA.  See Fed. Bank. R. P. 3007.  Under Bankruptcy Rule 3007,
an objection to a claim must be in writing and filed at least 30
days prior to the hearing.  Id.

The facts of this case show how the overlap of these
procedures may occur.  Nosek sent what the Bankruptcy Court found
to be a qualified demand letter under RESPA on July 23, 2004.
(R. at 57.)  Under RESPA, and outside of the bankruptcy
proceeding context, Ameriquest would have had 20 days to reply to
this demand letter.  12 U.S.C. §§ 2605(e).  Nosek also filed with
the Bankruptcy Court a Motion to Determine Amount of Liens on
August 11, 2004.  (R. at 142-45.)  This motion was filed before
the RESPA safe harbor time-frame had expired and sought to have
the Bankruptcy Court determine the amount owed.  (See R. at 142.)
The Bankruptcy Court proceedings that followed sought to address
the disputed claims, and the subsequent adversarial action raised
many of the same claims asserted in the motion.  (See R. at 142-
45.)  In this case, both the remedial procedures in REPSA and the
Motion to Determine Amount of Liens in the bankruptcy proceeding

sought to achieve the same effect - the resolution of disputed claims - but through different remedial vehicles.

Thus, the purposes of the Code in determining the disputed claims within the structure of the Bankruptcy Court conflict with RESPA's requirements. Ameriquest analogizes this situation to a Ninth Circuit case, Walls v. Wells Fargo Bank, N.A., where the court noted the Fair Debt Collection Practices Act preempted by the Bankruptcy Code. 276 F.3d 502, 510 (9th Cir. 2002). The court in Walls held that the Code provides its own remedy for violating section 524 (Effect of Discharge) through the civil contempt statute section 105. Id.

In this case, the Bankruptcy Judge dismissed this analogy summarily simply by stating that "[i]n the instant case the Plaintiff has not yet received a discharge." In re Nosek, 2006 WL 2700792, slip. op., *4 (Bankr. D. Mass. September 19, 2006). The status of being discharged from a bankruptcy proceeding or currently embroiled in one does not, however, appear to be a valid distinguishing fact. Instead, Walls stands for the proposition that where the remedial scheme in the Code conflicts with a remedial scheme of a separate statute, the former must occupy the field of bankruptcy proceedings rather than the latter. See 276 F.3d at 510. This Court finds that proposition persuasive in the instant case.

As a result, the Code's claim resolution process for ongoing
bankruptcy proceedings trumps the alternative remedial procedure
found in RESPA.

### 3.   Massachusetts Consumer Protection Act, M.G.L., c. 93A

Finally, Ameriquest argues that the state law claim under
Massachusetts General Law chapter 93A ought be preempted
according to the same logic and analysis undergirding the
preemption of the implied covenant of good faith and fair
dealing. (Appellee Mem. at 43-45.)  Prudential and comity
concerns counsel against going so far.

The Bankruptcy Court held that the violation of RESPA
constituted a *per se* violation of chapter 93A.  (R. at 63.)
Under 940 Code of Massachusetts Regulations § 3.16(4), a
violation of chapter 93A occurs automatically if a violation of a
federal consumer protection statute is found.  940 Mass. Code.
Regs. 3.16(4) (2006).  While the Bankruptcy Court correctly
applied Massachusetts law, the preemption of the underlying RESPA
claim requires reconsideration of the chapter 93A claim.  The
Massachusetts General Law chapter 93A claim is, therefore,
remanded to the Bankruptcy Court for reconsideration as to
whether the Bankruptcy Code preempts such state claims and, if
that court answers in the negative, for a determination of the
claim on the merits.

21

IV.  CONCLUSION

     For the reasons stated above, this Court holds that the
Bankruptcy Code preempts both the state claim under the implied
covenant of good faith and fair dealing and the claim under
section 2605(e) of the Real Estate Settlement Procedures Act.  In
addition, the claim under Massachusetts General Laws, chapter 93A
is remanded for consideration on the merits.  Accordingly,
Ameriquest's Appeal [Docket No. 1] is ALLOWED and the case is
remanded for further proceedings consistent with this holding.

     SO ORDERED.


                              /s/ William G. Young
                              _____

                              WILLIAM G. YOUNG
                              DISTRICT JUDGE


                                   22

# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                      )
IN RE: JACALYN S. NOSEK,              )
                                      )
         Debtor.                      )
                                      )
                                      )
                                      )
AMERIQUEST MORTGAGE COMPANY,          )
                                      )
         Plaintiff,                   )
                                      )
         v.                           )    CIVIL ACTION
                                      )    NO. 06-40235-WGY
JACALYN S. NOSEK,                     )
                                      )
         Defendant.                   )
                                      )
```

ORDER

YOUNG, D.J.                                    November 13, 2006

     In view of this Court's Order (06-cv-40170) remanding

Ameriquest Mortgage Company's appeal of the United States

Bankruptcy Court's decision on the merits, Jacalyn Nosek's

appeal [Docket No. 1] and Ameriquest Mortgage Company's cross-

appeal [Docket No. 2] of the Bankruptcy Court's Order

assessing attorney's fees are DENIED as moot.

     SO ORDERED.

                                   /s/ William G. Young
                                   _____
                                   WILLIAM G. YOUNG
                                   DISTRICT JUDGE

## CERTIFICATE OF SERVICE

I am employed in the County of Orange, State of California.  I am over the age of 18 and

not a party to the within action.  My business address is at BUCHALTER NEMER, A

Professional Corporation, 18400 Von Karman Avenue, Suite 800, Irvine, California  92612-

0514.

On the date set forth below, I served the foregoing document described as:

**AMERIQUEST MORTGAGE CO.'S RESPONSE TO DEBTOR'S
MOTION TO FILE SUPPLEMENTAL BRIEF**

on all other parties and/or their attorney(s) of record to this action by placing a true copy
thereof in a sealed envelope as follows:

| | |
|---|---|
| Phillip Stone, Esq. | Jacalyn Nosek |
| 44 Front Street | 60 Bolton Road |
| Worcester, MA 01608 | S. Lancaster, MA 01561 |
| | |
| Assistant U.S. Trustee | Denise M. Pappalardo, Chapter 13 |
| Richard King | Trustee |
| Office of US. Trustee | P. O. Box 16607 |
| 446 Main Street | Worcester, MA 01601 |
| 14th Floor | |
| Worcester, MA 01608 | |

☒ **BY MAIL**    I am readily familiar with the business' practice for collection and
processing of correspondence for mailing with the United States Postal Service. The address(es)
shown above is(are) the same as shown on the envelope.  The envelope was placed for deposit in
the United States Postal Service at Buchalter Nemer in Irvine, California on November 28, 2006.
The envelope was sealed and placed for collection and mailing with first-class prepaid postage on
this date following ordinary business practices.

☒    I declare under penalty of perjury under the laws of the State of California that the

foregoing is true and correct to the best of my knowledge.  Executed on November 28, 2006, at

Irvine, California.  I declare that I am employed in the office of a member of the bar of this court

at whose direction the service was made.  Executed on November 28, 2006, at Irvine, California.

| | |
|---|---|
| _____ | _____ |
| Jeffrey K. Garfinkle | /Is/ Jeffrey K. Garfinkle |
| | (Signature) |

BN 1048148v1