UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

In re:

Jacalyn S. Nosek
      Debtor

Chapter 13
Case No.: 02-46025-JBR

Jacalyn S. Nosek
      Plaintiff
v.
Ameriquest Mortgage Company
      Defendant

Adversary Proceeding No.  04-04517

**Debtor/Plaintiff Jacalyn S. Nosek's Supplemental Brief**
**RE:  *Memorandum and Order* issued by the U.S. District Court on November 13, 2006**

Jacalyn Nosek
By her attorney,

/s/ Philip M.  Stone
Philip M. Stone, BBO # 544139
44 Front Street
Worcester, MA  01608
Tel. (508) 755-7354
Fax.  (508) 752.3730
E-mail: pstonelaw@rcn.com

Dated:      December 27, 2006

# Table of Contents

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

PROCEDURAL STATUS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

11 U.S.C. § 105(a) Provides the Proper Mechanism for the Bankruptcy Court
to Remedy Specific Violations of the Code . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

The Scope of §105(a) Is Broad. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Imposition and Computation of Punitive Damages. . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Decision of the U.S. District Court RE: Debtor's Claims Under M.G.L. C. 93A . . . 11

Preemption in General  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Did Congress Create Sufficient Remedies in the Bankruptcy Code So as to
Constitute Field Preemption? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Massachusetts General Law Chapter 93A Provides a Settlement Mechanism
That Is Not Available Under §105(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Ameriquest Violated M.G.L. c. 93A When it Failed to Respond to Debtor's.
c. 93A Demand Letter, or Tender a Reasonable Offer of Settlement  . . . . . . . . . . . 15

Ameriquest Forced  the Debtor to Litigate  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Multiple Damages of from Two to Three Times Actual Damages May Be
Awarded for a Willful or Knowing Violation of 93A . . . . . . . . . . . . . . . . . . . . . . . 17

Field Preemption  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Defendant's Reliance on the Recent S.J.C. Decision in *Hershenow* Is Misplaced.  . 21

Preference Generally Will Be Given to an Award of Actual Damages Under
the Claim Permitting the Larger Recovery  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

In re:

Jacalyn S. Nosek
      Debtor

Chapter 13
Case No.: 02-46025-JBR

Jacalyn S. Nosek
      Plaintiff
v.
Ameriquest Mortgage Company
      Defendant

Adversary Proceeding No.  04-04517

**Debtor/Plaintiff Jacalyn S. Nosek's Supplemental Brief
RE:  *Memorandum and Order* issued by the U.S. District Court on November 13, 2006**

INTRODUCTION

The Debtor/Plaintiff states that both 11 U.S.C. §105(a) and M.G.L. c. 93A permit this Court to enter a Judgment ordering monetary relief, in the form of actual damages, attorney fees, and punitive damages, when a creditor has engaged in conduct that violates provisions of the Bankruptcy Code and engaged in other unfair practices.

The Defendant's conduct warrants the imposition of substantial punitive damages. Under M.G.L. c. 93A those damages may not exceed three times Plaintiff's damages. 11 U.S.C. §105(a) does not limit the amount of punitive damages awarded; therefore this Court's Order and Entry of Judgment should be based upon 11 U.S.C. §105(a).

PROCEDURAL STATUS

On November 13, 2006, the U.S. District Court issued its *Memorandum and Order*

1

regarding the issues raised on appeal. See, Docket Item #180.

The Bankruptcy Court's findings of fact were upheld on appeal.

The U.S. District Court ruled that an error of law had been committed when this Court looked to a state law remedy for Ameriquest's violations of 11 U.S.C. §1322(b), when a remedy existed under 11 U.S.C. §105.  It remanded this adversary proceeding to this Court for further proceedings consistent with its holdings; it also remanded Debtor's claim under Massachusetts General Laws chapter 93A for consideration on the merits.

<u>ARGUMENT</u>

<u>11 U.S.C. § 105(a) Provides the Proper Mechanism for the Bankruptcy Court to Remedy Specific Violations of the Code</u>

The U.S. District  Court has now held that §105 provides the remedy for violations of 11 U.S.C. 1322(b). It stated that:

> "Section 105 of the Code provides the proper mechanism for the Bankruptcy Court to remedy specific violations of the Code [2].  *See Bessette*, 230 F.3 at 447. If the Bankruptcy Court is to assess damages, it must not look to the state law theory employed in this case, but must do so under the Code. *See id.* The state law remedy in this case overlaps the remedial measures provided for in the Code and is, therefore, preempted.  *See In re Weinstein,* 164 F.3d at 683." [*Memorandum and Order dated November 13, 2006,* p. 17].

---

[2]  "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.  11 U.S.C. §105(a).

<u>The Scope of §105(a) Is Broad.</u>

The scope of §105(a) is broad. As discussed below, in addition to awarding damages for emotional distress, bankruptcy courts across the country have used their statutory contempt power under 11 U.S.C. §105(a) to order monetary relief, in the form of actual damages, attorney fees, and punitive damages, when creditors have engaged in conduct that violates provisions of the Bankruptcy Code.

In *Torres v. U.S.*, 309 B.R. 643 (B.A.P. 1st Cir., 2004), the Court discussed the scope of Section 105 of the Bankruptcy Code. In *Torres*, the Debtor sought redress for a creditor's violation of the Discharge provisions contained in 11 U.S.C. §524(a)(2). Unlike 11 U.S.C. §362, 11 U.S.C. §524 does not contain a specific remedies provision.

That same situation - the absence of a specific remedies provision - existed in *Nosek*; 11 U.S.C. §1322 is silent as to the consequences of a creditor's failure to comply with the terms of a Confirmed Chapter 13 Plan.

In *Torres*, the Court cited *Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439 (1st Cir. 2000), *cert. denied*, 532 U.S. 1048 (2001), when it stated that:

> "Section 105(a) empowers the bankruptcy court to exercise its equita-
> ble powers -- where necessary or appropriate -- to facilitate the implementa-
> tion of other Bankruptcy Code provisions." *Id*. 230 F.3d at 444 (internal
> quotations and citations omitted). "Thus, § 105 does not itself create a private
> right of action, but a court may invoke § 105(a) if the equitable remedy
> utilized is demonstrably necessary to preserve a right elsewhere provided in
> the Code ...." *Id*. 230 F.3d at 444-45 (internal quotations and citations omit-
> ted). These powers are "in addition to whatever inherent contempt powers the
> court may have" and "must include the award of monetary and other forms of
> relief  'to the extent such awards are necessary and appropriate to carry out the

3

provisions of the Bankruptcy Code' and provide 'full remedial relief.' " *Id.* 230 F.3d at 445 (internal quotations and citations omitted).

...

"There is no express inclusion or exclusion of emotional damages in *Bessette*; nonetheless, we are satisfied that the sweep given § 105(a) by the First Circuit in that case is broad enough to include such damages within the ambit of actual damages for a violation of §  524, "if the merits so require". *Bessette,* 230 F.3d at 445. *Torres* at 648.

...

"To support its award of emotional damages, the Bankruptcy Court relied upon *Fleet Mortgage Group, Inc. v. Kaneb,* 196 F.3d 265 (1st Cir. 1999), a decision that included emotional distress damages within the meaning of the phrase "actual damages" under *§  362(h). Kaneb,* 196 F.3d at 269. The Bankruptcy Court's reliance upon *Kaneb* is understandable considering the many similarities between the automatic stay and the discharge injunction. Each is based upon a Code provision and a court order and, to some extent, each exists to protect an individual debtor from specific kinds of collection activity. Significantly, a violation of either provision may be compensated with monetary relief. ...

...

"Our decision to sustain the Bankruptcy Court rests firmly upon the statutory and inherent powers of a bankruptcy judge to ameliorate civil contempt with full remedial relief. *Bessette,* 230 F.3d at 445. Although Kaneb interprets §  362(h), the decision is persuasive authority because it contains a clear acknowledgment that emotional damages may be awarded by a bankruptcy judge for a violation of a Code provision: "An honest accounting of actual damages under §  362(h) *must include* ... psychological suffering ...." *Kaneb,* 196 F.3d at 270 (emphasis added). *Torres* at 649-650.

...

"In addition to awarding damages for emotional distress, "bankruptcy

4

courts across the country have appropriately used their statutory contempt

power to order monetary relief, in the form of actual damages, attorney fees,

and punitive damages, when creditors have engaged in conduct that violates §

524." *Torres* at 648.


By analogy, Ameriquest's disregard of this Court's Order Confirming the Debtor's

Chapter 13 Plan is as egregious as a creditor's willful disregard of the automatic stay or a

Discharge Order.

*Bessette* was also cited with approval in *Harris v. Washington Mutual Home Loans,*

*Inc.* 297 B.R. 61 (Bankr N.D. Miss., 2003), a case which involved a Debtor's claim that

Washington Mutual had violated 11 U.S.C. §1322 by assessing monthly late fees on post-

confirmation payments made by the Debtors through the chapter 13 Trustee

"This court recognizes that §  1322(b)(5) has no counter-part such as §

362(h), the section that expressly provides specific remedies for the violation

of §  362(a). However, that does not mean that Washington Mutual or any

other creditor can disregard without restraint the provisions of the Bankruptcy

Code. Section 105(a) provides as follows [omitted]:

"Although dealing with an alleged violation of §  524(a)(2), the

bankruptcy discharge injunction, a case which accurately addresses the

significance and utility of § 105(a) is *Bessette v. Avco Financial Services,*

*Inc., 230 F.3d 439 (1st Cir. 2000)*. The First Circuit offered the following

comments, to wit:

"As this Court has previously recognized, "section 105(a) empowers

the bankruptcy court to exercise its equitable powers--where 'necessary' or

'appropriate'--to facilitate the implementation of other Bankruptcy Code

provisions." *Noonan v. Secretary of HHS (In re Ludlow Hosp. Soc'y),* 124

F.3d 22, 27 (1st Cir. 1997);  *see also SPM Mfg. Corp. v. Stern (In re SPM*

5

*Mfg. Corp.),* 984 F.2d 1305, 1311 (1st Cir. 1993); *In re G.S.F. Corp.,* 938 F.2d 1467, 1475 (1st Cir. 1991). While it is true that the considerable discretion conferred on courts sitting in bankruptcy by § 105 is not unlimited, in that it is not "'a roving commission to do equity,'" *Noonan,* 124 F.3d at 27 (quoting *Chiasson v. J. Louis Matherne & Assocs. (In re Oxford Management),* 4 F.3d 1329, 1334 (5th Cir. 1993)), a court is well within its authority if it exercises its equitable powers to enforce a specific code provision, *see id.; SPM Mfg.,* 984 F.2d at 1311, such as § 524. Thus, § 105 does not itself create a private right of action, but a court may invoke § 105(a) "if the equitable remedy utilized is demonstrably necessary to preserve a right elsewhere provided in the Code," *Noonan,* 124 F.3d at 28, so long as the court acts consistent with the Code and does not alter the Code's distribution of other substantive rights, *see id.; SPM Mfg.,* 984 F.2d at 1311. *Harris* at 69-70

...

"As a result of the foregoing analysis, this court concludes that the plaintiffs do indeed have recourse against Washington Mutual for its alleged violations of the Bankruptcy Code, as well as, that this court's authority to afford relief flows through its equitable powers conveyed by § 105(a). If *bona fide* violations of the Bankruptcy Code have been committed by either debtors or creditors, the legitimate policing of those violations is not a "roving commission to do equity." Rather, it is the exercise of clearly articulated statutory authority to insure that the bankruptcy process functions in an orderly manner." *Harris* at 71.

Imposition and Computation of Punitive Damages.

In *Curtis v. Lasalle National Bank*, 322 B.R. 470 (Bankr. W.D. Mass. 2005), the Court (Boroff, J.) discussed the imposition and computation of punitive damages. The Court stated that:

6

"When an institutional creditor responds to an obvious violation of the automatic stay or discharge injunction against a consumer debtor by employing its superior resources  to make frivolous responses that tax the resources of that debtor, those responses should be viewed as nothing more than an abusive continuation of the original improper conduct being complained of. It is the most appropriate occasion for imposition of punitive damages.

"The amount in which punitive damages should be awarded is, likewise, a fact specific determination within the discretion of the bankruptcy courts. *In re Rosa,* 313 B.R. at 8; see also e.g., *Clayton v. King (In re Clayton),* 235 B.R. 801, 811 (Bankr. M.D. N.C. 1998); *In re Timbs,* 178 B.R. 989, 997-98 (Bankr. E.D. Tenn. 1994); *In re Klein,* 226 B.R. 542, 545 (Bankr. D. N.J. 1998). Punitive damages should be awarded in an amount sufficient to serve their purpose of deterrence. See *In re Klein,* 226 B.R. 542 (Bankr. D. N.J. 1998); *In re Georgeff,* 226 B.R. 852 (Bankr. S.D. Ohio 1998); *In re Wills,* 226 B.R. 369 (Bankr. E.D. Va. 1998). What would be sufficient to deter one creditor may not even be sufficient to gain notice from another. *Punitive damages must be tailored not only based upon the egregiousness of the violation, but also based upon the particular creditor in violation.* (emphasis added)" *Curtis* at 486-487.

Similarly, in *Heghmann v. Indorf*, 316 B.R. 395 (B.A.P. 1st Cir. 2004), that Court stated that imposition of punitive damages are warranted when there is "egregious, intentional misconduct".

"Although the case law is far from uniform with respect to when and under what circumstances punitive damages are awarded, courts often limit the imposition of punitive damages to cases where there is "'egregious, intentional misconduct." See *Lovett v. Honeywell, Inc.,* 930 F.2d 625, 628 (8th Cir. 1991) (quoting *United States v. Ketelsen (In re Ketelsen),* 880 F.2d

990, 993 (8th Cir. 1989)); see also *In re  Sumpter,* 171 B.R. at 845 ("Puni-

tive damages are awarded in response to particularly egregious conduct for

both punitive and deterrent purposes"); *Davis v. IRS,* 136 B.R. 414, 424

(E.D. Va. 1992) ("Only egregious or vindictive misconduct warrants

punitive damages for willful violations of the automatic stay . . . .").


"In addition, some courts also consider the deterrent effect in

determining punitive damages. See, e.g., *In re Steenstra,* 280 B.R. 560, 569

(Bankr. D. Mass. 2002) ("Punitive damages for violation of the automatic

stay are often awarded as a deterrent to prevent similar future acts"), aff'd,

307 B.R. 732, 738 (B.A.P. 1st Cir. 2004); *Ocasio,* 272 B.R. at 825 ("The

primary purpose of punitive damages awarded for a willful violation of the

automatic stay is to cause a change in the creditor's behavior; . . . [and] . . .

the prospect of such change is relevant to the amount of punitive damages

to be awarded."); *In re Dunning,* 269 B.R. 357, 363 (Bankr. N.D. Ohio

2001) (deterrent effect of damages remedy of § 362(h) is not limited to

violators who had specific intent)." *Heghmann* at 405-406.

In the context of a creditor's violation of the automatic stay under 11 U.S.C.

§362(h), "the imposition of attorney's fees "constitute[s] compensatory damages which make

an award of punitive damages appropriate."", *Federal Home Loan Mortgage Corporation v.*

*McCormack,*  1996 U.S. Dist. LEXIS 22663 (D. New Hampshire 1996).

The McCormack Court said:

"The imposition of attorney's fees "constitute[s] compensatory

damages which make an award of punitive damages appropriate." *In re*

*Sumpter, supra,* 171 B.R. at 845 (citing *In re Baker,* 140 B.R. 88, 90 (D. Vt.

1992)). Unlike an award of actual damages, any award for punitive dam-

ages is within the sound discretion of the court. See *Davis v. IRS,* 136 B.R.

414, 423  (E.D. Va. 1992). "Relevant factors which may be considered in

determining whether punitive damages are appropriate for a creditor's violation of the automatic stay are: (1) the nature of the creditor's conduct; (2) the creditor's ability to pay damages; (3) the motive of the creditor; and (4) any provocation by the debtor." *In re Sumpter, supra,* 171 B.R. at 845 (citation omitted).

"Appropriate circumstances" sufficient to warrant the imposition of punitive damages have been generally limited to "'egregious, intentional misconduct on the violator's part ....'" *Lovett v. Honeywell, Inc.,* 930 F.2d 625, 628 (8th Cir. 1991) (quoting *United States v. Ketelsen (In re Ketelsen),* 880 F.2d 990, 993 (8th Cir. 1989)); *In re Sumpter, supra,* 171 B.R. at 845 ("Punitive damages are awarded in response to particularly egregious conduct for both punitive and deterrent purposes." (citations omitted); *Davis, supra,* 136 B.R. at 424 ("only egregious or vindictive misconduct warrants punitive damages for willful violations of the automatic stay ...."). *McCormack* at 18-19.

In its June 30, 2006, *Findings,* this Court stated that, "[p]unitive damages are not recoverable although the concept is tempting to the Court considering the Defendant's egregious behavior. *Jacalyn S. Nosek v. Ameriquest Mortgage Co.*, 2006 Bankr. LEXIS 1279, *52-53.

The U.S. District Court has now provided this Court with the vehicle - 11 U.S.C. § 105(a) - to impose punitive damages upon Ameriquest Mortgage Company.

This Court has already found that:

"All payments received by the Defendant, whether it was from the Plaintiff or the Chapter 13 Trustee, were being applied to the contractual amount due. The loan servicing program kept track of the contractual obligations. The system the Defendant was using has design flaws that

9

inevitably lead to a showing that the Plaintiff is behind in her payments. It did

not distinguish between pre- and post-petition obligations which contradicts

with 11 U.S.C. § 1322(b) which provides for the curing of any default over

the course of the plan." *Nosek* at *39

In its earlier Decision, this Court quoted Defendant's then-employee, Judi Johnston.

"According to Ms. Johnston: "We don't apply the payments any differently in the case

of a Chapter 13 than we would in any others." *Nosek* at *49. Ms. Johnston's testimony

confirmed that Ameriquest lacks an accounting system for all of its borrowers in chapter 13.

It is clear from the record that the Defendant knew Ms. Nosek was the subject of a

pending chapter 13 case, yet the Defendant, described by the Bankruptcy Court as a "large

sophisticated national lender", failed to differentiate between pre and post-petition payment

obligations, "inadequately applying, tracking, and crediting payments made by the Plaintiff".

*Nosek* at *52.

Ameriquest's *Appellant's Opening Brief*, filed in U.S. District Court Case No. CA

06-40170-WGY, states that "Ameriquest is one of the largest and oldest home mortgage

lenders and loan servicers in the United States. It originates and services home loans in 48

states. As of July, 2006, Ameriquest services approximately 437,000 loans. Of those loans,

nearly 7,200 involve borrowers that are currently chapter 13 debtors." *Ameriquest Opening*

*Brief,* p. 4.

According to Ameriquest, "[t]he Bankruptcy Court had the erroneous belief that

Ameriquest was required to apply post-petition payments in accordance with the terms of the

Plan. It then used that belief to reach the conclusion that Ameriquest "contravened the terms

of a confirmed Chapter13 Plan", and therefore violated the covenant of good faith and fair

dealing." *Appellant's Opening Brief*, Section V. B (page 25).

There is nothing "erroneous" about the Bankruptcy Court's "beliefs". The essence of

chapter 13 is that it permits the debtor to modify, in a specified, limited fashion, the terms of

the mortgage agreement to permit the Debtor to cure pre-petition mortgage arrears by

payments over the life of their confirmed chapter 13 Plan.  Ameriquest, however, has a more

restrictive view of its obligations. It asserts that its obligations are limited to "accepting

payments tendered by Nosek and the Chapter 13 Trustee. Ameriquest did exactly what it was

required to do." *Ameriquest Opening Brief,* p. 28.

Whether coming from a place of arrogance or incompetence, Ameriquest's failure to

comply with the terms of a Confirmed Chapter 13 Plan warrant the imposition of substantial

punitive damages.

As cited above, imposition of punitive damages are warranted when there is

"egregious, intentional misconduct". "Punitive damages should be awarded in an amount

sufficient to serve their purpose of deterrence".  As Judge Boroff held in *Curtis v. Lasalle*

*National Bank*, "[w]hat would be sufficient to deter one creditor may not even be sufficient

to gain notice from another. Punitive damages must be tailored not only based upon the

egregiousness of the violation, but also based upon the particular creditor in violation."

*Curtis* at 486-487.

Debtor respectfully suggests that imposition of punitive damages against Ameriquest

Mortgage Company in an amount of not less than 10 time the amount of actual damages

previously found by this Court is warranted, based upon the totality of circumstances in this

case, the nature of the violation, and to serve as a deterrent to repetitive conduct by the

Defendant.

Decision of the U.S. District Court RE: Debtor's Claims Under M.G.L. C. 93A

With respect to Ms. Nosek's M.G.L. c. 93A claim, the U.S. District Court said:

" ... Ameriquest argues that the state law claim under Massachusetts
General Law chapter 93A ought be preempted according to the same logic
and analysis undergirding the preemption of the implied covenant of good
faith and fair dealing. (Appellee Mem. at 43-45.) Prudential and comity
concerns counsel against going so far.

"The Bankruptcy Court held that the violation of RESPA constituted a
per se violation of chapter 93A. (R. at 63.) Under 940 Code of Massachusetts
Regulations §3.16(4), a violation of chapter 93A occurs automatically if a
violation of a federal consumer protection statute is found. 940 Mass. Code.
Regs. 3.16(4) (2006). While the Bankruptcy Court correctly applied Massa-
chusetts law, the preemption of the underlying RESPA claim requires recon-
sideration of the chapter 93A claim. The Massachusetts General Law chapter
93A claim is, therefore, remanded to the Bankruptcy Court for reconsideration
as to whether the Bankruptcy Code preempts such state claims and, if that
court answers in the negative, for a determination of the claim on the merits."
*Memorandum and Order* at 22.

Preemption in General

The U.S. Supreme Court, in *Louisiana Public Service Comm. v. FCC*, 476 US 355,

386, 90 L.Ed 2d 369, 106 S. Ct. 1890 (1986), summarized the various forms of federal

preemption as follows:

"The Supremacy Clause of Art. VI of the Constitution provides
Congress with the power to pre-empt state law. Preemption occurs when
Congress, in enacting a federal statute, expresses a clear intent to pre-empt

12

state law, *Jones* v. *Rath Packing Co.*, 430 U.S. 519 (1977), when there is outright or actual conflict between federal and state law, *e. g., Free* v. *Bland*, 369 U.S. 663 (1962), where compliance with both federal and state law is in effect physically impossible, *Florida Lime & Avocado Growers, Inc.* v. *Paul*, 373 U.S. 132 (1963), where there is implicit in federal law a barrier to state regulation, *Shaw* v. *Delta Air Lines, Inc.*, 463 U.S. 85 (1983), where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal law, *Rice* v. *Santa Fe Elevator Corp.*, 331 U.S. 218 (1947), or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress. *Hines* v. *Davidowitz*, 312 U.S. 52 (1941). Preemption may result not only from action taken by Congress itself; a federal agency acting within the scope of its congressionally delegated authority may pre-empt state regulation. *Fidelity Federal Savings & Loan Assn.* v. *De la Cuesta*, 458 U.S. 141 (1982); *Capital Cities Cable, Inc.* v. *Crisp*, 467 U.S. 691 (1984).

## Did Congress Create Sufficient Remedies in the Bankruptcy Code So as to Constitute Field Preemption?

In the absence of express preemption language in the U.S. Bankruptcy Code, this Court must decide whether Congress created sufficient remedies in the Bankruptcy Code so as to constitute field preemption.

In *Bessette*, the Court said:

"In a case such as this, where there is no explicit statutory language preempting state law, this Court will find implied preemption under one of two circumstances: (1) where the federal statutory scheme is so pervasive that Congress clearly intended to "occupy the field" to the exclusion of state law, or (2) where a particular state law is in direct conflict with the federal law to an extent that the statutes cannot coexist. *See Summit Inv. & Dev. Corp., v.*

13

*Leroux*, 69 F.3d 608, 610 (1st Cir. 1995); *see also MSR Exploration Ltd. v. Meridian Oil, Inc.*, 74 F.3d 910, 913 (9th Cir. 1996) (quoting *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152-53, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982)). In reaching our conclusion that a state law claim for unjust enrichment is preempted, we rely on the existence of the first condition." *Bessette* at 447.

In Ms. Nosek's case, there is no "direct conflict between the state law and with the federal law to the extent that the statutes cannot coexist"; the issue is the extent of overlap.  11 U.S.C. § 105(a) and M.G.L. c. 93A both provide for recovery of actual damages and attorney's fees, but they differ in the scope of punitive damages available. M.G.L. c. 93A §9(3) caps an award of punitive damages at "up to three but not less than two times" the plaintiff's actual damages.

In *Bessette*, that Court distinguished its decision from an earlier decision in *Vahlsing v. Commercial Union Insurance Co.*, 928 F.2d 486 (1st Cir. 1991), when a panel of the 1st Circuit permitted a state law cause of action for violation of the §  362 automatic stay to go forward. "In that case the state law tort claims arose because the creditor, unaware of the bankruptcy proceeding, had the debtor arrested for contempt. There was no comparable overlap between a specific remedy available under the Bankruptcy Code and the state law remedies for false imprisonment, negligence, abuse of process." *Bessette* at 447- 448.

Massachusetts General Law Chapter 93a Provides a Settlement Mechanism That Is Not Available Under §105(a)

While 11 U.S.C. §105(a) provides a remedy for the creditor's failure to comply with the

14

terms of Debtor's Confirmed Chapter 13 Plan, Massachusetts General Law chapter 93A  §9(3) [3]

provides a settlement mechanism that is not available under §105(a).

<u>Ameriquest Violated M.G.L. c. 93A When it Failed to Respond to Debtor's C. 93A Demand
Letter, or Tender a Reasonable Offer of Settlement</u>

It is uncontroverted that the Defendant failed to respond to the July 23, 2004, c. 93A

demand letter, or make a reasonable offer of settlement, and that Ameriquest's actions were a

knowing and willful violation of Ms. Nosek's statutory rights.

---

[3]  (3) At least thirty days prior to the filing of any such action, a written demand for
relief, identifying the claimant and reasonably describing the unfair or deceptive act or
practice relied upon and the injury suffered, shall be mailed or delivered to any prospective
respondent. Any person receiving such a demand for relief who, within thirty days of the
mailing or delivery of the demand for relief, makes a written tender of settlement which is
rejected by the claimant may, in any subsequent action, file the written tender and an
affidavit concerning its rejection and thereby limit any recovery to the relief tendered if the
court finds that the relief tendered was reasonable in relation to the injury actually suffered
by the petitioner. In all other cases, if the court finds for the petitioner, recovery shall be in
the amount of actual damages or twenty-five dollars, whichever is greater; or up to three but
not less than two times such amount if the court finds that the use or employment of the act
or practice was a willful or knowing violation of said section two or that the refusal to grant
relief upon demand was made in bad faith with knowledge or reason to know that the act or
practice complained of violated said section two. For the purposes of this chapter, the amount
of actual damages to be multiplied by the court shall be the amount of the judgment on all
claims arising out of the same and underlying transaction or occurrence, regardless of the
existence or nonexistence of insurance coverage available in payment of the claim. In
addition, the court shall award such other equitable relief, including an injunction, as it
deems to be necessary and proper. The demand requirements of this paragraph shall not
apply if the claim is asserted by way of counterclaim or cross-claim, or if the prospective
respondent does not maintain a place of business or does not keep assets within the common-
wealth, but such respondent may otherwise employ the provisions of this section by making a
written offer of relief and paying the rejected tender into court as soon as practicable after
receiving notice of an action commenced under this section. Notwithstanding any other
provision to the contrary, if the court finds any method, act or practice unlawful with regard
to any security or any contract of sale of a commodity for future delivery as defined in
section two, and if the court finds for the petitioner, recovery shall be in the amount of actual
damages.

Under Massachusetts General Law chapter 93A §9(3), recovery of multiple damages for a failure to tender a reasonable settlement offer is a further ground for recovery of multiple damages in addition to where the defendant's complained of conduct was willful or knowing. Multiple damages for a bad faith settlement and a willful or knowing violation are disjunctive (sentence 3), multiple damages can be recovered under either provision.

If the defendant makes no response or an unreasonable offer, he or she can be liable on this ground alone for an award of double or treble damages. In *Heller v. Silverbranch Constr. Corp.*, 376 Mass. 621, 627, 382 N.E.2d 1065, 1070 (1978), the court said, "this multiple damage provision "is an attempt to promote pre-litigation settlements by making it unprofitable for the defendant either to ignore the plaintiff's request for relief or to bargain with the plaintiff with respect to such relief in bad faith".

This Court has already found that no response to the June 23, 2004, c. 93A demand letter was ever made, nor has Ameriquest claimed that it did respond. *Nosek* at *19- *20.

Ameriquest Forced the Debtor to Litigate

In this case Ameriquest forced the Debtor to litigate, even after Ms. Johnston testified at the deposition taken prior to trial that Ameriquest had not complied with 11 U.S.C. §1322.

At trial Ameriquest offered no exhibits or witnesses in defense. A CPA proffered by Ameriquest as an expert witness was found by the trial judge not to be an expert qualified to assist the Court. The Court ruled that Mr. Kelleher had no experience in chapter 13 and chapter 13 accounting. *Nosek* at *40.

As stated above, Judge Boroff has held that:

"When an institutional creditor responds to an obvious violation of the automatic stay or discharge injunction against a consumer debtor by employing

16

its superior resources to make frivolous responses that tax the resources of that debtor, those responses should be viewed as nothing more than an abusive continuation of the original improper conduct being complained of. It is the most appropriate occasion for imposition of punitive damages. *Curtis* at 486-487.

It is the Debtor's position that Ameriquest's failure to provide accurate accounting information, and its forcing the Debtor to litigate without making an offer of settlement, rise to the level of unfair practices, and are causes of action that are outside the scope of the Bankruptcy Code.

<u>Multiple Damages of from Two to Three Times Actual Damages May Be Awarded for a Willful or Knowing Violation of 93A</u>

This Court has previously found that the Defendant engaged in unfair practices which caused harm to the Plaintiff.

"When asked by the Plaintiff and indeed ultimately ordered by the Court to provide a detailed accounting, the Defendant dragged its feet. Such behavior is diametrically opposite good faith behavior." *Nosek* at *39

"There is nothing on the Payment History that indicates to the Plaintiff or the world whether she was current on pre- or post-petition payments. The Court finds it to be patently unreasonable and unfair that the Defendant is unable (or unwilling) to account for payments in such a way that the borrower can demon-strate timely payments in order to refinance." *Nosek* at *50 -*51.

"To credit back late charges but be unable to properly bill the borrower or provide an accurate statement on her account or apply payments from the Chapter 13 trustee is unconscionable for a large sophisticated national lender. The Defen-dant has breached the implied covenant of good faith and fair dealing by inade-quately applying, tracking, and crediting payments made by the Plaintiff." *Nosek* at *52.

17

"The Court is outraged by the egregious behavior of the Defendant and finds that the breach contributed to the emotional distress of the Plaintiff." *Nosek* at *55.

The Bankruptcy Court's findings that the Defendant's behavior was "diametrically opposite good faith behavior", "patently unreasonable and unfair ", "unconscionable", and that the Court was "outraged by the egregious behavior of the Defendant" are findings that the Defendant's conduct violated M.G.L c. 93A, §§ 2 and 9, and warrant such a Finding under Count III of Debtor's Complaint.

In its Decision, the Bankruptcy Court said:

"The Court finds that the Defendant has an obligation to properly, and in a timely manner, credit both pre- and post-petition payments made by the Plaintiff. Under Chapter 13, a debtor is permitted  to cure a default under a mortgage by paying the pre-petition arrears through the plan of reorganization and making the ongoing or post-petition payments directly to the servicer. See 11 U.S.C. § 1322. "The purpose of a Chapter 13 plan is to allow a debtor to pay arrears during the pendency of the plan while continuing to make payments at the contract rate. Payments made during the pendency of the Chapter 13 plan should have been applied by [the lender] to the current payments [then] due and owing with the arrearage amounts [received from the Chapter 13 trustee] to be applied to the back payments. [The lender] cannot use its accounting procedures to contravene the terms of a confirmed Chapter 13 plan and the Bankruptcy Code." *citing In re Wines*, 239 B.R. 703, 707 (Bankr. D. N.J. 1999) *quoting In re Rathe,* 114 B.R. 253, 257 (Bankr. D. Idaho 1990).

"In the instant case, the Defendant has done just that. It has used its accounting procedures to contravene the terms of a confirmed Chapter 13 plan, a plan that was approved on January 16, 2004 [n32] and is binding on the Defendant." *Nosek* at *47 - *48.

In *Kattar v. Demoulas*, 433 Mass. 1, 16, 739 N.E.2d 246, 259 (2000), the court noted that, "c. 93A ties liability for multiple damages to the degree of the defendant's culpability."

In *Horgan v. Massachusetts Electric Company*, 1992 Mass.App.Div 124, 128, 1992 WL 158384 (1992), the court said, "certainly 'double' damages may be assessed upon clear proof, as in the instant case, of a party's full knowledge of both its statutory duty, and all facts constituting a breach of such duty."

The policy goal behind the award of multiple damages under c. 93A is deterrence of willful or knowing unfair or deceptive acts or practices. In *Sorenson v. H & R Block, Inc.*, 2004 WL 1858182 (1st Cir. 2004), the Court said, "[i]t is established that deterrence is an important goal of the multiple damages of c.93A ..."

A willful state of mind for purposes of c. 93A exists where the defendant acts either with the intention or with the conscious objective of engaging in unfair or deceptive conduct or of causing an unfair or deceptive result.

In *Heller v. Silverbranch Constr. Corp.*, 376 Mass. 621, 624, 382 N.E.2d 1065, 1070 (1978), the court said, "the willful or knowing provisions of 93A are "directed against callous and intentional violations of the law and permit recovery of multiple damages on a showing that the defendant willfully or knowingly employed an unfair or deceptive practice"; D. Rice, "New Private Remedies for Consumers: The Amendment of Chapter 93A", Mass. L.Q. 307, 318 (1969), said "[t]he obvious purpose here is to impose strong sanctions against the callous violation of the law.

Field Preemption

19

This Court must determine whether the federal statutory scheme contained in the Bankruptcy Code is so pervasive that Congress clearly intended to "occupy the field" to the exclusion of state law.  The U.S. District Court was not prepared to go that far. In its *Decision and Order*, it remanded Debtor's c. 93A claims "for reconsideration as to whether the Bankruptcy Code preempts such state claims and, if that court answers in the negative, for a determination of the claim on the merits."

Reported instances of Federal statutory schemes that are so pervasive that Congress clearly intended to "occupy the field" to the exclusion of the state law remedies contained in M.G.L.  c. 93A include cases involving the Miller Act, which regulates Federal construction projects (*Metric Electric, Inc. v. Enviroserve, Inc.*, 301 F.Supp. 2d.  56 (D. Mass. 2003)); the Petroleum Marketing Practices Act (*Smoot v. Mobil Oil Corp.*, 722 F. Supp. 949, 858-859 (D. Mass. 1989)), and ERISA (*Harris v. Harvard Pilgrim Health Care, Inc.*, 208 F.3d 274, 281 (1st Cir. 2000), *but see Miara v. First Allmerica Financial Life Insurance Company,* 379 F. Supp. 2d 20 (D. Mass. 2005)), among others.

In other contexts, courts have held that field preemption did not exist.  See, *Lee v. Mt. Ivy Press, L.P.*, 63 Mass. App. Ct. 538, 553, 827 N.E.2d 727 (2005) ("To the extent that the plaintiff's G.L. c. 93A claims were based upon the same fraudulent conduct ... (and additional unfair acts, deception and misrepresentation), the claims were qualitatively different from a copyright infringement claim, and thus were not preempted), and *Mesta v. Allied Van Lines International, Inc.*, 695 F. Supp 63, 65 (D. Mass. 1988) (federal regulation [Carmack Amendment to the Interstate Commerce Act] of motor carrier's loss or damage to shipped goods is not the same as 93A regulation of unfair claims settlement practices with respect to such loss or damage).

<u>Defendant's Reliance on the Recent S.J.C. Decision in *Hershenow* Is Misplaced.</u>

Defendant's reliance on the recent S.J.C. decision in *Hershenow v. Enterprise Rent-a-Car Company of Boston, Inc.*, 445 Mass. 790, 840 N.E.2d 526 (2006), in support of its position that M.G.L. c. 93A is preempted is misplaced.

In *Hershenow*, the plaintiffs' cause of action was based solely on contractual language contained in an auto rental agreement which violated a Massachusetts statute. M.G.L. c. 90, §32E ½ regulates the limiting conditions an auto rental company may include in its Collision Damage Waiver.

> " Every consumer is, of course, entitled to the full protection of law. If any person invades a consumer's legally protected interests, and if that invasion causes the consumer a loss —— whether that loss be economic or noneconomic —— the consumer is entitled to redress under our consumer protection statute. A consumer is not, however, entitled to redress under G.L. c. 93A, where no loss has occurred. To permit otherwise is irreconcilable with the express language of G.L. c. 93A,§§ 9, and our earlier case law. The judge's amended order granting summary judgment for the defendants is affirmed." *Hershenow* at 798-802.

*Hershenow* stands for the proposition that the Plaintiff must suffer a loss, and that loss must be causally connected to the defendant's unfair practices. This Court has already found that Ameriquest engaged in unfair and or deceptive practices, that the Plaintiff Nosek was harmed by Ameriquest's unfair and deceptive practices, and awarded damages of $250,000.00.

On its face, this Court's finding that the Plaintiff suffered significant harm as a result of Ameriquest's unfair actions distinguishes this case from *Hershenow*.

21

<u>Preference Generally Will Be Given to an Award of Actual Damages Under the Claim Permitting the Larger Recovery</u>

In *Rita v. Carella*, 394 Mass. 822, 825, 477 N.E.2d 1016,1018 (1985) (where plaintiff prevailed on both the 93A claim and other statutory claims) the court held that the plaintiff "was entitled to recover damages under the theory resulting in the larger recovery", *see also Calimlim v. Foreign Car Center, Inc*. 392 Mass. 228, 235, 467 N.E.2d 443, 448 (1984).

CONCLUSION

The Defendant's conduct warrants the imposition of substantial punitive damages.  For the reasons set forth above, Debtor/Plaintiff requests that pursuant to 11 U.S.C. §105(a) that this Court enter a Judgment against Ameriquest Mortgage Company ordering monetary relief in the form of actual damages of $250,000, plus punitive damages of ten times that amount, attorney fees and costs in an amount to be subsequently determined, and statutory interest.

Jacalyn Nosek
By her attorney,

/s/ Philip M.  Stone
Philip M. Stone, BBO # 544139
44 Front Street
Worcester, MA  01608
Tel. (508) 755-7354
Fax.  (508) 752.3730
E-mail: pstonelaw@rcn.com

Dated:          December 27, 2006

22

<u>CERTIFICATE OF SERVICE</u>

I, Philip M. Stone, do hereby certify on this day I electronically filed the foregoing pleadings with the United States District Court for the District of Massachusetts using the CM/ECF System.  I served the foregoing document on the following CM/ECF participants:

Robert Charlton, Esq.
Steven M. Ablitt, Esq.
Jeffrey K. Garfinkle, Esq.

*and all others receiving notice via the CM/ECF system*

I further certify that I have mailed this day by first-class mail, postage prepaid, a copy of the aforementioned pleading electronically filed with the Court on the following:

Jacalyn S. Nosek
60 Bolton Road
PO Box 1311
S. Lancaster, MA 01561

Denise Pappalardo *(By Hand)*
Standing Chapter 13 Trustee
44 Front Street
Worcester, MA 01608

/s/ Philip M.  Stone
Philip M. Stone


DATED:        December 27, 2006