# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
### WESTERN DIVISION

| | |
|---|---|
| In re: | Chapter 13 Bankruptcy |
| Jacalyn S. Nosek | Case No. 02-46025-JBR |
| Debtor. | Adversary No. 04-04517 |
| Jacalyn S. Nosek, | |
| Plaintiff, | |
| Vs. | |
| Ameriquest Mortgage Co., | |
| Defendant. | |

## AMERIQUEST MORTGAGE COMPANY'S BRIEF RE:
## DISTRICT COURT'S MEMORANDUM AND ORDER

BUCHALTER NEMER
A Professional Corporation
Jeffrey K. Garfinkle (Cal. Bar. 153496;
*Admitted pro hac vice*
18400 Von Karman Avenue, Suite 800
Irvine, California 92612
(949) 760-1121 Telephone
(949) 720-0182 Facsimile
jgarfinkle@buchalter.com

and

ABLITT & CHARLTON, PC
Steven M. Ablitt (BBO 641316)
Robert F. Charlton (BBO 081200)
92 Montvale Avenue, Suite 2950
Stoneham, Massachusetts 02180
(781) 246-8995 Telephone
(781) 246-8994 Facsimile
sablitt@acdlaw.com

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................................ 1

II.   RELEVANT PROCEDURAL HISTORY AND FACTUAL BACKGROUND .............. 2

    A.   Within Five Years After Ameriquest Made its Loan to Nosek,
        She Filed Three Separate Bankruptcy Cases ........................................................ 2

    B.   Both Before and After Nosek's Plan Was Confirmed,
        Ameriquest Accepted Each and Every Payment Tendered By Nosek ................. 3

    C.   In May 2004, Ameriquest Provided a Payment History to Nosek ....................... 4

    D.   On July 23, 2004, Nosek Sent a Letter to Ameriquest's Counsel ....................... 4

    E.   In August 2004, Nosek Stopped Tendering any Payments to
        Ameriquest and Filed a "Motion to Determine Amount of Liens." .................... 4

    F.   In December 2004, Nosek Commenced Her Lawsuit Against
        Ameriquest ........................................................................................................... 5

    G.   In Late 2005 and Early 2006, this Court Conducted a Lengthy Trial ................. 5

    H.   Both at and after the Conclusion of the Trial, this Court Denied
        Nosek's  Attempts to Assert New Causes of Action ........................................... 6

    I.   Following Issuance of the Memorandum Decision and the Judgment,
        Ameriquest Timely Appealed While Nosek Did Not ......................................... 7

    J.   Following Briefing and Oral Argument, the District Court
        Reversed the Majority of the Judgment on the Basis of
        Bankruptcy Preemption ....................................................................................... 8

III.   THE THIRD CAUSE OF ACTION FOR SUPPOSED VIOLATIONS OF MASS.G.L... 9

    A.   Controlling First Circuit Law Requires Either Dismissal of the
        Third Cause of Action or Judgment in Favor of Ameriquest ............................. 9

    B.   Both of Nosek's Alleged Violations of Mass G.L. c. 93A Are Preempted ........ 15

        1.   Post-Petition Application of Payments ..................................................... 15

        2.   Alleged Failure to Respond to Demand Letter ......................................... 15

    C.   The Cases Cited By Nosek on Preemption Have No Applicability
        to Bankruptcy Cases ........................................................................................... 17

BN 1083719v2

## TABLE OF CONTENTS
### (continued)

Page

D.    Nosek Is Not Entitled to Assert a Claim or Recover Any Damages under Mass.G.L. c. 93A ................................................................................. 18

1.    Nosek Failed to Wait 30 Day Before Commencing Her Action Against Ameriquest ................................................ 18

2.    This Court's Prior Ruling on Nosek's Failure to Prove Damages Controls ........................................................ 18

IV.    NOSEK IS PROHIBITING FROM ASSERTING A NEW CLAIM UNDER BANKRUPTCY CODE § 105(A) AT THIS STATE OF THE LITIGATION ............... 19

A.    The Bankruptcy Court Must Strictly Comply with the District Court's Specific and Limited Remand .................................... 19

B.    The Law of the Case Doctrine Bar's Nosek's Post-Appeal Assertion of a § 105 Cause of Action. ........................................................... 21

1.    The Bankruptcy Court's Denial of Leave to Amend to Nosek to Assert a § 105 Claim is the Law of the Case ......................... 22

2.    Nosek Cannot Satisfy Any Exception to the Law of the Case Doctrine ............................................................ 23

C.    Issue Preclusion Bars Nosek's Attempt to Assert a § 105 Claim or Remedies. ....................................................................... 24

D.    Nosek's Failure to Appeal the Denial of her Motion to Amend Bars her Post-Appeal Attempt to Assert a § 105 Claim and Remedies. ............. 26

E.    Assuming, Arguendo, Nosek is Entitled to Now Assert a § 105 Claim, Ameriquest is Entitled to Litigate the Merits of this Newly Asserted Claim ...................................................................... 26

F.    The Other Points Raised by Nosek Are Either Incorrect or Not Relevant to the Matters Before this Court .......................................... 28

V.    CONCLUSION ........................................................................................... 29

BN 1083719v2

# TABLE OF AUTHORITIES

Page

## Cases

*Agostini v. Felton,*
  521 U.S. 203 (1997) ............................................................................................ 21

*American Guaranty and Liability Ins. Co. v.*
  *Perrone (In re Perrone),*
  284 B.R. 315 (Bankr. D. Mass 2002). ............................................................. 20

*Arizona v. California,*
  460 U.S. 605 (1983) ..................................................................................... 21, 22

*Bessette v. Avco Fin. Servs., Inc.,*
  230 F.3d 429 (1st Cir. 2000) ...................................................................... 10, 23

*Burns v. Hale and Dorr LLP,*
  445 F.Supp.2d 94 (D. Mass. 2006) .................................................................. 18

*Bushay v. McDonnell (In re Bushay),*
  327 B.R. 695 (1st. Cir. BAP 2005) .................................................................. 18

*Commissioner v. Sunnen,*
  333 U.S. 591 (1947) ........................................................................................ 24

*Conley v. U.S.,*
  323 F.3d 7 (1st Cir. 2003) ............................................................................... 22

*Dennis v. Rhode Island Hosp. Trust Nat. Bank,*
  744 F.2d 893 (1st Cir. 1984) .......................................................................... 25

*Eastern Equip. and Servs. Corp. v. Factory Point Nat'l Bank of Bennington,*
  236 F.3d 117 (2nd Cir. 2000) ................................................................... 10, 12

*El Paso Natural Gas Co. v. Neztsosie,*
  526 U.S. 473 (1999) ........................................................................................ 26

*Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta,*
  458 U.S. 141 (1982) .......................................................................................... 9

*Field v. Mans,*
  157 F.3d 35 (1st Cir. 1998) ............................................................................. 22

*Heller v. Silverbranch Const. Corp.,*

BN 1083719v2

## TABLE OF AUTHORITIES
### (continued)

**Page**

376 Mass. 621 (1978) ......................................................................................... 17

*Hershenow v. Enter. Rent-a-Car Co. of Boston, Inc.*
445 Mass. 790 (2006) ...................................................................................... 19

*Holloway v. Household Auto. Fin. Corp.*, 227 B.R. 501 (N.D. Ill. 1998) ............................ 13, 14

*In accord Olsen v. Correiro,*
189 F.3d 52 (1st Cir. 1999).............................................................................. 26

*In re Lenior,*
231 F.R. 662 (B. N.D. Ill. 1999) ...................................................................... 13

*In re Smith,*
43 B.R. 313 (Bankr. N.D. Ill. 1984) ............................................................... 13

*Kotler v. American Tobacco Co.,*
981 F.2d 7 (1st Cir. 1992)............................................................................... 20, 21

*McMahon v. Digital Equipment Corp.,*
944 F.Supp. 70 (D.Mass 1996) ...................................................................... 18

*Montana v. U.S.,*
440 U.S. 147 (1979)........................................................................................ 23, 25

*Patriot Portfolio, LLC v. Weinstein (In re Weinstein), LLC,*
164 F.3d 677 (1st Cir. 1999) .......................................................................... 10

*Pertuso v. Ford Motor Credit Co.,*
233 F.3d 417 (6th Cir. 2000) .......................................................................... 12

*Raymark Indus., Inc. v. Baron,*
1997 U.S. Dist. LEXIS 8871, (E.D. Pa. June 23, 1997) ................................... 13

*Ricky Smith Pontiac, Inc. v. Subaru of New England, Inc.,*
14 Mass.App.Ct. 396 (1982)........................................................................... 18

*Salve Regina College v. Russell,*
499 U.S. 225 (1991)........................................................................................ 25

*Shiner v Moriarty,*
706 A.2d 1228 (Pa. Super. 1998).................................................................... 13

BN 1083719v2

## TABLE OF AUTHORITIES
### (continued)

Page

*Textron Funding Corp. v. Bessette*,
  532 U.S. 1048 (2001) ................................................................................................. 10

*U.S. v. American Ry. Express Co.*, 265 U.S. 425, 435 (1924) ....................................... 26

*U.S. v. Craven*,
  239 F.3d 91 (1st Cir. 2001) ......................................................................................... 26

*U.S. v. Lumbermens Mut. Cas. Co.*,
  917 F.2d 654 (1st Cir. 1990) ....................................................................................... 26

*U.S. v. Moran*,
  393 F.3d 1 (1st Cir. 2004) ........................................................................................... 25

*U.S. v. Ticchiarelli*,
  171 F.3d 24 (1st Cir. 1999) ......................................................................................... 22

*United States v. Bell*,
  988 F.2d 247 (1st Cir. 1993) ................................................................................. 22, 23

*United States v. Ellis*,
  313 F.3d 636 (1st Cr. 2002) ........................................................................................ 22

*Walsh v. Intern. Longshoremen's Ass'n, AFL-CIO*,
  630 F.2d 864 (1st Cir. 1980) ....................................................................................... 24

BN 1083719v2

## TABLE OF AUTHORITIES
### (continued)

Page

**FEDERAL STATUTES AND RULES**

**11 U.S.C.**

§ 105 .................................................................................................................. passim

§ 105(a) ................................................................................................................... 19

§ 1322 ..................................................................................................................... 26

§ 1322(b) ........................................................................................................... 15, 19

§ 522(f) ................................................................................................................... 10

§ 524(i) ................................................................................................................... 14

**12 U.S.C.**

§ 2605 ....................................................................................................................... 5

§ 2605(e) ................................................................................................................... 1

§ 2605(f) ................................................................................................................... 5

**F.R.Bankr.P.**

Rule 9023 ................................................................................................................. 7

**Fed.R.Civ.P.**

Rule 59(c) ................................................................................................................. 7

**MASSACHUSETTS STATUTES**

**Mass.G.L. c. 93A**

§ 2 ........................................................................................................................ 1, 5

§ 9 ........................................................................................................................ 1, 5

§ 9(3) ................................................................................................ 4, 15, 16, 17, 18

BN 1083719v2

Ameriquest Mortgage Company ("Ameriquest") hereby respectfully submits this Brief. This Brief addresses the single and discrete issue remanded to this Court pursuant to the Memorandum and Order issued by the United States District Court for the District of Massachusetts (the "District Court") on November 13, 2006 (the "District Court's Decision"). It also addresses the additional arguments and requested relief as set forth in the Supplement Brief filed by Jacalyn Nosek ("Nosek").

## I.    **INTRODUCTION**

Following the June 30, 2006 issuance of the Memorandum of Decision ("Memorandum Decision") and entry of the final judgment in this adversary proceeding, Ameriquest timely appealed to the District Court. Ameriquest's appeal focused on the three Counts in the Complaint upon which this Court issued judgment in favor of Nosek. Those Counts were Count Two—for alleged violations of § 2605(e) of the Real Estate Settlement Practices Act ("RESPA"), Count Three—for alleged violations of §§ 2 and 9 of Mass.G.L. c. 93A, and Count Five—for alleged violations of Massachusetts's covenant of good faith and fair dealing.

In its reversal, the District Court ruled that the Bankruptcy Code and Rules preempted Nosek's claims for violation of RESPA (Count Two) and breach of the supposed covenant of good faith and fair dealing (Count Five). As to the remaining cause of action, Count Three, the District Court ruled that by virtue of the preemption of Count Two (the RESPA claim), there was no longer a *per se* violation of Mass.G.L. c. 93A. Because of this determination, the District Court issued a limited remand. The District Court instructed this Court to reconsider Nosek's claim for alleged violations of Mass.G.L. c. 93A. Specifically, the District Court instructed this Court to reconsider "whether the Bankruptcy Code preempts such state claims and, if that court answers in the negative, for a determination of the claim on the merits." **This is the only issue currently before this Court**.

1

Rather than directly address the issue, Nosek devotes the first half of her Supplemental

Brief to an issue that is not before this Court.  Nosek argues that this Court should award Nosek a

judgment under § 105 of the Bankruptcy Code.  As explained herein, under numerous controlling

doctrines of Federal civil and appellate procedure, Nosek is barred from asserting a new claim

under § 105 of the Bankruptcy Code or seeking recovery and remedies under this new legal

theory.  For the same reasons that Nosek's claims for violations of Massachusetts's covenant of

good faith and fair dealing and RESPA are preempted, her claim under Mass.G.L c. 93A for

alleged unlawful conduct during the course of the bankruptcy case is preempted.  For the reasons

set forth herein, this Court should either dismiss or enter judgment in favor of Ameriquest on the

Third Cause of Action.

## II.    RELEVANT PROCEDURAL HISTORY AND FACTUAL BACKGROUND.

In order to address fully the single issue actually before this Court and the new legal

theory and claim raised by Nosek in her Supplemental Brief, it is necessary to review the key

factual and procedural history surrounding this litigation.

### A.    Within Five Years After Ameriquest Made its Loan to Nosek, She Filed Three Separate Bankruptcy Cases.

Ameriquest's relationship with Nosek began in November 1997.  On November 25,

1997, Nosek borrowed $90,000 from Ameriquest.  Memorandum Decision, p. 2.  At the time she

borrowed these funds, Nosek executed and delivered to Ameriquest an Adjustable Rate Note (the

"Note").  *Id.*  The Note is secured by a duly recorded Mortgage against Nosek's primary

residence.

On October 2, 2002, Nosek filed her third and current Chapter 13 case (Case No. 02-

46025).  Memorandum Decision, p. 4.  During the course of this third bankruptcy case, Nosek

objected to Ameriquest's proof of claim, Ameriquest sought relief from stay (due to the failure of

Nosek to make the required post-petition payments), and Ameriquest and Nosek entered into an "adequate protection stipulation" (the "Stipulation"). Memorandum Decision, p. 20. Pursuant to the Stipulation, Nosek was required to make regular monthly payments on or before certain dates. *Id.* Nosek repeatedly breached and remains in breach of the terms of the Stipulation. *Id.*

**B.    <u>Both Before and After Nosek's Plan Was Confirmed, Ameriquest Accepted Each and Every Payment Tendered By Nosek.</u>**

When Nosek commenced her third bankruptcy case, she owed Ameriquest $106,533.17. Of that aggregate amount, $18,810.95 was for pre-petition arrears. The components of this claim are itemized in an amended proof of claim filed by Ameriquest.

On December 1, 2003, fourteen months after the start of her third bankruptcy case, Nosek proposed her "Second Amended Plan of Reorganization" (the "Chapter 13 Plan").[1] On January 16, 2004, the Bankruptcy Court entered an order confirming the Chapter 13 Plan.[2] Pursuant to this plan, Nosek is obligated to pay the pre-petition arrears over the five-year life of the plan, at a rate of $442 per month. Nosek also is required to pay directly the "ongoing" payments under her loan with Ameriquest. The relevant portions of the Chapter 13 Plan are incorporated into the Order Confirming Second Amended Chapter 13 Plan as a Supplement, which reads, in pertinent part:

> 2.    Unmodified Secured Claims
>
> Ameriquest Mortgage (the "Mortgagee") is retaining its lien on the property located at 60 Bolton Road, South Lancaster, Massachusetts. The debtor shall continue to make regular monthly payments in accordance with the contract with the Mortgagee. The Mortgagee will be paid its prepetition arrearages in the sum of $18,810.95 over 60 months at the amount of $313.52 per month.

---

[1]  A copy of the Second Amended Plan is attached to Ameriquest's Request for Judicial Notice as Exhibit "1."

[2]  A copy of the Order Confirming the Second is attached to Ameriquest's Request for Judicial Notice as Exhibit "2."

### C.     In May 2004, Ameriquest Provided a Payment History to Nosek.

In May 2004, Nosek submitted a written request to Ameriquest's counsel asking for a

payment history.  Memorandum Decision, p. 5.  On May 10, 2004, Ameriquest provided a

twelve-month payment history to Nosek.  *Id.*

### D.     On July 23, 2004, Nosek Sent a Letter to Ameriquest's Counsel.

On July 23, 2004, Nosek's counsel sent a letter to Ameriquest's Massachusetts

bankruptcy counsel.[3]  In that letter, Nosek's counsel raised a number of points, made various

demands against Ameriquest, and advised that he had prepared a complaint against Ameriquest

alleging violations of "various state and Federal statutes, including . . . Massachusetts General

Laws Chapter 93A."  This letter further states:

> "This is a written demand for relief pursuant to Massachusetts
> General Laws Chapter 93A, Sections 2, 9 and 11 for payment of
> damages suffered by Ms. Nosek because of Ameriquest's unfair
> and/or deceptive acts or practices."

### E.     In August 2004, Nosek Stopped Tendering any Payments to Ameriquest and Filed a "Motion to Determine Amount of Liens."

The last payment Ameriquest received from Nosek was on August 24, 2004.  On August

11, 2004, two weeks before this payment was received, Nosek filed a "Motion to Determine

Amount of Lien."[4]  The motion was filed *one day before* the August 12, 2004 deadline under

RESPA to respond to the July 23, 2004 letter.  The motion was also filed *10 days before* the

August 22, 2004 date by which Ameriquest was statutorily permitted under § 9(3) of Mass.G.L.

c. 93A to respond to the July 23, 2004 letter in order to mitigate any damage claim on the part of

---

[3]  A copy of the July 23, 2004 letter is attached to the Exhibits in Support of Ameriquest's Supplemental Brief as Exhibit "1."

[4]  Pursuant to Federal Rule of Evidence 201, Ameriquest requests this Court take judicial notice of the Motion to Determine Lien.

Nosek and the threshold date on which Nosek was statutorily permitted to commence an action against Ameriquest.

In the Motion to Determine Amount of Lien, Nosek raised many of the allegations that ultimately were contained in the Complaint. In her request for relief, Nosek asked the Bankruptcy Court to determine "the amount owed to Ameriquest."

**F.     In December 2004, Nosek Commenced Her Lawsuit Against Ameriquest.**

On December 2, 2004, Nosek commenced her lawsuit against Ameriquest. In the lawsuit, Nosek asserted seven causes of action against Ameriquest. They included alleged violations of TILA, RESPA and Mass.G.L. c. 93A, §§ 2 and 9 (Causes of Action One through Three, respectively), unjust enrichment (Cause of Action Four), breach of the covenant of good faith and fair dealing (Cause of Action Five), Infliction of Emotional Distress (Cause of Action Six), and Lost Income (Cause of Action Seven). On January 3, 2005, Ameriquest filed its Answer to the Complaint.

On September 14, 2005, Nosek filed a motion for partial summary judgment. The hearing on the motion for summary judgment was held on October 25, 2005. At the conclusion of that hearing, the Bankruptcy Court ruled that Ameriquest had "violated" § 2605 of RESPA and section 2(a) of Mass.G.L. c. 93A. The Bankruptcy Court denied the remainder of Nosek's summary judgment motion. On the two counts for which the Bankruptcy Court found statutory violations, this Court continued the matter for trial on damages, if any, and entry of a final judgment.

**G.     In Late 2005 and Early 2006, this Court Conducted a Lengthy Trial.**

During November and December 2005 and January and March 2006, the Bankruptcy Court conducted a seven-day trial on the following matters: (a) Nosek's supposed damages under § 2605(f) of RESPA and section 2(a) of Mass.G.L. c. 93A; and (b) Nosek's remaining five

causes of action alleged in the Complaint—violation of TILA, Unjust Enrichment, Breach of

Implied Covenant of Good Faith and Fair Dealing, Intentional Infliction of Emotional Distress,

and Lost Income. During the course of that trial, numerous witnesses testified and were cross-

examined.

**H.     Both at and after the Conclusion of the Trial, this Court Denied Nosek's Attempts to Assert New Causes of Action.**

On February 26, 2006, six weeks after the conclusion of testimony, Nosek requested

permission to file an amended complaint.[5]  In the proposed amended complaint, Nosek sought to

add two new causes of action (which would have been Counts Eight and Nine). The Eighth

Cause of Action was for "Violation of 11 U.S.C. § 362."

Ameriquest opposed that motion.[6]  At a hearing held on March 8, 2006, this Court denied

the motion to amend.[7] As this Court explained in denying this motion:

> When issues are not raised by the pleadings are tried by express or
> implied consent of the parties, they shall be treated in all respects
> as if they'd been raised in the pleadings.
>
> There's no claim here at all by the plaintiff that there was express
> consent to these matters being tried as counts under Bankruptcy
> 362 of 15 USC [sic].
>
> So the next test is were they implied. The jurisprudence that I
> found was that where evidence that was introduced is imminently
> relevant to support pled causes of action, it can't use the evidence
> to then imply consent for other causes of action because that would
> be an ambush. The other side must understand that the evidence

---

[5] A copy of "Plaintiff's Motion Pursuant to Bankruptcy Rule 7015(b) to Amend Pleading to Conform to the Evidence" is attached to Ameriquest's Request for Judicial Notice as Exhibit "3." A copy of the proposed amended complaint is attached to Ameriquest's Request for Judicial Notice as Exhibit "4."

[6] A copy of the "Memorandum of Law in Support of Ameriquest Mortgage Company's Opposition to Plaintiff's Motion for Leave to Amend Complaint" is attached to Ameriquest's Request for Judicial Notice as Exhibit "5."

[7] A copy of the "Proceeding Memorandum/Order" from the March 8, 2006 hearing is attached to Ameriquest's Request for Judicial Notice as Exhibit "6."

> would only be applicable to the un-pled causes of action.  To do
> otherwise would be prejudicial and would be unfair.
>
> So based on the rule and the jurisprudence under it, it seems to me
> that to raise causes of action now under Section 362 after trial was
> complete and 15 USC would be inappropriate under Rule 15(b).
>
> So for those reasons, the motion, plaintiff's motion under Rule
> 7015(b) to amend docket #90 is denied.

*See* Transcript of March 8, 2006 Hearing, pp 8-9.[8]  This same reasoning applies with equal, if

not more force, to the post-appeal efforts by Nosek to assert a § 105 claim and remedies against

Ameriquest.

Ten days after the Court denied Nosek's request to assert new causes of action, Nosek

filed a motion for reconsideration.[9]  In that motion, Nosek argued that this Court committed

"clear error" in refusing to allow her to assert the new causes of action.  On March 21, 2006, this

Court issued its "Decision and Order Regarding Motion for Reconsideration [#100]."[10]  In that

ruling, this Court noted: "as with the original Motion to Amend, the instant Motion fails to

allege, much less demonstrate, that the evidence which was admitted without objection goes *only*

to the count which the Debtor now seeks to add."

**I.      Following Issuance of the Memorandum Decision and the Judgment,
Ameriquest Timely Appealed While Nosek Did Not.**

On June 30, 2006, the Bankruptcy Court issued its Memorandum Decision.  As to the

supposed violations of RESPA and section 2(a) of Mass.G.L. c. 93A, this Court determined that

Nosek had not "provided a basis to award actual damages."  Memorandum Decision, p. 13.

---

[8]  A copy of the Transcript of the March 8, 2006 hearing is attached to Ameriquest's Request for Judicial Notice as Exhibit "7."

[9] A copy of "Plaintiff's Motion Pursuant to Fed.R.Civ.P.59(c) and Fed.R.Bankr.P. 9023 re Order of March 8, 2006 dated March 16, 2006" is attached to Ameriquest's Request for Judicial Notice as Exhibit "8."

[10] A copy of "Decision and Order Regarding Motion for Reconsideration [#100]" is attached to Ameriquest's Request for Judicial Notice as Exhibit "9."

Nevertheless, this Court awarded the nominal sum of $1.00 under RESPA and $25.00 under

Mass.G.L. c. 93A  The TILA cause of action was dismissed based upon Nosek's admission that

Ameriquest had correctly calculated interest.  The infliction of emotional distress and lost

income causes of action were dismissed for lack of jurisdiction.  Judgment was entered in favor

of Ameriquest on the unjust enrichment claim.  Lastly, this Court determined that during 2004

Ameriquest improperly accounted for payments (on its own internal books and records) in

contravention of Nosek's Plan and breached the covenant of good faith and fair dealing under

Massachusetts law.  On this claim, the Bankruptcy Court determined that Nosek did not incur

any actual damages as a result of the supposed breach.  The Bankruptcy Court did award Nosek

$250,000 for her "mental suffering."

Ameriquest timely filed its notice of appeal on July 10, 2006.  Nosek did not file a cross-

appeal.  Nor did she designate any issues on appeal. [11]  As a result of Nosek's failure to file a

cross-appeal of the Judgment, Nosek is jurisdictionally barred from challenging prior rulings of

this Court.  Those rulings include this Court's prior denials of Nosek's request to amend the

Complaint.

### J.   Following Briefing and Oral Argument, the District Court Reversed the Majority of the Judgment on the Basis of Bankruptcy Preemption.

On appeal, Ameriquest raised nine separate and distinct grounds as to why the Judgment

on the three causes of action (Counts Two, Three and Five) should be reversed.  Those grounds,

as set forth in Ameriquest's Opening Appeal Brief, centered on bankruptcy preemption and

preclusion and, and assuming no such preemption, whether Ameriquest's conduct was violative

of the relevant statutes and legal theories asserted by Nosek.

---

[11]  During the course of the appeal, Nosek filed a motion to dismiss Ameriquest's appeal on the basis that the underlying judgment was interlocutory.  In its Decision, the District Court rejected this contention.

In its decision, the District Court ruled that preemption barred the Second and Fifth Causes of Action (for violations of RESPA and the covenant of good faith and fair dealing). Once a determination of preemption was made with respect to these causes of action, the District Court was not required to, and did not address, any of the other issues raised by Ameriquest. Nor did the District Court address the merits of the underlying claims.

With respect to the Third Cause of Action, the District Court recognized that by virtue of the reversal of the RESPA Cause of Action (Claim Two), there was no longer a *per se* violation of Mass.G.L. c. 93A. The District Court remanded this Claim with specific instructions. Those instructions were for this Court to determine whether the Bankruptcy Code preempts Claim Two and, if not, for a determination of this claim on the merits. As explained herein, any claim by Nosek for violations of Mass.G.L. c. 93A is preempted.

III.    **THE THIRD CAUSE OF ACTION FOR SUPPOSED VIOLATIONS OF MASS.G.L. c. 93A IS PREEMPTED.**

    A.    **Controlling First Circuit Law Requires Either Dismissal of the Third Cause of Action or Judgment in Favor of Ameriquest.**

The Supremacy Clause of the United States Constitution, Article VI, Clause 2, provides that federal law "shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the contrary notwithstanding." Preemption of state law by federal authority may be express or implied, and often, an Act of Congress may touch a field of law in which federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject. *See Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152-53 (1982). The Bankruptcy Code provides a comprehensive federal system governing all aspects of bankruptcy cases, including the permissible treatment of home mortgage claims in Chapter 13 cases. Protections and penalties under the Bankruptcy Code govern the orderly

conduct of debtor's affairs and creditor's rights. *See Eastern Equip. and Servs. Corp. v. Factory Point Nat'l Bank of Bennington*, 236 F.3d 117, 121 (2nd Cir. 2000).

In the First Circuit, there are two leading cases addressing the bankruptcy preemption: *Patriot Portfolio, LLC v. Weinstein (In re Weinstein), LLC*, 164 F.3d 677 (1st Cir. 1999), *cert. denied sub nom.*, *Patriot Portfolio, LLC v. Weinstein*, 527 U.S. 1036 (1999) and *Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 429, 447 (1st Cir. 2000), *cert. den. sub. nom.*, *Textron Funding Corp. v. Bessette*, 532 U.S. 1048 (2001). Both of these cases support the conclusion that Nosek's claim for violations of Mass.G.L. c. 93A is preempted by the Bankruptcy Code.

In *Weinstein*, a creditor held a judgment lien against the debtor's residence. The debtor asserted a $55,000 homestead exemption against his residence. Pursuant to § 522(f), the debtor sought extinguishment of the judgment lien as it impaired his homestead exemption. Rejecting the judgment creditor's reliance on Massachusetts law, the First Circuit stated, "[S]tates may not pass or enforce laws to interfere with or complement the Bankruptcy [Code] or provide additional or auxiliary regulations." *Id.* at 682-83.

One year after *Weinstein*, the First Circuit in *Bessette* again addressed the issue of preemption in bankruptcy cases. *Bessette* involved factual circumstances similar to those present in this case. In *Bessette*, prior to the Chapter 7 debtor receiving her statutory discharge, she executed a reaffirmation agreement with one of her creditors. That reaffirmation agreement was not filed with the bankruptcy court and did not otherwise comply with the applicable provisions of the Bankruptcy Code governing reaffirmation agreements.

The debtor then filed a lawsuit against the creditor in which she asserted a cause of action for "unjust enrichment" under Massachusetts law. In affirming the district court's dismissal of the unjust enrichment cause of action, the First Circuit stated as follows:

"In a case such as this, where there is no explicit statutory language preempting state law, this Court will find implied preemption under one of two circumstances: (1) where the federal statutory scheme is so pervasive that Congress clearly intended to "occupy the field" to the exclusion of state law, or (2) where a particular state law is in direct conflict with the federal law to an extent that the statutes cannot coexist. *See Summit Inv. & Dev. Corp., v. Leroux*, 69 F.3d 608, 610 (1st Cir. 1995) [other citations omitted]. In reaching our conclusion that a state law claim for unjust enrichment is preempted, we rely on the existence of the first condition.

In *Patriot Portfolio, LLC v. Weinstein* (*In re Weinstein*), we observed that: "states may not pass or enforce laws to interfere with or complement the Bankruptcy Act or to provide additional or auxiliary regulations." 164 F.3d 677, 682-83 (1st Cir. 1999), *cert. denied sub nom., Patriot Portfolio, LLC v. Weinstein*, 527 U.S. 1036 (1999). The district court correctly noted that the broad enforcement power under the Bankruptcy Code preempts virtually all alternative mechanisms for remedying violations of the Code. *See Bessette*, 240 B.R. at 163. Other courts that have been faced with a state unjust enrichment claim have held that Congress's intent in enacting the remedial provisions of the Bankruptcy Code leaves "no room for the state cause of action." *Cox v. Zale Del., Inc.*, 242 B.R. 444, 450 (N.D. Ill. 1999). *See also Pereira v. First N. Am. Nat'l Bank*, 223 B.R. 28, 31-32 (N.D. Ga. 1998); *Reyes v. FCC Nat'l Bank* (*In re Reyes*), 238 B.R. 507, 513 (Bankr. D.R.I. 1999)."

Without question, Chapter 13 of the Bankruptcy Code serves as a comprehensive statutory scheme for the treatment of home mortgage claims in Chapter 13 cases and the specific relationship between Nosek, as a debtor, and Ameriquest, as her home mortgage lender. The provisions of the Bankruptcy Code and Rules preempt any claims under Massachusetts law, including Mass.G.L. c. 93A, for supposed breaches of the Plan, for the manner in which Ameriquest accounted for payments prior to and after confirmation of the Plan, and for the manner in which Ameriquest was required to respond to a demand letter sent by a debtor during the course of her bankruptcy case.

Other Courts of Appeals are in agreement with this conclusion. They uniformly hold the

Bankruptcy Code preempts state law claims arising during the course of a bankruptcy

proceeding. A leading case on this exact issue is *Pertuso v. Ford Motor Credit Co.*, 233 F.3d

417 (6th Cir. 2000), in which the Sixth Circuit engaged in a thorough analysis of legal and policy

considerations before concluding that state law claims that "presuppose" violations of the

Bankruptcy Code are preempted:

> "[A] mere browse through the complex, detailed, and
> comprehensive provisions of the lengthy Bankruptcy Code, 11
> U.S.C. §§ 101 *et seq.*, demonstrates Congress's intent to create a
> whole system under federal control which is designed to bring
> together and adjust all of the rights and duties of creditors and
> embarrassed debtors alike. [Footnote omitted.] While it is true
> that bankruptcy law makes reference to state law at many points,
> the adjustment of rights and duties within the bankruptcy process
> itself is uniquely and exclusively federal. It is very unlikely that
> Congress intended to permit the superimposition of state remedies
> on the many activities that might be undertaken in the management
> of the bankruptcy process." *MSR Exploration, Ltd. v. Meridian
> Oil, Inc.*, 74 F.3d 910, 914 (9th Cir. 1996).

* * *

> [T]he Pertusos' state law claims presuppose a violation of
> the Bankruptcy Code. Permitting assertion of a host of state law
> causes of action to redress wrongs under the Bankruptcy Code
> would undermine the uniformity the Code endeavors to preserve
> and would "stand" as an obstacle to the accomplishment and
> execution of the full purposes and objectives of Congress." *Bibbo
> v. DeanWitter Reynolds, Inc.*, 151 F.3d at 562-63. Accordingly,
> and because Congress has preempted the field, the Pertusos may
> not assert these claims under state law."

233 F.3d at 426-26; *see also Eastern Equip. and Servs. Corp. v. Factory Point Nat'l Bank of*

*Bennington*, 236 F.3d at 121 (affirming dismissal on preemption grounds of state law claims

arising from violation of automatic stay); *MSR Exploration, Ltd. v. Meridian Oil, Inc.*, 74 F.3d

910 (9th Cir. 1996) (same).

There are also numerous decisions from other courts, both federal and state, which have reached the same conclusion. *See Raymark Indus., Inc. v. Baron*, 1997 U.S. Dist. LEXIS 8871, * 30-36 (E.D. Pa. June 23, 1997) (state law claims arising out of wrongful filing of involuntary bankruptcy petitions preempted); *In re Smith*, 43 B.R. 313, 318 (Bankr. N.D. Ill. 1984) ("federal law must control the court's power to confirm a Chapter 13 plan."); *In re Lenior*, 231 F.R. 662, 675 (B. N.D. Ill. 1999) (state law claims for allegedly inflated proof of claim preempted; "[t]he expansive reach of the Bankruptcy Code preempts virtually all claims relating to alleged misconduct in the bankruptcy courts"); *Shiner v Moriarty*, 706 A.2d 1228, 1238-38 (Pa. Super. 1998) (following federal decisions on the issue and holding that Pennsylvania law claims are preempted by the Bankruptcy Code).

Supporting preemption of the claim for violation of Mass.G.L. c. 93A is a district court decision that involved a post-bankruptcy alleged violation of a state consumer protection statute. *Holloway v. Household Auto. Fin. Corp.*, 227 B.R. 501 (N.D. Ill. 1998). *Holloway* involved similar facts to those present in this case. In that case, a secured automobile lender filed a proof of claim and an amended proof of claim against a Chapter 13 debtor. *Id.* at 503. The amended proof of claim was $200 higher than the amount scheduled by the debtor. *Id.* The secured creditor asserted the value of its collateral in amount higher than the debtor claimed in her schedules. *Id.* Prior to confirmation of her Chapter 13 plan, the debtor did not object to the secured creditor's claim. *Id.* Subsequent to confirmation of the plan, the debtor commenced a lawsuit against the creditor for, among other claims, supposed violations of Illinois' Consumer Fraud and Deceptive Practices Act (a statute similar in purpose to Mass.G.L. c. 93A). *Id.* The debtor/plaintiff alleged that by filing an inflated proof of claim, the creditor had engaged in deceptive trade practices. *Id.*

In ruling that Illinois' Consumer Fraud and Deceptive Practices Act was preempted by the Bankruptcy Code and Rules, the *Holloway* court stated as follows:

> "[T]he Code provides both "its own enforcement scheme and separate adjudicative framework." [citation omitted]. Section 502(a) provides that a party can object to proofs of claim in a bankruptcy proceeding. Even if such an objection is not made, and a confirmation order is entered, § 1330(a) provides that a Chapter 13 confirmation order may be revoked if procured by fraud, so long as such an allegation is filed within 180 days of the confirmation order's entry. As such, the Bankruptcy Code contemplates and provides for a comprehensive scheme by which to guard against fraud and remedy it.
>
> The Code provides "complex, detailed, and comprehensive" provisions, especially as to proofs of claim and fraud. Under both the reasoning of *MSR Exploration* and *Shape*, and because the Code has sections applicable to adjudicate the value of secured claims and provides remedies for fraud, we hold that Plaintiff's state law CFA claim is preempted by the Bankruptcy Code."

*Id.* at 507. Just as Holloway's post-bankruptcy claim for violation of Illinois' consumer protection statute was preempted, Nosek's similar claim is preempted.

Preemption is this case is further supported by a recent amendment to the Bankruptcy Code. As part of the 2005 amendments to the Bankruptcy Code under BAPCPA, there now is a specific statutory provision addressing the failure to credit payments received under a plan. 11 U.S.C. § 524(i).[12] The existence of this statute further establishes the existence of a

---

[12] Section 524 (i) reads as follows:

> The willful failure of a creditor to credit payments received under a plan confirmed under this title, unless the order confirming the plan is revoked, the plan is in default, or the creditor has not received payments required to be made under the plan in the manner required under the plan (including crediting the amounts due under the plan), shall constitute a violation of an injunction under subsection (a)(2) if the act of the creditor to collect and failure to credit payments in the manner required by the plan caused material injury to the debtor.

comprehensive federal scheme addressing all aspects of bankruptcy cases including those under

Chapter 13. That scheme overrides all other state laws, including Nosek's claim for violations of

Mass.G.L. c. 93.

**B.**    **Both of Nosek's Alleged Violations of Mass G.L. c. 93A Are Preempted.**

**1.**    **Post-Petition Application of Payments.**

Throughout the litigation, Nosek repeatedly argued that the manner in which

Ameriquest posted and applied the sporadic post-petition payments was violative of Mass. G.L.

c. 93A (along with the covenant of good faith and fair dealing under Massachusetts law). In its

reversal, the District Court ruled as follows:

> The analysis followed in *Bessette* is applicable in this case. The
> Bankruptcy Court found a violation of § 1322(b), which regulates
> the modification of the Plan and provides the cure of any defaults.
> 11 U.S.C. § 1322; (*see* R. 69.) The Bankruptcy Court then grafted
> onto the Plan an implied covenant of good faith and fair dealing, a
> state remedy. This was in error.

This same preemption analysis applies and precludes any assertion by Nosek that the manner in

which Ameriquest posted and applied post-petition payments is violative of Mass.G.L. c. 93A.

In her Supplemental Brief, Nosek does not argue otherwise.

**2.**    **Alleged Failure to Respond to Demand Letter.**

In her Supplemental Brief, Nosek appears to recognize that she can no longer assert that

the manner in which Ameriquest posted and applied post-petition payments violates Mass.G.L.

c. 93A. Instead, she raises a new theory. This time, Nosek argues that Ameriquest "violated"

Mass.G.L. c. 93A § 9(3) by not responding to her July 23, 2004. Nosek Supplement Brief, pp.

15-16. This theory is without support. Section 9(3) does not contain any language which

requires a party to respond to a demand letter.  Second, even if such language did exist, it would

be preempted.

The first sentence of § 9(3) reads:

> "At least thirty days prior to filing any such action, a written
> demand, identifying the claimant and reasonably describing the
> unfair and deceptive act of practice relief upon and the injury
> suffered shall be mailed or delivered to any prospective
> respondent."

This sentence imposes a prerequisite burden on the plaintiff (here, Nosek).  Before commencing

an "action" for alleged violations of Mass.G.L. c. 93A, she must do two things.  First, she must

mail a demand letter to the defendant.  Second, she must wait 30 days before commencing an

action.   The second sentence of § 9(3) reads:

> "Any person receiving such a demand for relief who, within thirty
> days of the mailing or delivery of the demand for relief, makes a
> written tender of settlement which is rejected by the claimant may,
> in any subsequent action, file the written tender and an affidavit
> concerning its rejection and thereby limit any recovery to the relief
> tendered if the court finds that the relief tendered was reasonable in
> relation to the injury actually suffered by the petitioner."

This second sentence simply provides a statutory mechanism whereby a defendant may respond

and thereby limit its potential exposure for a violation of Mass.G.L. c. 93A.  This sentence does

not require or mandate that a defendant respond to a written demand sent under Chapter 93A.

In her Supplemental Brief, Nosek argues, "If the defendant makes no response or an

unreasonable offer [to a demand letter], he or she can be liable on this ground alone for an award

of double or treble damages."  This assertion is flat wrong.  It is contradicted by the actual

statutory language of § 9(3).  Nosek offers no legal support for this theory.  The omission is

telling.

The only case Nosek cites is *Heller v. Silverbranch Const. Corp.*, 376 Mass. 621, 627 (1978). She cites this case in a futile attempt to support her strained and tortuous reading of § 9(3). Nosek even takes language from *Heller* out of context, misinterprets that language, and then (incredibly) adds language that is not in the actual decision. Nosek conveniently omits language in *Heller* that establishes the sending of a responsive settlement offer is permissive, not mandatory. As the *Heller* court noted, "Any person receiving a demand letter *may* make a written offer of settlement within thirty days, thereby limiting his damages to the relief tendered, if the court finds the tender to have been reasonable." *Id.*

**C.**   **The Cases Cited By Nosek on Preemption Have No Applicability to Bankruptcy Cases.**

Ameriquest agrees with Nosek that the issue of whether the Mass.G.L. c. 93A claim is precluded turns on "field preclusion." As mentioned above, the two leading decisions from the First Circuit, the decision by the District Court in this case, and numerous other reported decisions from courts throughout the United States make it abundantly clear that the Bankruptcy Code and Rules preempt any state law claims that either involve alleged violations of the Bankruptcy Code and Rules or involve the process for adjudicating claims in bankruptcy. Nosek, in her brief, does not challenge this result. Instead she references a variety of non-bankruptcy cases. *See* Supplemental Brief, p. 20. Those cases, which involve areas of federal law such as Federal copyright law, the Miller Act, the Petroleum Marketing Practices Act, and the Interstate Commerce Act, have absolutely no applicability to the sole issue before this Court. That issue is whether a debtor (here, Nosek) may assert a claim under Mass.G.L. c. 93A for conduct by a creditor (here, Ameriquest) during the course of the bankruptcy case. For the reasons set forth herein and in the District Court's decision, any such claim is preempted.

**D.** **Nosek Is Not Entitled to Assert a Claim or Recover Any Damages under Mass.G.L. c. 93A.**

Even assuming, *arguendo*, that the claim under Mass.G.L. c. 93A is not preempted, Ameriquest is still entitled to judgment in its favor.

**1.** **Nosek Failed to Wait 30 Day Before Commencing Her Action Against Ameriquest.**

As mentioned above, Nosek commenced her action against Ameriquest before the 30 days under § 9(3) of Chapter 93A had expired. This is a jurisdictional defect which requires dismissal of Claim Three. *See Ricky Smith Pontiac, Inc. v. Subaru of New England, Inc.*, 14 Mass.App.Ct. 396, 432, fn. 42 440 N.E.2d 29 (1982) ("We recognize that the demand letter requirement is jurisdictional under [section] 9 of G.L. c. 93A, and that failure to comply with the requirement requires dismissal of the entire lawsuit."); *see also Bushay v. McDonnell (In re Bushay)*, 327 B.R. 695, 702 (1st. Cir. BAP 2005)("A demand letter is a jurisdictional prerequisite to suit under chapter 93A."); *McMahon v. Digital Equipment Corp.*, 944 F.Supp. 70 (D.Mass 1996)("[93A claim] cannot survive on procedural grounds. The plaintiff has not alleged that she sent a 30-day demand letter to [the defendant], a prerequisite to bringing suit under [93A]."); *Burns v. Hale and Dorr LLP*, 445 F.Supp.2d 94 (D. Mass. 2006) ("Massachusetts courts have strictly adhered to Chapter 93A's demand requirement.").

**2.** **This Court's Prior Ruling on Nosek's Failure to Prove Damages Controls.**

In her Supplemental Brief, Nosek argues that this Court should award both actual damages and "multiple" damages for the supposed violations of Mass.G.L. c. 93A. Nosek, however, fails to acknowledge that this Court has already determined that Nosek failed to prove either actual damages or emotional distress damages relating the RESPA claim. That claim arose in August 2004, at about the same as Nosek's new theory for recovery under Mass.G.L. c. 93A. This Court's prior determination of no damages in August 2004 is the law of this case,

and prevents any recovery by Nosek under Claim Three (based upon the new theory set forth by

Nosek in her Supplemental Brief).[13]

## IV.    NOSEK IS PROHIBITING FROM ASSERTING A NEW CLAIM UNDER BANKRUPTCY CODE § 105(a) AT THIS STATE OF THE LITIGATION.

As mentioned above, the first 12 pages of Nosek's Supplemental Brief is devoted to her

claim that she should be awarded judgment under § 105(a) of the Bankruptcy Code.  No such

claim is contained in the Complaint.  Nor was such a claim ever litigated before this Court.

During 18 months years of pre-appeal litigation before this Court, Nosek chose not to

assert a claim or remedies under § 105(a) of the Code.  After this Court denied Nosek's post-trial

motion to assert additional causes of action, Nosek chose not to file an appeal of that denial.

Under various fundamental Federal doctrines of civil and appellate procedure, Nosek is

prohibited from using the limited remand on the Third Claim as a vehicle to assert a new claim

or remedies against Ameriquest.[14]

### A.    The Bankruptcy Court Must Strictly Comply with the District Court's Specific and Limited Remand

The District Court's remand to this Court was specific and limited:

> "The Bankruptcy Court held that the violation of RESPA
> constituted a *per se* violation of chapter 93A.  (R. at 63.)  Under
> 940 Code of Massachusetts Regulations § 3.16(4), a violation of

---

[13]  Nosek contends that Ameriquest is relying on *Hershenow v. Enter. Rent-a-Car Co. of Boston, Inc.* 445 Mass. 790 (2006) in support of its preemption agreement.  Nosek is wrong.  Ameriquest cited *Hershenow* on the issue of whether Nosek is entitled to any judgment under Mass.G.L. c. 93A when she failed to prove that she incurred any loss.  Should the Court require further litigation on Nosek's new theory under Mass.G.C. c. 93A, Ameriquest will again rely on *Hershenow* in support of entry of judgment in its favor.

[14]  In her Supplemental Brief, Nosek contends that "the U.S. District Court has now held that § 105 provide the remedy for violations of 11 U.S.C. § 1322(b)" and "the U.S. District Court has now provided this Court with the vehicle — 11 U.S.C. § 105(a) – to impose punitive damages upon Ameriquest."  Supplemental Brief, pp. 2, 9.  Nosek's right to assert a claim under § 105 did not come into existence by virtue of the District Court's decision.  It has been long recognized as a remedial statute by pre-existing decisions of the First Circuit Court of Appeals.  During most of the course of her lawsuit, Nosek elected to forego her rights under § 105 and then relinquished her appeal right to challenge this Court's denial of Nosek's request to amend the Complaint to add additional causes of action.  For the reasons set forth herein, she cannot now assert new claims or remedies under § 105.

chapter 93A occurs automatically if a violation of a federal consumer protection statute is found. 940 Mass. Code. Regs. 3.16(4) (2006). While the Bankruptcy Court correctly applied Massachusetts law, the preemption of the underlying RESPA claim requires reconsideration of the chapter 93A claim. ***The Massachusetts General Law chapter 93A claim is, therefore, remanded to the Bankruptcy Court for reconsideration as to whether the Bankruptcy Code preempts such state claims and, if that court answers in the negative, for a determination of the claim on the merits***." (emphasis added.)

Under the "mandate rule," this Court is required to comply with and strictly adhere to these instructions. *See e.g. American Guaranty and Liability Ins. Co. v. Perrone (In re Perrone)*, 284 B.R. 315, 317 (Bankr. D. Mass 2002). The trial court should not permit a litigant to use a limited remand to reopen litigation that has already concluded. *Kotler v. American Tobacco Co.*, 981 F.2d 7, 13 (1st Cir. 1992)

In 1992, the First Circuit eloquently articulated the "mandate rule" in *Kotler*, a case also involving a reversal based upon (in that case) lack of preemption.

> The general rule is that, when the Supreme Court remands in a civil case, the court of appeals should confine its ensuing inquiry to matters coming within the specified scope of the remand. This rule is grounded on sound prudential considerations. Repose is important in the law and, consequently, there must be an end to litigation.
>
> * * *
>
> This is a civil case, pure and simple. The plaintiff has had her full day in court. Allowing our previous decision to stand does not appear to work a gross injustice. To the contrary, reopening the breach of warranty issue . . . would set an unfortunate precedent -- especially when the Supreme Court's specific directive tells us to review only a preemption issue that in no way affects ATC.
>
> In the absence of truly egregious error or some other extraordinary circumstance, the Supreme Court's mandate is "our compass and our guide." The situation here is unremarkable and counsels strict adherence to the scope of the Court's remand order. Hence, we decline to revisit the breach of warranty count. In our

> view, a decision gratuitously to reopen this issue, like any decision
> belatedly to reopen a judgment that is arguably in error, would
> deprive the defendants of their rightful sense of repose and
> frustrate the judicial system's core principles of finality and
> efficiency.

Just as to the plaintiff in *Kotler* had her day in court and was prohibited from litigating new

issues following the Supreme Court's reversal, Nosek had her day in court. Like the defendants

in *Kotler*, Ameriquest is entitled to its right of repose. Nosek cannot simply raise new post-

appeal claims and remedies in her Supplemental Brief. Rather, this Court should follow the

guidance of *Kotler* and in acordance with the mandate rule strictly adhere to the limited scope of

the District Court's remand.

### B.   The Law of the Case Doctrine Bar's Nosek's Post-Appeal Assertion of a § 105 Cause of Action.

The "law of the case" doctrine posits that when a court decides upon a legal or factual

issue, that decision (unless otherwise overturned by an appellate court) should continue to govern

in subsequent stages in the same case. *Arizona v. California*, 460 U.S. 605, 618-619 (1983).

This doctrine precludes parties from contesting matters that they have had a full and fair

opportunity to litigate. *Id.* It protects litigants from the expense and vexation attending multiple

lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the

possibility of inconsistent decisions. *Id.* Under the law of the case doctrine, "a court should not

reopen issues decided in earlier stages of the same litigation." *Agostini v. Felton*, 521 U.S. 203,

236 (1997).[15]

---

[15] In 2002, the First Circuit summarized the reasons behind the law of the case doctrine as follows:

> "For one thing, the law of the case doctrine affords litigants a high
> degree of certainty as to what claims are-and are not-still open for adjudication.
> For another thing, it furthers the abiding interest shared by both litigants and the
> public in finality and repose. Third, it promotes efficiency; a party should be

Federal courts have recognized that the law of the case doctrine has two branches:  one provides that subject to certain very limited exceptions, e.g. *United States v. Bell*, 988 F.2d 247, 251 (1st Cir. 1993), a court must respect and follow its own rulings made at a prior stage in the same case; the other branch—sometimes known as the mandate rule—far more stringently precludes a lower court from contravening the rulings of a higher court made at an earlier stage of the same controversy. *Conley v. U.S.*, 323 F.3d 7, 12 (1st Cir. 2003).  The mandate rule is discussed above.  As to the first branch of the law of the case doctrine, that branch also bars Nosek's newly asserted § 105 claim and remedies.

### 1.    The Bankruptcy Court's Denial of Leave to Amend to Nosek to Assert a § 105 Claim is the Law of the Case.

The first branch of the law of the case doctrine provides that, "a court ordinarily ought to respect and follow its own rulings, made earlier in the same case." *United States v. Ellis*, 313 F.3d 636, 646 (1st Cr. 2002).  This rule "prevents a litigant from resurrecting an issue that has already been decided by a lower court that has gone unchallenged on appeal." *Field v. Mans*, 157 F.3d 35, 40 (1st Cir. 1998).  Consequently, "[F]indings and conclusion that are not appealed and are not related to the issues on appeal are treated as settled, unless they fall within an exception to the law of the case doctrine." *U.S. v. Ticchiarelli*, 171 F.3d 24, 29 (1st Cir. 1999).  This is because "litigation proceeds through preliminary stages, generally matures at trial, and produces a judgment, to which after appeal, the binding finality of *res judicata* and collateral estoppel will attach." *Arizona v. California*, 460 U.S. 605 (1983).  "Under *res judicata*, a final

> allowed his day in court, but going beyond that point deprives others of their days in court, squanders judicial resources, and breeds undue delay.  Fourth, the doctrine increases confidence in the adjudicatory process: reconsideration of previously litigated issues, absent strong justification, spawns inconsistency and threatens the reputation of the judicial system." [citations omitted.]

*United States v. Ellis*, 313 F.3d 636, 647 (1st Cr. 2002).

judgment on the merits bars further claims by the parties or their privies based on the same cause of action." *Montana v. U.S.*, 440 U.S. 147, 153 (1979).

As detailed above in the Factual and Procedural Section of this Brief, after conclusion of the testimonial phase of the trial, Nosek filed a motion to amend the Complaint to assert additional causes of action. For the reasons set forth on the record at the March 8, 2005 hearing, this Court denied that motion. The Court then denied Nosek's motion for reconsideration. Nosek never appealed either of those rulings. They are final and the law of this case. Nosek cannot disregard the law of the case by simply asserting a new claim and remedies in her Supplemental Brief.

## 2. <u>Nosek Cannot Satisfy Any Exception to the Law of the Case Doctrine.</u>

"Even where, as here, an appellate court's mandate does not contemplate resurrecting an issue on remand, the trial court may still possess some limited discretion to reopen the issue in very special situations. . . [a]t a minimum, reopening would require a showing of exceptional circumstances—a threshold which, in turn demands that the proponent accomplish one of three things:  show that controlling legal authority has changed dramatically; proffer significant new evidence, not earlier obtainable in the exercise of due diligence; or convince the court that a blatant error in the prior decision will, if uncorrected, result in a serious injustice." *U.S. v. Bell*, 988 F.2d 247, 250-251 (1st Cir. 1993).

Nosek has not shown, and cannot show, that controlling legal authority has changed dramatically. To the contrary, the First Circuit in its 2000 decision in *Bessette*, clearly stated that § 105 of the Bankruptcy Code may provide a remedy for violations of the Code. That decision was issued by the First Circuit four years before Nosek filed her lawsuit. Nosek has not proffered any new evidence to support the reconsideration of this Court's order denying Nosek leave to amend her Complaint or to support the imposition of punitive damages. In her motion

for reconsideration, Nosek argued that this Court committed blatant error in denying the motion

to amend. This Court denied that motion, and Nosek never appealed that ruling. Consequently,

Nosek has no basis upon which to disturb the law of this case.

In understanding why the law of the case doctrine must be applied to bar any new

claims against Ameriquest, it is important to note that Nosek did not even bother to ask Court

permission before she asserted this new claim against Ameriquest. Nosek knew that this Court

previously denied her request to amend the Complaint. She knew that under Bankruptcy Rule

7015, court permission is required before a complaint may be amended. She also knew that

following her failure to appeal this denial, this Court likely would deny any post-appeal

amendments to the Complaint. By simply throwing out a new claim in her Supplemental Brief

and then having the temerity to ask for judgment on this new claim, Nosek disregarded the

procedural requirements of Bankruptcy Rule 7015 and the prior rulings of this Court. The Court

should not countenance such tactics.

### C.    Issue Preclusion Bars Nosek's Attempt to Assert a § 105 Claim or Remedies.

The *res judicata* doctrine has two branches, claim preclusion and issue preclusion (also

known as collateral estoppel). It was held in *Walsh v. Intern. Longshoremen's Ass'n, AFL-CIO*,

630 F.2d 864, 867-868 (1st Cir. 1980) that, "*res judicata* is a judicially created rule that bars

relitigation of claims and issues that have been previously determined. The outlines of the rule

are clearly set forth in *Commissioner v. Sunnen*, 333 U.S. 591 (1947):

> "The rule provides that when a court of competent jurisdiction has
> entered a final judgment on the merits of a cause of action, the
> parties to the suit and their privies are thereafter bound not only as
> to every matter which was offered and received to sustain or defeat
> the claim or demand, but as to any other admissible matter which
> might have been offered for that purpose. Under the narrower rule
> of collateral estoppel, where the second action between the same
> parties is upon a different cause or demand . . . the judgment in the
> prior action operates as an estoppel, not as to matters which might

have been litigated and determined, but only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. [citations and internal quotations omitted].

The second branch of *res judicata* is commonly known as issue preclusion or collateral estoppel. Under this doctrine, a legal decision made at one stage of a civil proceeding should remain the law of that case throughout the litigation, unless and until the decision is modified or overruled by a higher court. *U.S. v. Moran*, 393 F.3d 1, 7 (1st Cir. 2004).

The doctrine of issue preclusion or collateral estoppel bars relitigation of any factual or legal issue that was *actually* decided in previous litigation 'between the parties, whether on the same or a different claim.' . . . [a]n issue may be 'actually' decided even if it is not *explicitly* decided, for it may have constituted, logically or practically, a necessary component of the decision reached." *Dennis v. Rhode Island Hosp. Trust Nat. Bank*, 744 F.2d 893 (1st Cir. 1984), abrogated on other grounds, *Salve Regina College v. Russell*, 499 U.S. 225 (1991). "Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. U.S.*, 440 U.S. 147, 153 (1979).

Nosek's attempt to assert additional new claims, following the testimonial phase of the trial, was denied by this Court. Under the doctrine of issue preclusion/collateral estoppel and the controlling case law, Nosek is prohibited from adding or asserting a § 105 cause of action to her Complaint in the post-appeal phase of the litigation.

**D.**   **Nosek's Failure to Appeal the Denial of her Motion to Amend Bars her Post-Appeal Attempt to Assert a § 105 Claim and Remedies.**

In 1924, the United States Supreme Court issued a seminal decision that directly addressed the issue of whether on a remand a party may seek to enhance its rights in the underlying judgment. *U.S. v. American Ry. Express Co.*, 265 U.S. 425, 435 (1924). The Supreme Court answered that question in the negative:

> "It is true that a party who does not appeal from a final decree of the trial court cannot be heard in opposition thereto when the case is brought there by the appeal of the adverse party. In other words, the appellee may not attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary, whether what he seeks is to correct an error or to supplement the decree with respect to a matter not dealt with below." (emphasis added)

*Id.*; *In accord Olsen v. Correiro*, 189 F.3d 52, 58 n. 3 (1st Cir. 1999); *U.S. v. Lumbermens Mut. Cas. Co.*, 917 F.2d 654, 658 n. 6 (1st Cir. 1990). Simply put, "a party may not seek to revise the trial court's judgment without first filing a timely notice of appeal." *U.S. v. Craven*, 239 F.3d 91, 97 (1st Cir. 2001). As the Supreme Court stated in *El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 480 (1999), "Indeed, in more than two centuries of repeatedly endorsing the cross-appeal requirement, not a single one of our holdings has ever recognized an exception to the rule."

Here, Nosek is seeking to enlarge her rights under the Memorandum Decision and the judgment. Because Nosek did not file a cross-appeal and did not designate any issues on appeal, she is barred from now asserting a claim or remedies under § 105 of the Bankruptcy Code.

**E.**   **Assuming, *Arguendo*, Nosek is Entitled to Now Assert a § 105 Claim, Ameriquest is Entitled to Litigate the Merits of this Newly Asserted Claim.**

Needless to say, Ameriquest vigorously disputes that it violated any provision of Nosek's Chapter 13 Plan or § 1322 of the Code. Likewise, Ameriquest disputes that Nosek is entitled to

relief against Ameriquest under § 105 of the Code.  If there is to be a new round of litigation over this claim, Ameriquest would assert numerous defenses, including laches and unclean hands.  Ameriquest reminds this Court that it is Nosek who has repeatedly flouted orders of this Court.  For over two years, Nosek has failed to make a single monthly payment to Ameriquest, notwithstanding the binding provisions of the Stipulation and the confirmed Chapter 13 Plan.  It is the height of hypocrisy for Nosek to contend that Ameriquest violated the Chapter 13 Pan in the manner in which it applied the few sporadic post-petition payments that Ameriquest actually received, when the Chapter 13 Plan contains no language or provisions regarding how such payments must be applied and when Nosek herself continues to violate standing Court orders.

Ameriquest recognizes that should this Court take the extraordinary step and allow Nosek to assert a new claim and remedies under § 105 (notwithstanding the plethora of Federal civil and appellate procedure doctrines that bar the post-appeal assertion of this claim), Ameriquest likely will have a full and complete opportunity to respond to these new allegations. Nevertheless, Ameriquest believes it is important to address one particular point raised in Nosek's Supplement Brief.  In her brief, Nosek states that Ameriquest failed "to comply with the terms of the Confirmed Chapter 13 Plan."  Supplemental Brief, p. 11.  Nothing could be further from the truth.

In fact, Nosek's Chapter 13 Plan and the order confirming that Plan contain no provisions which mandate that Ameriquest apply payments in the same manner in which Nosek is permitted to cure.  It is Ameriquest's position that such a provision or interpretation of the Chapter 13 Plan would be violative of section 1322(b)(2) of the Code.  *See In re Good*, 207 B.R. 686 (Bankr. D. Idaho 1997).

*In re Good* is the only reported decision to address this precise legal question. It supports Ameriquest's conduct. In *Good*, a Chapter 13 debtor proposed a plan which specifically required the home mortgage lender to apply payments in a manner contrary to the terms of the underlying loan documents. As explained by the bankruptcy court in *Good*:

> "This otherwise uncomplicated case gives rise to an interesting issue of bankruptcy law: may a Chapter 13 plan require that payments made under the plan to cure a home mortgage default be applied by the lender first to the principal portion of the default balance and, thereafter, to accrued interest on the default, contrary to the terms of the underlying promissory note and deed of trust?"

*Id.* at 688. In concluding that the debtor was statutorily prohibited from modifying the application of payment provisions in the underlying loan documents, the *Good* court stated as follows:

> "Debtor observes that Chapter 13 does not compel her to apply payments on the mortgage default in any particular fashion. She is right. *However, the Code also does not allow her to modify Creditor's rights under its note and deed of trust. Therefore, the Court concludes that the parties are bound by their contracts concerning how default payments must be applied.*"

*Id.* at 689 (emphasis added).

### F.   The Other Points Raised by Nosek Are Either Incorrect or Not Relevant to the Matters Before this Court.

Nosek devotes a substantial portion of her brief to arguing what her damages should be, assuming this Court grants her judgment under § 105 of Code. It is Ameriquest's position that these issues are not properly before the Court. When and if necessary, Ameriquest will address any § 105 damage questions.

## V.    **CONCLUSION**

For the reasons set forth herein, Nosek's claim for violations of Mass.G.L. c. 93A (Claim Three) is preempted. Either the Third Claim should be dismissed or judgment should be entered in favor of Ameriquest. This Court should deny any additional relief request by Nosek.

Dated:  January 11, 2007

Respectfully Submitted,

Ameriquest Mortgage Company
By Its Attorneys

BUCHALTER NEMER
A Professional Corporation


  /ls/ Jeffrey K. Garfinkle_____
Jeffrey K. Garfinkle (Cal. Bar. 153496)
18400 Von Karman Avenue, Suite 800
Irvine, California 92612
(949) 760-1121 Telephone
(949) 720-0182 Facsimile
jgarfinkle@buchalter.com

and

ABLITT & CARUOLO, PC
Steven M. Ablitt (BBO 641316)
Robert F. Charlton (BBO 081200)
92 Montvale Avenue, Suite 2950
Stoneham, Massachusetts 02180
(781) 246-8995 Telephone
(781) 246-8994  Facsimile
sablitt@acdlaw.com