**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| In re                              : | | |
| JACALYN S. NOSEK              : | | Chapter 13 |
|    Debtor                        : | | No. 02-46025 |
| _____: | | |
| JACALYN S. NOSEK        , | | |
|    Plaintiff                     : | | |
| v.                                 : | | A.P. No. 04-04517 |
| AMERIQUEST MORTGAGE   : | | |
| COMPANY,                        : | | |
|    Defendant                   : | | |
| _____: | | |

**MEMORANDUM OF DECISION ON REMAND FROM UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

This matter comes before the Court on remand from the United States District Court for the District of Massachusetts ("District Court") following an appeal of this Court's decision of June 30, 2006 by the Defendant Ameriquest Mortgage Company ("Ameriquest"). The District Court remanded the case for further proceedings. *Ameriquest Mortgage Co. v. Jacalyn S. Nosek*, 2006 WL 3262629 (D. Mass. 2006). Following the District Court's decision, the parties submitted supplemental briefs on the issues now before the Court on remand.

**1. Factual Background**

The Court's findings of fact were upheld by the District Court as not clearly erroneous and are briefly summarized below.[1] *Ameriquest v. Nosek*, 2006 WL 3262629 at *1. The Debtor, Jacalyn S. Nosek ("Nosek") executed a $90,000.00 adjustable rate note ("Note") with Ameriquest secured by a mortgage on her principal residence. *Id*.

---

[1] For a more detailed discussion of the facts, see the published decisions of this Court and the District Court. *In re Nosek*, 2006 WL 1867096, *1-5 (Bankr. D. Mass. 2006); *Ameriquest v. Nosek*, 2006 WL 3262629 at *1-2.

1

When Nosek began missing payments on the Note, Ameriquest instituted foreclosure proceedings. *Id*. To halt the foreclosure, Nosek filed for bankruptcy under Chapter 13 of the United States Bankruptcy Code, 11 U.S.C. § 101 et al.. *See id*. Under Chapter 13, Nosek was permitted to cure her pre-petition arrearage over sixty months through her confirmed Plan and to make her ongoing post-petition payments directly to Ameriquest. *Id*. When Ameriquest received a payment, whether it was from the Chapter 13 Trustee on account of the arrears or Nosek herself for the then currently due installment, Ameriquest would apply the funds to the oldest outstanding contractual obligation due under the Note. *Id.* at *2. If the payment was insufficient to satisfy a contractual obligation in full, Ameriquest would place the funds in a "suspense" account. *See id*. In theory, the suspense account acted like a collection bucket to hold the payments until there were enough funds to satisfy one in full. *Id.*

The Court noted several flaws with Ameriquest's accounting system and found an overall failure to properly and timely account for Nosek's payments. *See generally Nosek*, 2006 WL 1867096. First, the process did not distinguish between pre-petition and post-petition payments; it simply looked to satisfy the oldest contractual obligation first. *Id*. at *3. Thus, when a payment was received from the Chapter 13 Trustee or from Nosek, it was matched against the oldest outstanding contractual obligation. If the payment did not satisfy that contractual obligation in full, the funds were placed in a "suspense" account *Id*. at *12. Second, even when the total funds in the suspense account were sufficient to satisfy a contractual obligation in full, Ameriquest did not necessarily post them in a timely manner. *Id.* at *3. Third, the accounting system, and the payment history Ameriquest generated for the rest of the world, gave the impression that Nosek was delinquent in her payments. *Id*. at *4, *11. It did not show that Nosek was current, something she claimed prevented her from refinancing her Note with another lender. *Id.* at *3- 4, *11. Although Ameriquest claimed to have manually credited Nosek with having made the payments and internally considered her current, nothing in its accounting system, or on the payment history provided to her, reflected this. *Id.*

**2. Procedural Background**

2

The Court found that Ameriquest violated the Real Estate Settlement Procedures Act ("RESPA"), the Massachusetts Consumer Protection Act ("Chapter 93A"), and the Massachusetts implied covenant of good faith and fair dealing. *Nosek*, 2006 WL 1867096 at *18. Only nominal damages of $1.00 and $25.00 were awarded on the RESPA and Chapter 93A violations, but emotional distress damages of $250,000.00 were awarded for the breach of the implied covenant of good faith and fair dealing. *Id*. As part of its holding on the implied covenant of good faith and fair dealing, the Court found that Ameriquest had an obligation to properly and timely credit both pre-and-post-petition payments and that its failure to do so contravened the terms of Nosek's confirmed Chapter 13 Plan, and specifically 11 U.S.C. δ 1322(b). *Id.* at *13. "The purpose of a Chapter 13 plan is to allow a debtor to pay arrears during the pendency of the plan while continuing to make payments at the contract rate. Payments made during the pendency of the Chapter 13 plan should have been applied by [the lender] to the current payments [then] due and owing with the arrearage amounts [received from the Chapter 13 Trustee] to be applied to the back payments. [The lender] cannot use its accounting procedures to contravene the terms of a confirmed Chapter 13 plan and the Bankruptcy Code." *Id.* (quoting *In re Rathe*, 114 B.R. 253, 257 (Bankr. D. Idaho 1990)).

Thereafter, Ameriquest appealed, arguing *inter alia* that the Bankruptcy Code preempted Nosek's recovery under all three of these counts.[2] *Ameriquest v. Nosek*, 2006 WL 3262629 at *1. The District Court held that "the Bankruptcy Code preempts both the state claim under the implied covenant of good faith and fair dealing and the claim under section 2605(e) of [RESPA]. In addition, the claim under [Chapter 93A] is remanded for consideration on the merits. Accordingly, Ameriquest's appeal is allowed and the case is remanded for further proceedings consistent with this holding." *Id*. at *9.

In its appeal, Ameriquest specifically challenged the Court's Section 1322(b) finding. *See Ameriquest's Opening Brief,* p. 22-25 ; *Ameriquest's Reply Brief,* p. 6-13. *See also* Designation of Record and Statement of Items to be Presented on Appeal by Ameriquest Mortgage Company From Order of the Bankruptcy Court Entered June 30, 2006; Docket #124, p. 3, ¶ 11, Dated: 7/20/06 (including "whether the Bankruptcy Court erred in ruling

---

[2] At Ameriquest's request, the Court hereby takes judicial notice of its Opening and Reply Briefs to the District Court, which will be hereinafter cited to as such.

3

that a mortgage servicing company such as Ameriquest is required to internally account for post-petition payments in the same manner provided for in a Chapter 13 plan" as one of the issues on appeal). It devoted several pages in its briefs arguing that its accounting practices did not violate the Bankruptcy Code or Nosek's Chapter 13 Plan. *Id*.

> a cornerstone of the Bankruptcy Court's ruling that Ameriquest breached the covenant of good faith and fair dealing (under Massachusetts law) was the Court's view that the manner in which Ameriquest credited payments violated the Plan. That view was error….The acceptance of [a] payment and placement of [that] payment in an internal suspense account is not violative of the Debtor's cure rights under [Section] 1322(b)(5)…The Bankruptcy Court had the erroneous belief that Ameriquest was required to apply post-petition payments in accordance with the terms of the Plan. It then used that belief to reach the conclusion that Ameriquest "contravened the terms of a confirmed Chapter 13 plan" and therefore violated the covenant of good faith and fair dealing."

*See Appellant's Opening Brief*, p. 22-25 (internal citations omitted).

On this issue, the District Court held that

> The Bankruptcy Court found a violation of [Section] 1322(b), which regulates the modification of the Plan and provides the cures for any defaults. The Bankruptcy Court then grafted onto the Plan an implied covenant of good faith and fair dealing, a state remedy. This was error. Section 105 of the Code provides the proper mechanism for the Bankruptcy Court to remedy specific violations of the Code. If the Bankruptcy Court is to assess damages, it must not look to the state law theory employed in this case, but must do so under the equitable powers granted under the Code.

*Ameriquest v. Nosek*, 2006 WL 3262629 at *7 (internal citations omitted).

### 3. Discussion

#### A. *Remand of Chapter 93A Claim*

The District Court remanded the Chapter 93A claim "for reconsideration as to whether the Bankruptcy Code preempts such state claims, and if that court answers in the negative, for a determination of the claim on the merits." *Ameriquest v. Nosek*, 2006 WL 3262629 at *9. The Court declines to decide whether Chapter 93A is preempted by the Bankruptcy Code because under the facts of this case, Nosek cannot establish a claim on the merits. Nosek's Chapter 93A claim cannot stand on its own in the absence of the RESPA violation, which was overturned on appeal. The Court found that Ameriquest had violated section 2605(e) of RESPA, a federal consumer protection statute, based on its failure to respond to Nosek's qualified written request

4

within the time specified by the statute. *Nosek*, 2006 WL 1867096 at *5. Under Massachusetts law, a violation of a federal consumer protection statute is a *per se* violation of Chapter 93A. 904 MASS. CODE REGS. 3.16(4) (2006). It was on this basis <u>alone</u> that the Court found that Ameriquest had also violated Chapter 93A. *Nosek*, 2006 WL 1867096 at *8. It was a *per se* violation based solely on the RESPA finding. *Id.*. *See also* 10/25/05 Summary Judgment Hearing; Docket #39. Nosek did not plead, nor did the Court find, facts to support an independent violation of Chapter 93A, and even if there were, the Court found that Nosek failed to prove any actual damages from Ameriquest's failure to respond to her request. *Nosek*, 2006 WL 1867096 at *8. For these reasons, this is not the appropriate case for the Court to determine whether Chapter 93A is preempted by the Bankruptcy Code because there is no longer a means of sustaining a *per se* violation and there are no facts to support an independent one. Therefore, Nosek's claim under Chapter 93A is hereby dismissed.

### B. *Remedy for Section 1322(b) Violation*

The District Court affirmed the Court's Section 1322(b) finding and merely disagreed with the remedy applied to it. *See Ameriquest v. Nosek*, 2006 WL 3262629 at *7. The state remedy employed by the Court (i.e. implied covenant of good faith and fair dealing) overlapped those provided for in the Bankruptcy Code, namely 11 U.S.C. δ 105(a). *Id*. It was preempted and the Court should have used its own equitable powers under Section 105(a) to redress the Section 1322(b) violation. *Id.*

Section 105(a) of the Bankruptcy Code provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

"Section 105(a) empowers the bankruptcy court to exercise its equitable powers-where 'necessary' or 'appropriate'- to facilitate the implementation of other Bankruptcy Code provisions." *Bessette v. Avco Financial Services, Inc*., 230 F.3d 439, 444 (1st Cir. 2000)

5

(internal citations omitted). In *Bessette*, the First Circuit recognized the considerable (but not unlimited) discretion conferred on bankruptcy courts under Section 105(a) and held that a debtor could recover damages under that section for a creditor's violation of the discharge injunction, 11 U.S.C. δ 524. *See id.* Bankruptcy and district courts relying on *Bessette* have extended the reach of Section 105(a) to remedy other Code violations, including Section 1322(b), not just Section 524. *See e.g., In re Harris*, 312 B.R. 591 (N.D. Miss. 2004) (holding that Section 105(a) empowered the bankruptcy court to afford debtor relief when creditor violated Section 1322(b)(5)); *In re Mooney*, 340 B.R. 351 (Bankr. E.D. Tex. 2006) (recognizing that "there is no logical reason why the same [Section 105 used to remedy Section 524 violations] is not also available to enforce other statutory provisions"). Even Ameriquest recognizes the reach of Section 105, conceding on appeal that "if Ameriquest had in fact taken actions that violated the provisions of Nosek's Plan…such actions may be sanctionable under Section 105(a) of the Bankruptcy Code." *See Ameriquest's Reply Brief,* p. 6.

It is well settled that a debtor can recover under Section 105 for violation of specific Code provisions, including Section 1322(b). The next question is to what forms of relief is the debtor entitled. Section 105 provides bankruptcy courts with statutory contempt powers. *Bessette*, 230 F.3d at 445. This includes the power to sanction a party, which inherently includes the power to award monetary relief to the debtor in the form of actual and punitive damages. *See id.* In line with this interpretation of statutory contempt powers, bankruptcy courts across the country have awarded actual damages under Section 105. *See id.* Bankruptcy courts have even awarded emotional distress damages as coming within the purview of the actual damages recoverable under Section 105. *See e.g.*, *In re Curtis*, 322 B.R. 470, 486 (Bankr. D. Mass. 2005) (awarding "compensatory damages" for stress, weight loss, vomiting, and depression); *In re Barry*, 330 B.R. 28, 38 (Bankr. D. Mass. 2005) (awarding "emotional distress damages" for violation of discharge injunction); *In re Manzanares*, 345 B.R. 773 (Bankr. S.D. Fla. 2006) (same); *In re Meyers*, 344 B.R. 61 (Bankr. E.D. Pa. 2006) (same); *In re Feldmeir*, 335 B.R. 807 (Bankr. D. Or. 2005) (same). *See also Fleet Mortgage Group v. Kaneb,* 195 F.3d 265 (1st Cir. 1999) (upholding award for emotional distress as within the "actual damages" recoverable for violation of the automatic stay under 11 U.S.C. §

6

362(h)). Furthermore, when faced with this question, the First Circuit declined to resolve it. *See In re Rivera Torres*, 432 F.3d 20, 26 n.6 (1st Cir. 2005) (limiting the issue to whether emotional distress damages were precluded against the government by sovereign immunity under 11 U.S.C. δ 106 and declining to decide whether they are recoverable in general against a party under Section 105). Bankruptcy courts have also awarded punitive damages as a sanction under Section 105. *Bessette*, 230 F.3d at 445. *See e.g., Curtis*, 322 B.R. at 486 (awarding punitive damages for violation of discharge injunction and automatic stay); *In re Al-Jiboury*, 344 B.R. 218, 222 (Bankr. D. Mass. 2006) (awarding punitive damages). In this regard, courts are cognizant that "what would be sufficient to deter one creditor may not even be sufficient to gain notice from another." *Curtis*, 322 B.R. at 486.

Consistent with the District Court's decision and the relevant case law, the Court finds that Nosek is entitled to actual damages for her emotional distress as well as punitive damages under Section 105(a) for Ameriquest's violation of Section 1322(b). The Court finds that its previous award of $250,000.00 for Nosek's emotional distress is appropriate and hereby awards that amount under Section 105(a). The Court already found in its previous decision that Ameriquest's inability to properly and timely apply Nosek's payments caused her emotional distress, which was supported by testimony from herself, her therapist, her psychiatrist, her primary care physician, and her pastor. *Nosek*, 2006 WL 1867096 at *15. Nosek testified that upon seeing her incorrect payment history:

> I felt like somebody hit me in the stomach …and you know, sucker-punched me…so when I saw that [this payment history] doesn't represent my payments post-petition,…and to get another mortgage, they need to see that I was making the correct payments…and this doesn't show that. I was devastated. I felt there was no hope…I became tremendously depressed and really since then I haven't been able to get my feet under me…
> 
> *Id.*

The Court was outraged by Ameriquest's actions and found that its failure to maintain accurate accounts exacerbated Nosek's emotional distress, something this Court can remedy by assessing damages under Section 105. The Court cannot award Nosek other actual damages because the Court already found that she failed to prove any. *See Nosek*, 2006 WL 1867096 at *6, 15 (explaining that Nosek failed to proffer any evidence that

7

Ameriquest's inaccurate accounting prevented her from refinancing her Note on more favorable terms).

As for punitive damages, the Court finds that Ameriquest's accounting practices are wholly unacceptable for a national mortgage lender and hereby awards $500,000.00 under Section 105(a). The Court considered punishing Ameriquest's conduct in its prior decision, but was precluded from doing so because the remedy was erroneously based on the implied covenant of good faith and fair dealing, under which punitive damages are not available. *Nosek*, 2006 WL 1867096 at *15 (stating that "punitive damages are not recoverable although the concept is tempting to the Court considering [Ameriquest's] egregious behavior").

In awarding punitive damages, the Court notes that "Ameriquest is one of the largest and oldest home mortgage lenders and loan servicers in the U.S. It services home loans in 48 states. As of July 2006, Ameriquest service[d] approximately 437,000 loans. Of that, nearly 7,200 involve borrowers that are currently Chapter 13 debtors." *Ameriquest's Opening Brief,* p. 4. Ameriquest is a national mortgage company, which supports the contention that the amount of punitive damages must be significant enough to garner its attention. *See Ameriquest's Opening Brief,* p. 29; *Curtis*, 322 B.R. at 486. Furthermore, Ameriquest uses the same accounting system in servicing all of its Chapter 13 debtors, which shows how widespread the problem could potentially be.

Ameriquest admitted that "without question, Chapter 13 serves as a comprehensive statutory scheme for treatment of home mortgage claims in Chapter 13 cases and the specific relationship between Nosek, as debtor, and Ameriquest, as her home mortgage lender." Ameriquest made this point in arguing to the District Court that the Bankruptcy Code preempted state law remedies. *See Ameriquest's Opening Brief,* p. 19. Notwithstanding this, Ameriquest argued that Chapter 13 did not require lenders to change their accounting procedures just because a debtor filed for bankruptcy. "If Nosek is correct that Ameriquest was required to apply payments in a manner different from the underlying contracts, Ameriquest (and the other mortgage servicers) would be forced to constantly monitor each debtor's bankruptcy case, readjust their accounting methodologies, and continually recalculate how payments should be applied." *See Ameriquest's Reply Brief,* p. 13. That is exactly the point; Ameriquest must adjust its

8

accounting practices because of Nosek's bankruptcy. The Bankruptcy Code is not a cafeteria; lenders do not decide which of its provisions apply to them. Once a debtor files for Chapter 13, the Bankruptcy Code, and only the Bankruptcy Code, dictates the protections (such as the preemption of state law remedies) afforded to the lender and the obligations (such as the separate accounting for pre-and-post petition payments) required of them.

Ameriquest next argued that "because Ameriquest cannot use its computer system to track bankruptcy payments and because no software exists to track such payments, Ameriquest must account for payments from Chapter 13 debtors manually." *See Ameriquest's Reply Brief,* p. 16. Ameriquest offers this as an apparent excuse as to why Nosek's payment history was inaccurate. The Court is unpersuaded. Even if Ameriquest must manually account for these payments (though the Court is not convinced that a computer system could not be developed with the appropriate investment of time and money), Ameriquest is not excused from doing it right, even if it is an administrative burden. It is not sufficient that Ameriquest only *internally* accounted Nosek with having made the payments and *internally* considered her current. This must be reflected on Ameriquest's *external* payment history, which is shared with the debtor and the outside world and which is usually necessary for a refinancing, something a lender of Ameriquest's experience should recognize. In sum, Ameriquest is simply unable or unwilling to conform its accounting practices to what is required under the Bankruptcy Code, something this Court can encourage by assessing punitive damages under Section 105(a).

### 4. Conclusion

The Court hereby dismisses Nosek's claim under Chapter 93A and awards $250,000.00 in emotional distress damages and $500,000.00 in punitive damages under Section 105(a) for Ameriquest's violation of Section 1322(b) of the Bankruptcy Code. A separate order shall issue.

Dated: March 6, 2007					By the Court,

9

Case 04-04517    Doc 188    Filed 03/06/07    Entered 03/06/07 15:53:26    Desc Main
Document      Page 10 of 10

*/s/ Joel B. Rosenthal*

_____

Joel B. Rosenthal

United States Bankruptcy Judge

10